EEOC Form 169 (10/96)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Ms. Elaine M. Coley  
6321 Sandy Ridge Curve  
Montgomery, Alabama 36117

From: Birmingham District Office  
1130 22ND Street, South, Suite 2000  
Birmingham, AL 35205

[ ]  *On behalf of person(s) aggrieved whose identity is*  
CONFIDENTIAL *(29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 130-2005-01055 | Booker T. Lewis, Supervisor | (205) 212-2115 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] We cannot investigate your charge because it was not filed within the time limit required by law.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)* _____

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>**WITHIN 90 DAYS**</u> from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that back pay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

_Bernice W. Kimbrough_  1/27/06

Bernice Williams-Kimbrough, District Director    *(Date Mailed)*

Enclosure(s)

cc:   Alabama Medicaid Agency

(5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | AMENDED |
| ☒ EEOC | 130-2005-01055 |

_____ and EEOC

State or local Agency, if any

**Name** (Indicate Mr., Ms., Mrs.)
Ms. Elaine M. Coley

Home Phone No. (Incl Area Code): (334) 207-3606
Date of Birth: 08-13-1955

**Street Address** — City, State and ZIP Code
6321 Sandy Ridge Curve, Montgomery, AL 36117

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

**Name**
ALABAMA MEDICAID AGENCY

No. Employees, Members: 500 or More
Phone No. (Include Area Code): (334) 242-5000

**Street Address** — City, State and ZIP Code
501 Dexter Avenue, P.O. Box 5624, Montgomery, AL 36103

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 05-24-2004   Latest: 01-24-2005
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by the above employer in February 2003 in the office of Policy Advisor. In August 2003, the office was dissolved and I was placed under Research & Development. I performed the duties of a secretary in each department. I have been subjected to disparate terms and conditions of employment since I was hired, in that I received unfair evaluations which caused me to be denied pay increases and transfers to other departments. White employees are not subjected to the treatment I am receiving. White employees have resigned because they did not like a department, only to be rehired and placed where they desired. The most recent occasion was January 2005.

No reasons have been offered for these actions.

I believe I am being discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Original Filed 12/21/2004)

AUG 11 2005

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

8-9-05   /s/ Elaine M. Coley
Date   Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE 8-9-05
(month, day, year)

Elaine M. Coley
6321 Sandy Ridge Curve
Montgomery, AL 36117

December 14, 2004

Equal Employment Opportunity Office
Ridge Park Place
1130 22nd Street
Birmingham, AL 35205

EEO Officer:

This Charge/Complaint is being submitted against the Alabama Medicaid Agency 501 Dexter Ave. Montgomery, AL. Mr. Henry Davis, Lee Maddox, Human Resources.

In February 2003, I accepted a job with the office of Policy Advisor of this agency.

The Policy Advisor Office was located in room 7058, a newly created office, existing a few months for Mary Finch a law student to gain supervisory experience enabling her to be promoted to State Liaison for state Medicaid.

Ms. Finch worked with the Legislature at the time I became her secretary I worked in the office of Policy Advisor from February 23, 2003 to August 2003. After Ms. Finch took the State Bar Exam, the office was immediately dissolved. The office was temporarily placed under Research and Development. My duties did not change. Robin Rawls became my temporary supervisor, until November 2003 when Ms. Georgette Harvest became my supervisor the office was again changed to Research and Education. Around February 2004, Ms. Harvest was promoted. I was place again under. Research and Development, with Robin Rawls again being my temporary supervisor.

Linda Lackey did an evaluation of my work, covering periods of time when she was not my supervisor. I was evaluated on duties I did not perform and was not trained to perform by this department/agency. Although my evaluation states I meet satisfactory standards, unfounded statements/remarks were placed in my personnel file, given to other state agencies, and used against me to deny me promotions to the position of (ASA III) Administrative Support Assistant III.

Although my evaluation placed me in a meet standard category, I was given a memorandum dated June 30, 2003, which was maliciously placed in my personnel file. Thereby creating the beginning of a series of calculated efforts to ruin my career in state government I was asked by supervisors Linda Lackey and Mary Finch to sign the document that afternoon after my workday had ended, in an effort to get me to sign the

document without reading it stating to me all it was saying was that they had gone over the rules with me so I would understand.

I refused to sign the document because the portions I hurriedly read were false. I tried to explain that I did not have numerous counseling with Ms. Lackey or others pertaining to my work duties, which the memorandum fictiously stated. I did not have any counsel on any of the topics mentioned in the memorandum. There was no mention of any complaint about those task until the day the memorandum was given to me. Ms. Finch became angry and left the office.

On one occasion during the time I was employed in the office of Policy Advisor I was given an assignment where the supervisors Linda Lackey/Mary Finch knew it was going to be impossible for me to meet deadlines, I feel this was done also in an effort to grade me negatively. This was a systematic pattern followed by the two supervisors on my assignments for the the next few weeks, until the office was dissolved.

Example

A white male co-worker mention to me after a staff meeting that he read an e-mail, which was sent to our section pertaining to a work assignment. He knew I was busy with multiple assignments, he then told me he would help by doing the part I was assigned because he and another co-worker had developed a system of doing this particular job and they were very familiar with it, in order to give me more time to work on some of my other duties.

When I informed my supervisor Linda Lackey of the offer she became very upset even angry about the fact, the co-worker had offered to help me with the project. Her response was OH NO (in a very loud voice) Robin wants you to do this work yourself.
She then called the supervisor of the co-worker who offered to help. The supervisor told the co-worker he was not to offer me any help now or in the future with assignment, as I was to do the work myself.

From then on, my supervisors have singled me out as I now had concerted efforts on the part of higher ups in this agency to place me under supervisors willing to go along with the discrimination and racism against me. There have been unfair practices leveled against, as there are certain ones in this agency who are allowed to break agency rules ands state laws as well. I have also requested meeting with the Affirmative Action Committee to resolve some of my issues, I was denied. Every request I made was denied.

Shortly afterwards the office of Policy Advisor was dissolved leaving Robin Rawls as my temporary supervisor, during those months or two Ms Rawls was my supervisor I was harassed and assaulted by Ms.Rawls (see attached I)

When the Agency had its move because of the new Commissioner, I was placed in the office of Program Support under Mike Murphy, March 2004.

Before I made my official move to the office of Program Support, I was called in the personnel and told by the Deputy Commissioner that Mr. Murphy and Ms. Cathy Hall had expressed concerns to him that they were getting an employee who was a problem employee and that were concerns about my work performance it was apparent to me that I was not wanted in this unit. It should have also been apparent to Mr. Maddox also, as it proved to be only the truth later on. It is an established fact that it is hard to work for some one who does not want you to work for them. I asked Maddox not to send me to this unit, as I felt I would not be treated or graded fair.

There have been white employees who resigned during this move because they did not like where they were being placed, who were brought back the next day to a position they desired. During the same move another white employee made request to be placed in an office with a window, she was accommodated surely my request to be placed in an office where I would not be around co-workers who would assault, harass and try to intimidate me would not, should not be a problem for the agency.

I have experience working in the PA unit of this agency; I spoke with one of the supervisors in the unit, asked if she needed help, or could use me in the unit as I was already assisting with some of the work there. The supervisor submitted a letter to her supervisor to retain me in the unit it was signed, and submitted to the Deputy Commissioner (Mr. Lee Maddox) there was never a reply

I have not been offered any assistance by my employer with the problems I am having. To this day, I am still having problems with some of the same issues. What ever happened to employee assistance?

Assault II

March 16, 2004 Mrs. Rawls assaulted me again shortly after the agency move, I was placed in the office of Program Support. I made another complaint. (See attachment II)

On May 13, two months after I had been in the office of Program Support Mr. Murphy (present supervisor) informed he had gone back to a so-called corrective action plan placed I my file by Linda Lackey/Mary Finch. Prior to coming to this unit, a letter from personnel was sent to Mr. Murphy, instructing him to complete and submit a new form 40 for my duties. Instead, the form 13 P he used to do the so call 9 month interim appraisal was from the office of Research and Education where my former supervisor was Ms. Georgette Harvest with a date of November 13, 2003. I should have had a mid appraisal at 6 months

Although the 9 month interim appraisal in it self is mostly instructional, it gives the appearance of a complaint against my work performance and should never have placed in my personnel file.

Therefore, I contend this was a malicious act on the part of my present supervisor being carried over from former supervisors Linda Lackey/Mary Finch and Robin Rawls as they are all in agreement with the present assault on me and my career at this agency. There for I contend, if I were not a black female, I would not be treated in this discriminatory way.

On July 23, two months later Mr. Murphy graded me unfairly on my annual appraisal giving me a score of 12.9. The evaluation does not reflect a fair observation of my duties listed. I should have been graded on only four of the duties 2, 4, 6, and 8 listed on form 13 P because these are the ones I performed.

Mr. Murphy's assessment of the facts in this issue of my office work duties reflects his gross prejudice against me. Mr. Murphy clearly did not follow Agency guidelines/procedures in appraising my work performance therefore; I disagree with the grade given me. There was no signature from the reviewing supervisor. During the evaluation discussion Mr. Murphy often, made comments I felt were meant to intimidate me.

I contend my evaluation from Mr. Murphy reflect his bias and prejudice against me because of my ongoing issue of Robin Rawls assaulting me the fact that he told me during a meeting, by looking at myself and Robin Rawls (white female) he could see why she would be afraid of me. Could it be that he was referring to my color or size?

My evaluations for the past nine years reflect the level of performance I have performed efficiently for over the past nine years of state service, as I possess scores that both meet and exceed standards.

I made a third request to be transferred to another unit in the agency where I may be graded and treated fairly. Where there would be less stress while I work, as this situation has begun to affect my health. Therefore, I contend if I were not a black female, I would not be subject to this unfair treatment, discrimination, and racial prejudice.

My complaint to your office is I have been and still is being discriminated against harrassed assaulted, conspired against, and singled out by my former and present supervisors because I am a black female. Therefore, I would like your office to investigate my complaint

Elaine M. Coley
SSN 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
Ph. (334) 207-3606
DOB 8-13-1955
Date of Hire March 2000

Attachment I.

August 27th, 2003

This morning when I arrived to work I went in to ask Robin Rawls what she planned for me to do today, as she had been temporarily assigned to be my temporary supervisor. She ask me about my time slip I had turned in to her and said that I had not given her one for a specific day I told her that I had some hang time that I had used for the time in question. I was then told that I needed to turn in a leave slip for the time.

I then turned to walk away Mrs. Rawls jumped from her chair ran to the door and put her arm out across in front of the door grabbing the door knob saying to me that she was not finish talking to me My reply was okay what else is it you need to say? It was then stated to me that she needed a time slip for the time, my reply was I'll give you a time slip but you and I both know you are taking time from me for nothing. I then attempted to walk on out of the door to go to my office she then grabbed me by my arm and repeated the statement that she was not finish talking to me. I snatched my arm away from her and walked on out into the hall way were she followed me and jumped in front of me standing at the entrance of my office door saying Elaine we need to talk—you come in this office right now, I told her I was not going to talk to her alone, I then went in the opposite direction.

I then went to Personnel explained the situation to Mr. Henry Davis and ask for a meeting.

A meeting was immediately held with Robin Rawls my self Henry Davis and Nikki Scott. In the meeting it was express to Mrs. Rawls than she should never touch or assault another employee along with other rules and regulation pertaining to matter of this nature. We also went over the matter of the Corrective Action Plan that had been placed in file as an attachment to my evaluation by Mary Finch/Linda Lackey. Mrs. Rawls was told by Mr. Davis to come up with a work schedule or a project list when she mentioned the Corrective Action Plan.

Sincerely,

Elaine M. Coley

Attachment II

03/16/2004

Tuesday morning at 9:30 am (3/16/04) a meeting was held with Mike Murphy, Robin Rawls and I concerning an altercation that happened yesterday 03/15/2004, approximately 4:45 pm. The incident took place in my office space when I ask Robin Rawls about some boxes that were located in the front of my desk She told me (in an ugly tone) that the boxes were to go to Jean Stone's storage area. I told her okay and it was past my time to go home. I then asked why the boxes couldn't stay where they were until someone came to pick them up. She stated that she didn't want them to stay where they were and that they were going to stay right there and for me not to move them I then told her fine, she then went into her office In the meantime I was gathering my things to leave for the day; she then came back to the boxes and told me (very rudely) not to move the boxes because they were going to Jean Stone's storage area, I told her again fine, that I was going home because it was past time for me to go. I also asked her what was wrong with her and why she was talking to me that way. She then said to me that I would not speak to her in that tone of voice and that we were going to talk to Henry Davis and Mike Murphy. I told that I was going home and that I was sick of her harassing me everyday, she then jumped in front of me to block my way. I asked her to move, her reply was "no Elaine you're going to stay right here and talk". So I asked her again to move out of my way I finally made my way around her after she went into the hall to get Tina Edwards. She then returned again to stop me from leaving. By this time Tina Edwards was telling her that some things she should just let go and that she should just let this go. But she never paid any attention to Tina because by this time I was headed to the side door (#3086). When I got to the side door she had run around from the other door (3084) and was there with both her arms stretched out trying to block me again.

During the meeting I was lied on and made to look like the villain. Robin Rawls completely lied and turned the situation around. I was told that there were two statements given in reference to the incident. I was not shown the one statement that had been given to Mike Murphy. He informed me that he had yet to receive another one as there were two. I saw during the meeting that Robin was going to continue to fabricate and be unfair about the situation as she has been in the past when it comes to dealing with me. I then expressed to Mike Murphy that I was very uncomfortable working around her, because I now see that she is a treacherous liar, underhanded, conniving person to say the least Mike Murphy also expressed to me during the meeting he could see why (by looking at the two of us) how Robin could possibly be afraid of me.

This is not the first time Robin Rawls and I have had these kinds of dealings She previously on another occasion grabbed me by my arm in an effort to stop me from departing she and I had to talk to Personnel Officials about that incident.

Therefore in an effort to resolve this situation I am requesting to be transferred immediately to another area in the agency.

Sincerely,

Elaine M. Coley

ALABAMA MEDICAID AGENCY

March 3, 2004

## MEMORANDUM

To:        Lee Maddox, Deputy Commissioner
           Administrative Services

Thru:      Mary G. McIntyre, M.D.
           Medical Director

From:      Felecia S. Barrow, Associate Director
           Prior Approval Unit
           Office of the Medical Director

Re:        Request to Acquire Clerical Staff— Elaine Coley (ASA II)


This memo serves as a request to acquire current ASA II, Elaine Coley. Ms. Coley was previously assigned to the Research and Development Unit, Office of the Medical Director and due to the reorganization, has been assigned to another division.

The PA Unit has been fortunate enough to have received three additional nurses and a clerical aide as a result of the reorganization. As indicated on the Prior Approval Unit Organizational Plan submitted in January, it will be the function of the Nurse Reviewers in the Unit to review for medical necessity, the over 3,000 requests submitted on a monthly basis. It will be the function of the clerical staff to prepare the requests for review and input/retrieve data from the system as instructed by the Nurse Reviewers and MCBS II. The additional staff that we have received falls in line with the organizational plan for the Unit (see attached) and your recognition of the critical need is greatly appreciated.

In addition to the current requests received and processed, the Unit will now handle processing of all dental PA's. The number of requests submitted on a monthly basis can average from 400 to 600. In order to effectively manage the additional requests that will need processing, I am requesting the acquisition of another clerical staff person— Ms. Coley.

Ms. Coley, under the authorization of the Office of the Medical Director, has had an opportunity to assist the Unit in preparing correspondence and has been trained on input/retrieval functions of the system regarding PA requests processed. I believe that she would be an asset to the Unit as we continue to manage the incoming workload efficiently and effectively.

Thank you for your consideration of this request as you have provided in previous requests. Should you require additional information, please do not hesitate to contact me at 2-5223.

\fsb

Attachment

cc:    Mary McIntyre, M.D.