IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

| | |
|---|---|
| Elaine M. Coley, ) | 2006 NOV 28 A 8: 37 |
| Plaintiff, ) | |
| ) | DEBRA P. HACKETT, CLK |
| ) | U.S. DISTRICT COURT |
| v. ) | MIDDLE DISTRICT ALA |
| ) | CASE no: 2:06cv378-WKW |
| ) | |
| ALABAMA MEDICAID AGENCY, ) | |
| ) | |
| Defendant. ) | |

Comes now Plaintiff and Response to Defendant's Interrogatories and Request for Production

1. Elaine M. Coley, 6321 Sandy Ridge Curve, Montgomery Al. 36117.  PH. (334) 207-3606

2. Denied rights to an impartial hearing procedures as described in the Medicaid Employee Handbook. Graded discriminatory on 2003 and 2004 annual appraisals, by Mary Finch/Linda Lackey and Mike Murphy. I suffered mental anguish from February 2003 to January 2005. Denied training, job positions were upgraded to assure the positions were not available to me. Assaulted twice by a white co-worker, Robin Rawls. The investigation the agency conducted was very discriminatory in that it was slanted to a defensive posture allowing white co-workers who were employed by the agency to express and make request for themselves. I was never contacted or interviewed to express my concerns during the so call investigation, Although I made several written requests.

3. Kim Black, Paige Clark, Christa Sanders, Robin Rawls, Mary Finch, Linda Lackey, Mike Murphy.

4. Kim Black ASA III a white co-worker was having problems working in the Commissioner's office When she requested to be place in the ASA II position which I currently held. Her request was granted, the position was upgraded to that of an ASA III to accommodate her request. My requests to be moved to another area in the agency were not.

   Christa Sanders a white co-worker working in the same unit at the time as myself, was experiencing Problems with her immediate supervisor, she was offered employee assistance and allowed to express her concerns and was able to obtain counseling to help her cope with the problems she was experiencing. I was not offered any assistance. Ms. Sanders and I was experiencing problems at the same time.

   Paige Clark, a white co-worker, around March 2004, Ms. Clark resigned during an agency move stating she did not want to be placed in an area where the agency had assigned her to work, in the prior authorization unit. The next day she was rehired and placed in the section of the Agency where she desired to work.

   Robin Rawls, I was made to email Mike Murphy when I went to lunch and when I returned from lunch Ms. Rawls and other white co-workers were not made to do this task . Mr. Murphy graded me unfairly on my 2004 evaluation after the second assault of Ms. Rawls and meeting with Ms. Rawls and myself,

where he made condescending remarks to me. No white employees in the in the unit was graded down on their evaluation. Ms. Rawls constantly abused the leave policy most afternoons to pick up her younger daughter from school and return to work without using annual leave. I was not allowed that opportunity. Ms. Rawls was often late when working on projects and not reprimanded I was not treated that way by my supervisors, Mike Murphy, Linda Lackey/Mary Finch.

Mary Finch/Linda Lackey, Ms. Finch and Ms Lackey are afforded the opportunity to go on and further their careers with the agency since the institution of the corrective action plan given me by these white supervisors, both have been promoted, while my working at the time in the agency was an experience of enduring a hostile environment, being assaulted, and graded poorly on evaluations, and being passed over on a certificate of eligibles many times as a result of the corrective action plan created by them and placed in my file. White employees in this section were not placed on such a plan, nor was this type of plan placed in any of the white employees files for review. Please refer to paragraph five (5) for Mr. Murphy.

5. Mike Murphy discriminated against me when he graded me down on duties I had not performed. Mr. Murphy gave me a zero on one duty I performed where the work I performed was used for the purpose it was intended. The Interim corrective action plan used during the evaluation period was instituted by another white supervisor from a previous job with different duties. There was no new form 40 with new duties for the job position given to me for the position until after the appraisal was completed in July 2004. When Mr. Murphy talked to me about concerns with my work performance in May 2004, two (2) months after I moved to this position. I was informed at this time he was carrying the corrective action plan over from the the position I held in the office of Policy Advisor, an office which was dissolved around mid August 2003, where I remained, until approximately 8 weeks later this office was replaced by the office of Research and Education, where I was placed under the supervision of Ms. Georgett Harvest, during my employment under the supervision of Ms. Harvest the corrective action plan was never mentioned to me. This office was also dissolved a few months later, before the Agency move of March 2004, which placed me under the direct supervision of Mike Murphy. None of the white employees duties were carried over as such.

Ms. Mary Finch/Linda Lackey on June 30, 2003, came to my office approximately ten to fifteen minuets before time for me to go home that day in an effort to hurry me through the document which was placed in my file as an attachment to my annual appraisal of 2003. Ms. Lackey lied when she said she stated I had raised my voice at her and stating that my demeanor was inappropriate.
It was a calculated effort to destroy my character. While in the office of Policy Advisor under the supervision of Linda Lackey/Mary Finch I was not allowed to have visitors or complete training for which I had been scheduled while Ms. Lackey, white supervisor was allowed visitors and was in the business of selling her pastries and krafts on the job during business hours. I was on one occasion told my son was to be escorted while in the building by Ms. Lackey. White co-workers were allowed to have office guest from time to time, I wasn't.

While working in the office of Policy advisor my duties were to count pill packs, stickers, fold boxes and work on the legislative data base. A white co-worker Myron Uptain, knew I had an overload of work, offered to help me with one of my projects, stating he would take a particular project because he and another white co-worker had develop a method for doing this particular task, knowing, the help would free me to work on other projects. I was told by Mr. Myron Uptain later that his supervisor Ms. Jean Stone advised him that he was not to help me as I was to do this project myself. When I informed Ms. Lackey that Mr. Uptain offered to help she stated that I was to do the job myself. I feel this was one of many calculated efforts by my white supervisors, Ms. Lackey and Ms. Finch to set me up to fail.

6. Medicaid could have promoted me to the position of ASA III in 2004 when interviewed for the position of ASA III in the office of Ms. Kim Davis. This would have moved me from the office of Progran Support and away from the hostile environment which I was forced by the agency to work

in since late August 2003. If Ms. Mary Finch/Linda Lackey had not placed the attachment of the 2003, annual appraisal in my file I would have been able to get promoted to another agency, thereby avoiding future pass overs from other state agencies and helping myself to be relieved of the discriminatory treatment of future white Medicaid supervisors..

7. The corrective action plan although mostly instructional, gives the appearance of my being a a problem employee. I feel Ms. Finch at the time of instituting the so call corrective action plan being a student of the law and a newly board certified attorney was in a position to steer the situation in favor of the herself and the agency as retaliation for not being able to coerce me to sign the attachment to my 2003 annual appraisal and not being able to give me the score of 14.7 which was the original score intended at the time. Ms. Finch, Ms. Lackey and Mr. Murphy worked together to sabotage my state government career. Until the attachment of 2003 and the low score of annual appraisal 2004, I had been able to transfer within the state government without being passed over by other state agencies.

8. Lee Maddox upgraded two positions in the area of Certification Support after learning I had interviewed for a position in the area. An announcement went out for the positions I responded to the announcement, interviewed and was told by the supervisor who interviewed me for the positions a few days later the positions had been upgraded from ASA II to that of MCBS. Please refer to the latter part of interrogatory seven and second paragraph of interrogative four (4).

9. Robin Rawls was supervisor of white employees whom she did not try to prevent from leaving the office work place when it was time to go home Ms. Rawls did not harass white employees in the agency as she did me by continuously making job task impossible to complete as she did me, also she was always saying I did not tell her at the time she was my temporary supervisor where I was and that I stayed on phone all the time. Ms. Rawls never tried to destroy white employees character by saying she was afraid of them. Ms. Rawls constantly lied on me to make herself look good, the white employees in the office were not subject to this type treatment. Please refer to attachment I and II of my complaint.

10. Ms. Carol Herrman being the Commissioner had/have the authority to correct and inforce state policy in regards to Medicaid employees who are aggrieved as I was refused to speak with me or personally address the situations even upon several written requests addressed to her personally. Ms. Herrman had the authority to immediately address the situation which would have saved me the continued harassment, mental anguish, and humiliation of being subjected to a hostile work environment and negative insults by the Deputy Commissioner, Lee Maddox, temporary supervisor, Robin Rawls and supervisor Mike Murphy.

11. Lee Maddox did not fulfill the obligation of his position in that he refused to act with fair judgement of my situation. Mr. Maddox did not want to discuss the situation of the involvement Ms. Finch had in the out coming of my employment at Medicaid. He was aware of Mr. Murphy not wanting me to work in his area he did not try correct the my problem when I tried to talk to him about a solution instead I was placed in the Program Support section. Mr. Maddox during the meeting on July 22, 2004 made it very clear, by his demeanor that he was not willing to solve or attempt to solve any of my concerns, he ask me if I was on the transfer list thereby indicating he did not want to deal with me. Mr. Maddox does not treat white employees with disrespect or a negative attitude. Please refer to interrogative eight (8).

12. Please refer to Interrogative five (5).

13. Please refer to interrogative 3 (3.)

14. Please refer to interrogatives three (3) through eleven (11).

15. Please refer to interrogative six (6).

16. Qualifications that of general and skilled office workers. Typing, filing answering the phone Computer skills, organizational skills etc.

17. I completed a written exam administered by the State Personnel, when interview by Medicaid supervisors for promotion my application was given to Kim Davis Allen and Vicky Wilson in the year 2004. Please refer to interrogatives six (6) fifteen (15) and seventeen (17).

18. Assaults complaint labeled attachment one (1) dated August 27, 2003, and attachment two dated March 16, 2004. My complaint was made to Henry Davis, Personnel Manager and Nikki Scott EEOC Coordinator in personnel.

19. I have worked for the State of Alabama for eleven (11) plus years

20. Department of Transportation, Ms. Bonita Crosskno, Discrimination, January 2000.

21. Please refer to interrogatives two(2) four (4) five (5) six (6) seven (7) eight (8) and Nine (9).

22. None

23. Tiffany Minnifield, Wanda Davis, Felicia Barrow, Georgette Harvest, Nikki Scott, Henry Davis and Krista Sanders.

24. State Personnel, Administrative hearing for giving the approval of the Passovers on a certificate of eligibles on the ASA III positions. The Administrative judge upheld the decision of the personnel board.

25. Punitive Damages, compensatory damages, mental anguish/emotional distress to awarded by jury if applicable.

Production

Documents for production that apply are in possession of the defendants.

I do hereby certify that on this 25th day of November, 2006, I emailed a copy of the Answers to the Interrogatives and Request for Production of Documents to the Defendants. I am placing the hard copy in the mail properly addressed first class postage prepaid.

Dated: November 25, 2006

WILKERSON & BRYAN, PC.   ATTN: Amanda C. Carter
405 South Hull Street
Montgomery, AL 36104
Telephone: (334) 265-1500
Facsimile: (334) 265-0319
mark@wilkersonbryan.com
amanda@wilkersonbryan.com

                                    Ms Elaine M. Coley, Pro Se
                                    6321 Sandy Ridge Curve
                                    Montgomery, Al 36117
                                    (334) 207-3606

*Elaine M. Coley*