## ALABAMA MEDICAID AGENCY

# MEMORANDUM

DATE:        October 30, 2003

TO:          Elaine M. Coley
             Research & Education Division

FROM:        Henry W. Davis, III, Director  HWD | tsm
             Human Resources Division

SUBJECT:     Intra-Agency Transfer

      This memorandum will confirm your lateral transfer as an Administrative Support Assistant II from Research and Development Unit to the Director's Office of the Research and Education Division.  The effective date of this transfer is scheduled to be November 1, 2003, and Ms. Georgette Harvest, Director, will serve as your immediate supervisor.  You will remain at your current biweekly salary and your position number will continue to be 3433500.

HWD/tsm
cc: John Searcy
    Georgette Harvest

# ALABAMA MEDICAID AGENCY

March 4, 2004

**MEMORANDUM**

**TO:**     Elaine Coley

**FROM:**    Henry W. Davis, III
             Director
             Human Resources Division

**SUBJECT:**   Organizational Structure Change Transfer

This memorandum will confirm your interagency transfer and the transfer of the Outreach and Education Unit of Outreach, Education, and Research Division, Georgette Harvest, Director, under John Searcy, Medical Director to the Director's Office of the Program Support Division, Mike Murphy, Director, and Kathy Hall, Deputy Commissioner of Program Administration.

The effective date of this transfer is March 6, 2004, in your current classification and at the same pay rate. Please update and submit a revised Form 40 to the Human Resources Division.

cc: Mike Murphy
     Kathy Hall
     John Searcy
     Georgette Harvest
     Lesia Williams
     Paul Brannan
     Gladys Gray

Elaine M. Coley
6321 Sandy Ridge Curve
Montgomery, AL 36117

December 14, 2004

Equal Employment Opportunity Office
Ridge Park Place
1130 22nd Street
Birmingham, AL 35205

EEO Officer:

This Charge/Complaint is being submitted against the Alabama Medicaid Agency 501
Dexter Ave. Montgomery, AL. Mr. Henry Davis, Lee Maddox, Human Resources.

In February 2003, I accepted a job with the office of Policy Advisor of this agency.

The Policy Advisor Office was located in room 7058, a newly created office, existing a
few months for Mary Finch a law student to gain supervisory experience enabling her to
be promoted to State Liaison for state Medicaid.

Ms. Finch worked with the Legislature at the time I became her secretary I worked in the
office of Policy Advisor from February 23, 2003 to August 2003. After Ms. Finch took
the State Bar Exam, the office was immediately dissolved. The office was temporarily
placed under Research and Development. My duties did not change. Robin Rawls
became my temporary supervisor, until November 2003 when Ms. Georgette Harvest
became my supervisor the office was again changed to Research and Education. Around
February 2004, Ms. Harvest was promoted. I was place again under. Research and
Development, with Robin Rawls again being my temporary supervisor.

Linda Lackey did an evaluation of my work, covering periods of time when she was not
my supervisor. I was evaluated on duties I did not perform and was not trained to
perform by this department/agency. Although my evaluation states I meet satisfactory
standards, unfounded statements/remarks were placed in my personnel file, given to other
state agencies, and used against me to deny me promotions to the position of (ASA III)
Administrative Support Assistant III.

Although my evaluation placed me in a meet standard category, I was given a
memorandum dated June 30, 2003, which was maliciously placed in my personnel file.
Thereby creating the beginning of a series of calculated efforts to ruin my career in state
government I was asked by supervisors Linda Lackey and Mary Finch to sign the
document that afternoon after my workday had ended, in an effort to get me to sign the

document without reading it stating to me all it was saying was that they had gone over the rules with me so I would understand.

I refused to sign the document because the portions I hurriedly read were false. I tried to explain that I did not have numerous counseling with Ms. Lackey or others pertaining to my work duties, which the memorandum fictiously stated. I did not have any counsel on any of the topics mentioned in the memorandum. There was no mention of any complaint about those task until the day the memorandum was given to me. Ms. Finch became angry and left the office.

On one occasion during the time I was employed in the office of Policy Advisor I was given an assignment where the supervisors Linda Lackey/Mary Finch knew it was going to be impossible for me to meet deadlines, I feel this was done also in an effort to grade me negatively. This was a systematic pattern followed by the two supervisors on my assignments for the the next few weeks, until the office was dissolved.

Example

A white male co-worker mention to me after a staff meeting that he read an e-mail, which was sent to our section pertaining to a work assignment. He knew I was busy with multiple assignments, he then told me he would help by doing the part I was assigned because he and another co-worker had developed a system of doing this particular job and they were very familiar with it, in order to give me more time to work on some of my other duties.

When I informed my supervisor Linda Lackey of the offer she became very upset even angry about the fact, the co-worker had offered to help me with the project. Her response was OH NO (in a very loud voice) Robin wants you to do this work yourself. She then called the supervisor of the co-worker who offered to help. The supervisor told the co-worker he was not to offer me any help now or in the future with assignment, as I was to do the work myself.

From then on, my supervisors have singled me out as I now had concerted efforts on the part of higher ups in this agency to place me under supervisors willing to go along with the discrimination and racism against me. There have been unfair practices leveled against, as there are certain ones in this agency who are allowed to break agency rules ands state laws as well. I have also requested meeting with the Affirmative Action Committee to resolve some of my issues, I was denied. Every request I made was denied.

Shortly afterwards the office of Policy Advisor was dissolved leaving Robin Rawls as my temporary supervisor, during those months or two Ms Rawls was my supervisor I was harassed and assaulted by Ms.Rawls (see attached I)

When the Agency had its move because of the new Commissioner, I was placed in the office of Program Support under Mike Murphy, March 2004.

Before I made my official move to the office of Program Support, I was called in the personnel and told by the Deputy Commissioner that Mr. Murphy and Ms.Cathy Hall had expressed concerns to him that they were getting an employee who was a problem employee and that were concerns about my work performance it was apparent to me that I was not wanted in this unit. It should have also been apparent to Mr. Maddox also, as it proved to be only the truth later on. It is an established fact that it is hard to work for some one who does not want you to work for them. I asked Maddox not to send me to this unit, as I felt I would not be treated or graded fair.

There have been white employees who resigned during this move because they did not like where they were being placed, who were brought back the next day to a position they desired. During the same move another white employee made request to be placed in an office with a window, she was accommodated surely my request to be placed in an office where I would not be around co-workers who would assault, harass and try to intimidate me would not, should not be a problem for the agency.

I have experience working in the PA unit of this agency; I spoke with one of the supervisors in the unit, asked if she needed help, or could use me in the unit as I was already assisting with some of the work there. The supervisor submitted a letter to her supervisor to retain me in the unit it was signed, and submitted to the Deputy Commissioner (Mr. Lee Maddox) there was never a reply

I have not been offered any assistance by my employer with the problems I am having. To this day, I am still having problems with some of the same issues. What ever happened to employee assistance?

Assault II

March 16, 2004 Mrs. Rawls assaulted me again shortly after the agency move, I was placed in the office of Program Support. I made another complaint. (See attachment II)

On May 13, two months after I had been in the office of Program Support Mr. Murphy (present supervisor) informed he had gone back to a so-called corrective action plan placed I my file by Linda Lackey/Mary Finch. Prior to coming to this unit, a letter from personnel was sent to Mr. Murphy, instructing him to complete and submit a new form 40 for my duties. Instead, the form 13 P he used to do the so call 9 month interim appraisal was from the office of Research and Education where my former supervisor was Ms. Georgette Harvest with a date of November 13, 2003. I should have had a mid appraisal at 6 months

Although the 9 month interim appraisal in it self is mostly instructional, it gives the appearance of a complaint against my work performance and should never have placed in my personnel file.

Therefore, I contend this was a malicious act on the part of my present supervisor being carried over from former supervisors Linda Lackey/Mary Finch and Robin Rawls as they are all in agreement with the present assault on me and my career at this agency. There for I contend, if I were not a black female, I would not be treated in this discriminatory way.

On July 23, two months later Mr. Murphy graded me unfairly on my annual appraisal giving me a score of 12.9. The evaluation does not reflect a fair observation of my duties listed. I should have been graded on only four of the duties 2, 4, 6, and 8 listed on form 13 P because these are the ones I performed.

Mr. Murphy's assessment of the facts in this issue of my office work duties reflects his gross prejudice against me. Mr. Murphy clearly did not follow Agency guidelines/procedures in appraising my work performance therefore; I disagree with the grade given me. There was no signature from the reviewing supervisor. During the evaluation discussion Mr. Murphy often, made comments I felt were meant to intimidate me.

I contend my evaluation from Mr. Murphy reflect his bias and prejudice against me because of my ongoing issue of Robin Rawls assaulting me the fact that he told me during a meeting, by looking at myself and Robin Rawls (white female) he could see why she would be afraid of me. Could it be that he was referring to my color or size?

My evaluations for the past nine years reflect the level of performance I have performed efficiently for over the past nine years of state service, as I possess scores that both meet and exceed standards.

I made a third request to be transferred to another unit in the agency where I may be graded and treated fairly. Where there would be less stress while I work, as this situation has begun to affect my health. Therefore, I contend if I were not a black female, I would not be subject to this unfair treatment, discrimination, and racial prejudice.

My complaint to your office is I have been and still is being discriminated against harra ssed assaulted, conspired against, and singled out by my former and present supervisors because I am a black female. Therefore, I would like your office to investigate my complaint

Elaine M. Coley

*Elaine M. Coley*

SSN 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
Ph. (334) 207-3606
DOB 8-13-1955
Date of Hire March 2000

*Attachment 1*

August 27th, 2003

This morning when I arrived to work I went in to ask Robin Rawls what she planned for me to do today, as she had been temporarily assigned to be my temporary supervisor. She ask me about my time slip I had turned in to her and said that I had not given her one for a specific day I told her that I had some hang time that I had used for the time in question. I was then told that I needed to turn in a leave slip for the time.

I then turned to walk away Mrs. Rawls jumped from her chair ran to the door and put her arm out across in front of the door grabbing the door knob saying to me that she was not finish talking to me My reply was okay what else is it you need to say? It was then stated to me that she needed a time slip for the time, my reply was I'll give you a time slip but you and I both know you are taking time from me for nothing. I then attempted to walk on out of the door to go to my office she then grabbed me by my arm and repeated the statement that she was not finish talking to me. I snatched my arm away from her and walked on out into the hall way were she followed me and jumped in front of me standing at the entrance of my office door saying Elaine we need to talk—you come in this office right now, I told her I was not going to talk to her alone, I then went in the opposite direction.

I then went to Personnel explained the situation to Mr. Henry Davis and ask for a meeting.

A meeting was immediately held with Robin Rawls my self Henry Davis and Nikki Scott. In the meeting it was express to Mrs. Rawls than she should never touch or assault another employee along with other rules and regulation pertaining to matter of this nature. We also went over the matter of the Corrective Action Plan that had been placed in file as an attachment to my evaluation by Mary Finch/Linda Lackey. Mrs. Rawls was told by Mr. Davis to come up with a work schedule or a project list when she mentioned the Corrective Action Plan.

Sincerely,

*Elaine M. Coley*

Attachment II

03/16/2004

Tuesday morning at 9:30 am (3/16/04) a meeting was held with Mike Murphy, Robin Rawls and I concerning an altercation that happened yesterday 03/15/2004, approximately 4:45 pm. The incident took place in my office space when I ask Robin Rawls about some boxes that were located in the front of my desk She told me (in an ugly tone) that the boxes were to go to Jean Stone's storage area. I told her okay and it was past my time to go home. I then asked why the boxes couldn't stay where they were until someone came to pick them up. She stated that she didn't want them to stay where they were and that they were going to stay right there and for me not to move them I then told her fine, she then went into her office In the meantime I was gathering my things to leave for the day; she then came back to the boxes and told me (very rudely) not to move the boxes because they were going to Jean Stone's storage area, I told her again fine, that I was going home because it was past time for me to go. I also asked her what was wrong with her and why she was talking to me that way. She then said to me that I would not speak to her in that tone of voice and that we were going to talk to Henry Davis and Mike Murphy. I told that I was going home and that I was sick of her harassing me everyday, she then jumped in front of me to block my way. I asked her to move, her reply was "no Elaine you're going to stay right here and talk". So I asked her again to move out of my way I finally made my way around her after she went into the hall to get Tina Edwards. She then returned again to stop me from leaving. By this time Tina Edwards was telling her that some things she should just let go and that she should just let this go. But she never paid any attention to Tina because by this time I was headed to the side door (#3086). When I got to the side door she had run around from the other door (3084) and was there with both her arms stretched out trying to block me again.

During the meeting I was lied on and made to look like the villain. Robin Rawls completely lied and turned the situation around. I was told that there were two statements given in reference to the incident. I was not shown the one statement that had been given to Mike Murphy. He informed me that he had yet to receive another one as there were two. I saw during the meeting that Robin was going to continue to fabricate and be unfair about the situation as she has been in the past when it comes to dealing with me. I then expressed to Mike Murphy that I was very uncomfortable working around her, because I now see that she is a treacherous liar, underhanded, conniving person to say the least Mike Murphy also expressed to me during the meeting he could see why (by looking at the two of us) how Robin could possibly be afraid of me.

This is not the first time Robin Rawls and I have had these kinds of dealings She previously on another occasion grabbed me by my arm in an effort to stop me from departing she and I had to talk to Personnel Officials about that incident.

Therefore in an effort to resolve this situation I am requesting to be transferred immediately to another area in the agency.

Sincerely,

Elaine M. Coley

2.

Tuesday, December 12, 2006


To Whom It May Concern:

This is a note regarding my employment at Alabama Medicaid Agency and the situation that has happened while being employed here. I have spoken to my supervisor at the time Mike Murphy regarding each of these situations. And as a new employee and on probation you come into the office with high hopes and you are not prepared for the situation that happened in the office. Robin Rawls and Mary Hasselwander have shown to me to be very much a bully on the job.

On 7/18/06    While, my supervisor; Mike Murphy was out of the office. Mr. Murphy had talked to me regarding his absence and what he wanted to be done. Mr. Murphy also stated to me about the changes the Commissioner or Mrs. Kathy Hall will be needed to complete this task. So, I had a pretty good item of what was need to do the job and how to handle it. I also wanted to show my supervisor; Mr. Murphy that I could do the job without supervision. So the morning I came in I was clear about the instruction that had been given to me the date before. I started on the notebooks for the Commissioner, the Governor's Office and staff. Before I could leave the office I had a little problem with Robin Rawls. She jumped in front of me and would not move. She wanted to know everything I was doing. I asked her to move. She would not I went around her. She was like a kid that sticks to you.  As I was trying to leave the office she approaching me and would let me pass. Here behavior was unruly and unprofessional. I had to ask myself what kind of office was this. I went on with my job that Mike had asked of me. I told myself that I will get with Mike about this situation when he returns. I wanted to know if this behavior was expectable.


10/13/06    I was trying to get my new computer set up and ready to work. I had problems with the computer and the time and attendance report was due to be turned in Friday, October 13, 2006. I had prided myself in getting my job done in a timely matter. So with computer problems and I called the help desk. They bought back my old computer till they could give me another one. Meanwhile, I went to Cathy

Brown office to borrow her computer to finish the time and attendance report. While doing that my memory stick got caught into her computer and it would not relieve it. So I went back to my desk and call all of the Associate Director's who hasn't signed the report, Debra Shufford and other one being Brenda Vaughn. I went back to Ms. Brown office to see if I could retrieve the memory stick with no luck. When, I arrived back to my office. I found Brenda Vaughn sitting in Mike Murphy office at the conference table stated that she was there to pick me up. I told her that I had to finish the report first. The gentlemen from the help desk came in with my new computer and the paper work for it. Robin Rawls, Mary Hasselwander and Brenda Vaughn started surrounding me at my desk screaming at me to come on to help Brenda Vaughn with mail outs and the time report could be done another time. When my replacement computer for the new computer was being put in and the paper work needed to be signed and the old paper work needed to be given back. I also needed make copies of the timesheet and turn the timesheets in to personnel. They needed Brenda Vaughn and Debra Shufford signature. Debra was coming around the corner because I just got off the telephone with her. I simply stated to all of them I had to do the finish the report first then I would come down to the supply room to help them.

These are some of the situation that has been going on in the Program Support Division.

At the time of execution of the instrument Edith Todd could read, write and converse in the English language, and was not suffering from defects of sight, hearing or speech or any other physical or mental impairment, which would affect my capacity to make a valid affidavit. We make this affidavit at the request of Elaine Coley.



MEMORANDUM

AND

REQUEST FOR HEARING BEFORE
A GRIEVANCE COMMITTEE

TO:        *Ms. Carol Herrmann
           Medicaid Agency Commissioner

TO:        Lee Maddox
           Deputy Commissioner, Adm. Services

FROM:      Elaine Coley

DATE:      July 22, 2004

RE: Replica of meeting pertaining to grievance
on July 22, 2004

First complaint filed on this issue is dated August 27, 2003, (attachment one (1) enclosed)
the issue was not resolved because it was never properly handled in accordance to this
agency procedures on complaints / grievances.
Second complaint on the issue is dated March 16, 2004, (attachment two (2) enclosed)
which was not handled by this agency procedures on complaints / grievances, therefore
remaining unresolved. **Third complaint is dated July 7, 2004, stating issues unresolved
in the first and second complaint, were given to Alabama department of
transportation, and used to deny me promotion to ASA III at the Alabama
Department of Transportation on May 13, 2004 by passing me over on a certificate
of eligibles using unresolved issues.**

Reference to my third complaint, I was called to a meeting on July 22, 2004, which lasted
approximately fifteen to seventeen minutes. Present at the meeting was **Lee Maddox,
and his secretary Ms. Patricia Jones and myself.** Mr. Maddox took at least fourteen
minutes reading my file. Then, I was told by him (Mr. Maddox) that there was no
complaint in my file pertaining to Robin Rawls wherein she assaulted me. I replied, I did
file a copy of the complaint and made reference to the corrective action plan with Linda
Lackey and Mary Finch.

*Mr. Maddox got extremely upset, threw up his hands, and in a demeaning manner, told
me quote " If you think you going to come in here and talk about Mary Finch, you might
as well get up and leave my office right now. You might as well just leave . . . now."end
quote I replied its impossible to have this meeting without dealing with the corrective
plan and Mary Finch. Ms. Finch was the supervisor who instituted the corrective action
plan. He again repeated quote "If you are going to talk about Mary Finch, you may as well
just leave my office." end quote I responded quote "ok." end quote I left his office.

Within an hour after leaving the meeting with Mr. Maddox, his secretary, Patricia Jones, walked a memorandum to my office from Mr. Maddox (**listed here as attachment three**) confirming that we did meet on that day, further stating that he requested information from me to substantiate my allegation of assault by my coworker Robin Rawls, requesting dates and times, witnesses to such assault, that the information was necessary for the report in order to conduct an investigation on behalf of the commissioner, Ms. Carol Herrmann. Second paragraph stated, that neither Human Resources Division or State Personnel had copy of my rebuttal to my evaulation in 2003 or the alleged complaint I filed with the agency.

It is of interest to note, Mr. Maddox contend there is no copy of this complaint / allegation in my file, upon leaving his office, I went to personnel and was told by Nikki Scott (EEOC Officer in personnel) that she had a copy of the complaint on Robin Rawls assaulting me and told Mr. Maddox he could have a copy, it is a fact we had meetings on the issue of the assault- **although left unresolved.** Present at that meeting was **Robin Rawls, Mr. Henry Davis, Nikki Scott and myself.** We also went over the matter of the corrective action plan which was placed in my file, again **remaining unresolved, because they were never removed from my file and said documents were used against me to deny me a promotion (at Alabama Department of Transportation), here listed as** aforestated <u>attachment one</u>, dated August 27, 2003, March 16, 2004, <u>attachment two</u>. **This agency is / was in possession of these documents. This agency is aware the assault happened and needs to resolve it, <u>making sure the issues complained of will cause me no further harm.</u>**

In June 2004, I went to Mr. Maddox to seek a resolution to the uresolved assault complaint. Mr. Maddox asked me what did I want him to do about it, I told him my immediate resolution is to be moved from the area wherein the assault took place because I was being harrassed and retailated against. Mr. Maddox response was that he did not have any place to put me and asked me had I considered getting on the transfer list.

Before being moved to the program support division, Mr. Maddox called me in a meeting in personnel with Mr. Henry Davis and myself, and told me Mr. Murphy and Ms. Kathy Hall had expressed concerns to him after viewing my personnel file and the corrective action plan placed in my file. Their concerns were they were getting an employee with negative job history due to the corrective action plan in my file. I replied quote "it looks as if Mr. Murphy and Ms. Kathy Hall do not want me to work for them, please send me some place else." end quote Mr. Maddox said he had no other place to put me to work.

Shortly before my conversation with Mr. Maddox, due to the fact that I was assisting the PA unit with their work, my computer had been set up to work in PA unit, I asked one of the supervisors from the PA unit, if they could use me as an employee in that unit. Their response was yes, they really needed more help because they lost two or three employees at the time, and there was a lot of work to be done. Dr. Mary McIntyre, who is director of the PA unit, filled out the

paperwork to transfer me to her unit, and submitted it to personnel, I have experience working with that unit before. I made inquiries to personnel pertaining to the approval of me to work in the PA unit and was told Mr. Maddox got the paperwork and there was no further action or approval taken for me to work in that unit.

I would like to make reference to Alabama Medicaid Agency grievance procedures and request an impartial hearing be reconvened according to the rules and regulations stated in this agency's grievance procedures listed in employees personnel handbook, guaranteeing an impartial hearing. Mr. Maddox handled this issue unprofessionally, biased, and unnecessarily insulted me. I believe it was impossible to resolve the situation without stating all the facts, which include Ms. Mary Finch. Anyone reading my complaint would have seen she was very involved in the issue complained of.

Elaine Coley

August 27th, 2003

This morning when I arrived to work I went in to ask Robin Rawls what she planned for me to do today, as she had been temporarily assigned to be my temporary supervisor. She ask me about my time slip I had turned in to her and said that I had not given her one for a specific day I told her that I had some hang time that I had used for the time in question. I was then told that I needed to turn in a leave slip for the time.

I then turned to walk away Mrs. Rawls jumped from her chair ran to the door and put her arm out across in front of the door grabbing the door knob saying to me that she was not finish talking to me My reply was okay what else is it you need to say? It was then stated to me that she needed a time slip for the time, my reply was I'll give you a time slip but you and I both know you are taking time from me for nothing. I then attempted to walk on out of the door to go to my office she then grabbed me by my arm and repeated the statement that she was not finish talking to me. I snatched my arm away from her and walked on out into the hall way were she followed me and jumped in front of me standing at the entrance of my office door saying Elaine we need to talk—you come in this office right now, I told her I was not going to talk to her alone, I then went in the opposite direction.

I then went to Personnel explained the situation to Mr. Henry Davis and ask for a meeting.

A meeting was immediately held with Robin Rawls my self Henry Davis and Nikki Scott. In the meeting it was express to Mrs. Rawls than she should never touch or assault another employee along with other rules and regulation pertaining to matter of this nature. We also went over the matter of the Corrective Action Plan that had been placed in file as an attachment to my evaluation by Mary Finch/Linda Lackey. Mrs. Rawls was told by Mr. Davis to come up with a work schedule or a project list when she mentioned the Corrective Action Plan.

Sincerely,

*Elaine M. Coley*

ATTACHMENT 1

03/16/2004

Tuesday morning at 9:30 am (3/16/04) a meeting was held with Mike Murphy, Robin Rawls and I concerning an altercation that happened yesterday 03/15/2004, approximately 4:45 pm. The incident took place in my office space when I ask Robin Rawls about some boxes that were located in the front of my desk She told me (in an ugly tone) that the boxes were to go to Jean Stone's storage area. I told her okay and it was past my time to go home. I then asked why the boxes couldn't stay where they were until someone came to pick them up. She stated that she didn't want them to stay where they were and that they were going to stay right there and for me not to move them I then told her fine, she then went into her office In the meantime I was gathering my things to leave for the day; she then came back to the boxes and told me (very rudely) not to move the boxes because they were going to Jean Stone's storage area, I told her again fine, that I was going home because it was past time for me to go. I also asked her what was wrong with her and why she was talking to me that way. She then said to me that I would not speak to her in that tone of voice and that we were going to talk to Henry Davis and Mike Murphy. I told that I was going home and that I was sick of her harassing me everyday, she then jumped in front of me to block my way. I asked her to move, her reply was "no Elaine you're going to stay right here and talk". So I asked her again to move out of my way I finally made my way around her after she went into the hall to get Tina Edwards. She then returned again to stop me from leaving. By this time Tina Edwards was telling her that some things she should just let go and that she should just let this go. But she never paid any attention to Tina because by this time I was headed to the side door (#3086). When I got to the side door she had run around from the other door (3084) and was there with both her arms stretched out trying to block me again.

During the meeting I was lied on and made to look like the villain. Robin Rawls completely lied and turned the situation around. I was told that there were two statements given in reference to the incident. I was not shown the one statement that had been given to Mike Murphy. He informed me that he had yet to receive another one as there were two. I saw during the meeting that Robin was going to continue to fabricate and be unfair about the situation as she has been in the past when it comes to dealing with me. I then expressed to Mike Murphy that I was very uncomfortable working around her, because I now see that she is a treacherous liar, underhanded, conniving person to say the least Mike Murphy also expressed to me during the meeting he could see why (by looking at the two of us) how Robin could possibly be afraid of me.

This is not the first time Robin Rawls and I have had these kinds of dealings She previously on another occasion grabbed me by my arm in an effort to stop me from departing she and I had to talk to Personnel Officials about that incident.

Therefore in an effort to resolve this situation I am requesting to be transferred immediately to another area in the agency.

Sincerely,

Elaine M. Coley

Attachment II

## ALABAMA MEDICAID AGENCY
### July 22, 2004

# M E M O R A N D U M

**TO:**      Ms. Elaine Coley
             Administrative Support Assistant II

**FROM:**    Lee T. Maddox
             Deputy Commissioner
             Administrative Services

**RE:**      Grievance

This memo will confirm that in our meeting of today (July 22, 2004, at around 3:30 p.m.), I requested pertinent information from you to substantiate your allegation of assault by a co-worker, Ms. Robin Rawls. I requested dates and times, as well as any witnesses to these assaults. In this grievance investigation, facts and information that can be substantiated will be accurately included in this report of findings. It is of paramount importance that I have all information in my efforts to conduct an investigation on behalf of Commissioner Carol Herrmann.

I made you aware that neither our Human Resources Division nor State Personnel has a copy of your rebuttal of your 2003 evaluation or a copy of your alleged assault complaint that you said had been filed with the Agency.

This is to further state that this request was witnessed by Ms. Patricia Jones.

LTM:pj

ALABAMA MEDICAID AGENCY

March 3, 2004

**MEMORANDUM**

To:        Lee Maddox, Deputy Commissioner
           Administrative Services

Thru:      Mary G. McIntyre, M.D.
           Medical Director

From:      Felecia S. Barrow, Associate Director
           Prior Approval Unit
           Office of the Medical Director

Re:        Request to Acquire Clerical Staff— Elaine Coley (ASA II)

       This memo serves as a request to acquire current ASA II, Elaine Coley. Ms. Coley was previously assigned to the Research and Development Unit, Office of the Medical Director and due to the reorganization, has been assigned to another division.

       The PA Unit has been fortunate enough to have received three additional nurses and a clerical aide as a result of the reorganization. As indicated on the Prior Approval Unit Organizational Plan submitted in January, it will be the function of the Nurse Reviewers in the Unit to review for medical necessity, the over 3,000 requests submitted on a monthly basis. It will be the function of the clerical staff to prepare the requests for review and input/retrieve data from the system as instructed by the Nurse Reviewers and MCBS II. The additional staff that we have received falls in line with the organizational plan for the Unit (see attached) and your recognition of the critical need is greatly appreciated.

       In addition to the current requests received and processed, the Unit will now handle processing of all dental PA's. The number of requests submitted on a monthly basis can average from 400 to 600. In order to effectively manage the additional requests that will need processing, I am requesting the acquisition of another clerical staff person— Ms. Coley.

       Ms. Coley, under the authorization of the Office of the Medical Director, has had an opportunity to assist the Unit in preparing correspondence and has been trained on input/retrieval functions of the system regarding PA requests processed. I believe that she would be an asset to the Unit as we continue to manage the incoming workload efficiently and effectively.

       Thank you for your consideration of this request as you have provided in previous requests. Should you require additional information, please do not hesitate to contact me at 2-5223.

\fsb

Attachment

cc:    Mary McIntyre, M.D.

## STATE OF ALABAMA MEDICAID AGENCY

## EMPLOYEE GRIEVANCE FORM
### (Confidential Information)

GRIEVANT'S NAME  Mrs. Elaine Coley          HOME PHONE:_____
HOME ADDRESS: 6321 Sandy Ridge Curve        WORK PHONE: 334-353-4099
____Montgomery, Alabama____                 ZIP CODE: 36117
DIVISION: Program Support     CLASSIFICATION: ASA II
PROGRAM: _____       IMMEDIATE SUPERVISOR: Mr. Michael Murphy

CHECK NATURE OF GRIEVANCE:

__X__  RACE - If checked, state your race: Negro
__X__  COLOR - If checked, state your color: Black female
_____  RELIGION - If checked, state your religion: _____
__X__  SEX - If checked, state your sex: _____
_____  AGE - If checked, state your age: _____ DATE OF BIRTH: _____
_____  CREED - If checked, state your creed: _____
_____  POLITICAL AFFILIATION -   If checked, state your political affiliation:
_____
_____  NATIONAL ORIGIN - If checked, state your national origin:_____
_____  DISABILITY - If checked, state condition: _____
_____  NONE OF THE ABOVE:  State the nature of your grievance:
       I was assaulted by my coworker, Robbins Rawls and made a complaint to this
       agency.  To date, that complaint has not been resolved. I seek resolution of it.  See
       attachment (three pages)
Give most recent date your complaint took place: 3-16-04

State specific details: How you were treated differently from other employees / applicants because
of the reason(s) indicated above.  If your complaint involves more than one basis for your
dissatisfication, list and number each such allegation separately and furnish specific/factual
information in support of each (Attach additional sheets if necessary.)

In September 2003, Medicaid Personnel Director, Mr. Henry Davis, told my supervisor,
Robbins Rawls to get rid of the corrective action plan placed in my files and come up
with a work duty list to no avail.  The corrective action plan and other deragotory statements and
remarks in my file was given to Alabama Department of Transportation and used to deny me a
promotion to ASA III in that agency. To date, there is no record of a formal request to this
agency for my personnel records.

What specific corrective action you recommend to be taken on your complaint.
(State corrective action for each separate allegation.)

Removal of all corrective action plans and remarks in my file.  Letter of reprimand to Robbins
Rawls for assaulting me with written notification sent to me. Letter detailing the agency
procedures for other agency obtaining my personnel file.  See attachment (three pages)

*Elaine M. Coley*
SIGNATURE OF GRIEVANT:

## ATTACHMENT TO COMPLAINT

MEMORANDUM & REQUEST

DATE : July 7, 2004

TO : Medicaid Agency Commissioner
Ms. Carol Herrmann, MPH

FROM : Elaine Coley *EmC*

SUBJECT : File Complaint / Request for Removal
of deragotory Statments / remarks from my
personnel files.

On March 16, 2004, I gave this department a detailed account of a meeting held with Mr. Mike Murphy, wherein Ms.Robin Rawls assaulted me by grabbing my arm to stop me from leaving the office, another occassion, Ms. Rawls jumped in front of me, stretching her hands out, blocking me from the door, to prevent me from leaving the office after the end of a work day, because she wanted me to stay and speak with Mr. Mike Murphy and Mr. Henry Davis. Although I gave a written account of the assault, Mrs. Rawls was never reprimanded. To the best of my knowledge, there was no deragotory remarks or reprimands placed in Ms. Rawls personnel files, revelant to her assaulting me.

Reference to unfounded deragotory remarks / statements placed in my file in the form of a so called corrective action plan, Mr. Henry Davis, Medicaid Personnel Director, in a meeting held on September 2003, told Robin Rawls to get rid of the corrective action plan place in my personnel file, and come up with a work duty or task list for me, the director's instruction was not obeyed. The corrective action plan still remains in my file and was given to the Alabama Department of Transportation and used as deragotory information in denying me a promotion to ASA III.

I contend if I was not a black female, I would not have been treated in this discriminatory manner. The corrective action plan would have been removed from my file. Mike Murphy expressed bias, when he told me regarding the incident, he could see why looking at both myself and ( my white co-worker ) Robin why Robin could possibly be afraid of me. Again, Ms. Rawls, assaulted me, and Mr. Mike Murphy had the knowledge, authority, and power to reprimand Ms. Rawls, preventing any possible further confrontation / assault with Ms. Rawls. This department should take a stand against the type of behavor Ms. Rawls inflicted on me. I contend if I was not a black female, I would not have been treated in this manner.

The policy advisor office, located in room 7058, was a newly created office for Mrs. Mary Finch, a law student, to gain further supervisory experience, enabling her to be promoted to Liason for State Medicaid Agency. Mrs. Finch works with the legislature. I became Ms. Finch's secretary on February 23, 2003 to August 2003, Ms. Finch was my supervisor. After Ms. Finch passed the State bar exam and became a lawyer, the office was then dissolved. The office was temporarily placed under Research and Development, my duties did not change, Robin Rawls became my temporary supervisor until November 2003 when Georgette Harvest became my supervisor, the office was again changed to Research and Education.

Linda Lackey did an evaluation of my work, covering periods of time she was not my supervisor. I was evaluated on duties I did not perform and was not trained to performed by this department. Although my evaluation stated I met **satsifactory standards**, unfounded statements / remarks were placed in my personnel file,and given to another State Agency, and used against me at the Department of Transportation.

Although my evaluation placed me in a meet standards category, I was given a memorandum, June 30, 2003 which was maliciously placed in my personnel file. I was asked by my supervisor, Linda Lackey / Mary Finch, to look at the document and sign it without fully reading the report after my work day ended. I refused to sign it, because the portion of the document I did read was false. I did not have numerous counseling with Mrs. Lackey or others, pertaining to my employment duties. The memorandum fictiously stated that I have been counseled on several occasions regarding the number of visitors coming to see me. The memorandum further states :

> quote" Responsibilities #3 and #7, Take transcribe, and type minutes" and "Completes travel request forms and expends reports", have only been performed once each during the evaluation period." end quote

There were no mention of any complaint to me about those tasks until the date the memorandum was given to me. Therefore, that paragraph of the complaint is also false. The second paragraph of the memorandum seems to be instructional. I cannot understand why such a memorandum should be placed in my file and then transported without a formal request or my authorization to the Department of Transportation, which was used to evaluate my employment performance at Medicaid and deny me a position with Aldot as ASA III. I contend this was malicious on the part of this agency and request these untruthful accusations be stricken from my file.

Attachment to an interim appraisal covering period from 11/1/03 - 8/1/04 were informative instruction telling me what I am expected to do on the job, and should not have been sent to the Highway Department to be used in a deragatory manner to deny me a promotion. Paragraph two of said document is also false, stating that there have been occasions where I did not follow instructions given to me. No statement or details informing me when I did not follow instructions was listed.

In Paragraph five, of the aforestated interim nine (9) months mid-appraisal, it is stated "**a**

copy of this will be placed in your personnel file." Again, such documents should not have been placed in my personnel files and used in a manner by this department to intimidate, harrass, and deny me a promotion- At the Alabama Department of Transportation, my personnel files from this department was given to Aldot without a formal request from that department or my consent.

To date, I have viewed my personnel file held with this department, and found there was no request from Aldot to this (Medicaid) agency for my files. Therefore, my files should not have left this department and end up in the files of Alabama Department of Transportation, which Materials and Tests, Jeffery Brown obtained illegally and used to deny me a position as ASA III to that department.

I request that the aforestated inflammatory remarks, statements, and documents be removed from my personnel file,further requesting, no documents from my personnel file should be given to any division of state government without proper formal request / notification, and approval from me. It is my contention that these documents were placed in my file to harrass, intimidate, and deny me advancement in my career, and I contend, if I was not a black female, I would not have been subjected to such treatment.

I contend, all statements / remarks at issue in my personnel file remains allegations only, there was no official fact finding that any of these allegations were found to be truthful. I request removal of the aforestated unfounded allegations from my files, and a written notification to me to this effect.

C : Henry Davis,Director of Personnel

*Elaine M. Coley*

# INTEROFFICE MEMORANDUM

TO:        ELAIN COLEY

FROM:    KAY KEESHAN

             CHAIR, AFFIRMATIVE ACTION COMMITTEE

RE:        REQUEST FOR AN AFFIRMATIVE ACTION GRIEVANCE HEARING

DATE:     10/18/2004

I have received your request today for an Affirmative Action Grievance hearing.  This request has been forwarded to Mrs. Jackie Gray, Chair of the Affirmative Action Grievance Committee, who will review your request to determine whether your request falls within the purview of this committee and, if it does, whether this request was filed in accordance with the requirements of the affirmative action grievance process.  You will receive a response from Mrs. Thomas within ten working days from today's date.

Cc:     Jackie Gray Thomas
          Henry Davis

Alabama Medicaid Agency
Affirmative Action Committee

Dear Mrs. Keeshan:

This correspondence serves as my second request for a hearing of my grievance with this agency. The sequences of issues are as follows:

On March 16, 2004, I made a written request and complaint to the Equal Employment Office (given to Ms. Nikki Scott). There was no hearing on my complaint although Mike Murphy, Robin Rawls, and I had a meeting on the next day on one of the issues. (The Altercation)

On August 27, 2003, I was assaulted by Robin Rawls, a complaint was made it is also unresolved.

In May 2004, I received an Annual Performance Appraisal from my present supervisor Mike Murphy, giving me a 12.9 rating I contend the rating reflects bias and prejudice against me, prior to that I received an Annual Performance Appraisal of 17.70 from my supervisors Ms. Mary Finch and Linda Lackey, although the score places me in a meet standards category, the supervisors attached a Corrective Action Plan to my appraisal, thereby allowing other state agencies to get a copy of it using same as means to prevent my promotion to ASA III to other state agencies. I was passed over numerous times. A letter of request for a hearing was sent to the Commissioner seeking an impartial hearing before the committee of which you preside; to date this hearing has not been granted. Therefore, I am making this request to you as the Chairman of this grievance committee, which includes a number of impartial persons required by law to hear my grievance

Sincerely,

Elaine Coley

Elaine Coley

Enclosure
C: Answer, Request & Memorandum

6321 Sandy Ridge Curve
Montgomery, AL 36117

September 14, 2004



Commissioner Carol Herrmann
Alabama Medicaid Agency
501 Dexter Avenue
P.O. Box 5624
Montgomery, Alabama, 36103-5624

RE: Grievance

Commissioner Herrmann,        Answer, Request & Memorandum

    Responding to your answer to my grievance filed with this agency on
July 20, 2004, and July 22, 2004, wherein I complained of assault (s) on me by
co-worker Robin Rawls, failure to remove the so-call "Corrective Action Plan,"
and derogatory statements from my file, allowing said statements to be used by
Alabama Department of Transportation to deny me promotion to ASA III, from a
Certificate of Eligibles, requesting investigation into the matter.

I cannot agree with the Process,(and) persons Commissioner used to investigate
my complaint, and findings of Deputy Commissioner - (Administrative Services)
Mr. Lee Maddox, Bill Butler,  Henry Davis,Robin Rawls, for the following
Reasons.

Mr. Bill Butler is the chief legal counsel for this agency, with duty to defend this
agency, Heading up this so-call investigation, slants the investigation to a defensive
posture, in favor of this agency, flawing the "Impartial Clause" requirement
necessary for a fair and Impartial investigation and hearing, which the chief
counsel, did not recommend or give me, and as commissioner, knowing I am
entitled to a impartial hearing, could have given me that hearing, you did not...

On the second page of Mr. Lee Maddox assessment, paragraph two
states:
While the memorandums appear to have been stamped dated by Human
Resources, pertaining to Robin Rawls assaulting me, (by grabbing my arm)
and blocking the door preventing me from leaving the office, at the end of a
work day, documentation of the meeting with Nikki Scott of EEO in this
agency, and Henry Davis on the issue complained of, on August 27, 2003 and
March 16, 2004, could not be found in this agency files. In the missing files
Ms. Rawls my supervisor admitted she assaulted me, those documents
conveniently disappears from this agency file.

However the so-call corrective action plan with negative implications against me is on file, the negative Memorandum and so-call insubordination of Ms. Crosskno from Department of Transportation dated January, 2000, is in this agency files. Ms. Crosskno actions are malicious, the Personnel Board Rules listed by Bonita Section 670-X-19.01 (2) has one exception-not following an order the employee has good reason to believe is illegal or unsafe.

There is more to the issue not included in Bonita Crosskno's memorandum, involving an existing Consent Decree at the Department of Transportation, an on going issue pertaining to Ms.Crosskno unresolved memorandum against me, and I deny the statement about the Consent Decree in the context told by Bonita Crosskno (formally of the Department of Transportation). **It appears Ms. Crosskno's intent when she wrote, and sends the Memorandum to State Personnel Department was malicious...the corrective action plan by Robin Rawls, with State Personnel is also malicious... following the lead of Bonita Crosskno taking it further by assaulting me...all done in effort to <u>sabotage my career.</u>**

Mr. Maddox at the time of writing his memorandum to the commissioner pertaining to my complaint, was aware of my complaint against his insulting and unprofessional statement to me, Mr. Maddox account of the entire issue is prejudicial, due to his insultive remarks level at me in his office-when he (Mr. Maddox) throw up his hands in the air and in a condescending manner told me, if I was going to discuss Mary Finch I should get up and leave his office... Mr. Maddox knowing he insulted me, and I included his insultive remarks in my complaint to you, it's unlikely Mr. Maddox could be impartial to this so-call investigation. **Belligerent** reflects Lee Maddox, insults to me, and Robin Rawls assault on me. I was never **Belligerent** to any one on my Job. Although the Commissioner stated in her reply that because of my complaint to her about Mr. Maddox he was not allowed to do the investigation however Mr. Maddox had a full fledge investigation on all issues including Bonita Crosskno statements of 2003.

Henry Davis recalls meeting with Ms. Rawls and myself pertaining to the assault, and Ms. Rawl stating she put her hand on me (Coley) in incidental / accidental way, I contend grabbing my arm was incidental but not accidental. I was deliberately grabbed by Ms. Rawls. This agency should instruct Ms. Rawls that being a supervisor does not give her the right to grab employees' arm/assault employees. Ms. Rawls abstructs the orderly and peaceful atmosphere of the workplace.

This agency have an Affirmative Action Committee for addressing grievances and complaints such as mine, insuring and **upholding impartiality of the process, wherein I am given the right to confront persons with whom I am aggrieved-** Robin Rawls,who makes statements in her defense to Mike Murphy, which on its face <u>is untruthful / deceptive, insidious and inflammatory, intending to undermine, and defame my character, and sabotage my career. It's plainly obvious</u>

<u>Robin Rawls wanted me fired.</u> The second to the last paragraph of Robin's <u>fictious</u> account (along with other paragraphs) of what happened on March 15, 2004, clearly shows Robin's intent, I contend while the Commissioner has the right to appoint person(s) to conduct investigations. <u>I have a right to a fair and impartial hearing. I have yet to receive it...</u>

Mike Murphy's assessment of the facts in this issue, and the assessment of my work / office duties, reflects <u>gross prejudice against me</u>... Mr. Murphy clearly, did not follow agency guidelines / procedures in appraising my work performance therefore, I disagree with the grade given me. To date this issue has not been addressed.

No one in this agency including, **Robin Rawls** or **Mike Murphy**, gave me a copy of Ms. Rawls statement regarding the issue, (although Robin's E-mail statement, has a March 16, 2004 ) or copy of Tina Edwards and Pamela Owen's written statements in order to respond to the allegations therein. The first and only time I saw, or receive a copy of Ms. Herrmann's letter dated August 24, 2004, responding to my grievance /complaint. It is important to note, **Tina Edwards statement** reference to one of the issue, **paragraph four (4)** of Tina's statement is as follows:

> "Elaine came around the desk and started to walk my way, she said "excuse me Tina" and started to walk towards the other door to leave. Robin told her she was not leaving and started following Elaine out the other door. I then came out the main door and told Robin to let Elaine go. I told Robin that she was going to get hurt or hit."

Part of the problem is **Robin Rawls should be instructed** by this agency, she cannot & should not try to prevent me (an employee) from leaving the work place. Especially at the end of a work day. (in the manner she did) My work day ends at 4:30 pm. In Robin's own account of the incident, Robin states " the incident took place on March 15, 2004, around 4:30- 4:40 p.m. Robin Rawls actions surely created a hostile working environment, Robin clearly <u>curtailed</u> my right to <u>Freedom of Movement</u> to leave the work place on March 15, 04, at the end of a workday...A hearing is necessary to address this and other issues I complained of. <u>I again request a hearing on the issues stated in my complaint.</u>

I am entitled to "Due Process" within the framework of this agency, This agency is required to follow the Mandate set by" "Federal" and "State Laws" by which it is bound.. by Policy and Contract... Rules and Regulations are to be followed by all in this agency, respect is due to all my supervisors failure to follow written rules and regulations of this agency,( and the State of Alabama Merit System Rules) to accurately list my employment duties I actually perform on my form forty (40) are violations of my rights to" Fair and Equal Treatment."

The action and inaction of the supervisors grading me in duties I do not perform - giving me low grades on those <u>none existence duties </u>damage my creditability for promotion. If I was not a black female employee I would not be treated in this discriminatory manner. The duties and <u>grades</u> given me by Linda Lackey, Mary Finch, and Mike Murphy are not accurate, all are not duties I performed, to date the issue have not been resolved.

An affirmative action committee consist of impartial persons which should be utilized in a grievance process such as mine by agency policy. I again request an impartial hearing before the Affirmative Action Committee of this agency, requesting that you (Commissioner Herrmann) allow said committee of six (6) impartial persons to hear this grievance.

I further request a transfer to another working area or division within this agency, due to the negative/hostile environment I have been subjected to by Robin Rawls and the fact that Mike Murphy who at this present time have failed and refused to grade me fairly on <u>work duties that I actually do.</u>

Sincerely,

*Elaine Coley*

Elaine Coley


c: Equal Opportunity Office
   Alabama Medicaid Agency

Number of Steps

# EMPLOYEE PERFORMANCE APPRAISAL
## STATE OF ALABAMA
### Personnel Department

Form 13
Revised (1/1/1999)

Social Security Number: 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

Division: PROGRAM Support

Employee Name: ELAINE M COLEY

Agency: 062/MEDICAID AGENCY

Class Code: 10197

Classification: ADMIN SUPPORT ASST II

Annual Raise Effective: OCTOBER 2004

Period Covered From: 08/01/2003    To: 08/01/2004

**APPRAISAL SIGNATURES:** Signatures are to be provided after the form has been completed.

**Reviewing Supervisor**

**Employee**

### Rating Supervisor

SSN 417 - 72 - 1194

M. JC. Mugh

Signature

Date 7-22-04

Initial if comments are attached

REFUSED TO SIGN    MCM JAC
Signature
Date 7-23-04

Initial if comments are attached

SSN _____ - _____ - _____

Signature

Date

Initial if comments are attached

**PERFORMANCE APPRAISAL SCORE:** Locate the Responsibility Score on the back of this form and write it in the appropriate space. Locate the Disciplinary Score, also on the back of this form, and write it in the appropriate space. The Disciplinary Score is subtracted from the Responsibility Score to derive the Performance Appraisal Score.

12.9
Responsibility Score

−

0
Disciplinary Score

=

12.9
Performance Appraisal Score

This employee's work:

| ☐ Does Not Meet Standards (6.6 or below) | ☒ Partially Meets Standards (6.7 – 16.6) | ☐ Meets Standards (16.7 – 26.6) | ☐ Exceeds Standards (26.7 – 36.6) | ☐ Consistently Exceeds Standards (36.7 – 40) |
|---|---|---|---|---|

**WORK HABITS :** Check the appropriate box for each work habit area. If "Noncompliance" is to be marked of the discipline system (warning, reprimand, suspension) must have been taken with the employee du appraisal period. See the Disciplinary Actions area on the back of this form for disciplinary documentation

| | Compliance | Noncompliance |
|---|---|---|
| Attendance | ☑ | ☐ |
| Punctuality | ☑ | ☑ |
| Cooperation with Coworkers | ☐ | ☑ |
| Compliance with Rules | ☐ | |

TO:         Carol Herrmann
            Medicaid Commissioner

TO:         Mr. Mike Murphy  RC'D. 7/27/04

FROM:       Elaine Coley

DATE:            July 23, 2004

### RE: REBUTTAL TO
### ANNUAL EVALUATION
### AND REQUEST

I have been working in the Program Support Unit for four months only. On July 23, 2004, I received my annual evaluation on my job performance and duties in Program Support Unit. My actual duties in that unit have been typing review letters, pick up and distribute mail, time and attendance report, and work on surveys, which consists of questions and answers received from receipients on a survey form.  I enter data from the survey into the computer.

On July 23, 2004, the same day I received my evaulation, I was given a form 40, four months after I took the position (at my present desk), although in March 2004, there was a letter from personnel to Mr. Mike Murphy requesting a new form 40 for my position. I was graded from Research and Education form 40, with a preappraisal date of November 13, 2003. Four months later, Mr. Murphy did an annual evaulation on the same form 40 from Research and Education, (**which was dissolved months ago.**) Therefore, my mid-appraisal was nine (9) months interim, not six (6) months.

I'd like to bring to the agency attention my appraisals from other state agencies, all exceed or meet standards, for many years, (copy enclosed) showing a variety of clerical tasks efficiently done. My present desk in Program Support is basically no different from what I have been doing for the past nine (9) years. The evaluation given me by Mr. Murphy does not reflect my performance on the job. I typed on average sixteen (16) to thirty (30) letters per day, some of which are form letters, all saved on the "Q drive" for review if necessary. **All the letters I typed served the purposes for which they were intended and I do not agree with the grade of zero from my supervisor on that issue. I contend I met standards on my letters.**

Mr. Murphy states that I did not get along with co-workers, I'd like to be informed which co-workers I do not get along with because the only person in my office is me.  There is no other person in my office, besides myself, to get along with. The only person I've had problems with is Robin Rawls, this agency have not  resolved that conflict. I was assaulted by Ms. Rawls twice. I have been working in a very stressful environment due to the assault, and would like to get the issue resolved.

**Form 13P**
Revised (1/1/1998)

# EMP. YEE PERFORMANCE APPR SAL
### STATE OF ALABAMA
### Personnel Department

## *PREAPPRAISAL*

Employee Name: __ELAINE M. COLEY__    Social Security Number: __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__

Agency: __ALABAMA MEDICAID__    Division: __RESEARCH AND EDUCATION__

Classification: __ADMINISTRATIVE SUPPORT__    Class Code: __10197__
__ASSISTANT II__
Period Covered From: __11-01-03__ To: __08-01-04__

---

**RESPONSIBILITIES/RESULTS:** Responsibilities and results on which an employee will be rated should be listed below. These areas should be discussed with the employee during the Preappraisal session at the beginning of each appraisal year. Please refer to the Performance Appraisal Manual for instruction on how to develop responsibilities and results.

### RESPONSIBILITIES/RESULTS

1. Serves as secretary and administrative support to the Director of Research and Education by scheduling appointments, and greeting individuals coming into the Office of the Director so that no valid complaints are received.

2. Types and proofreads documents and correspondence drafted within the Office of the Director and Associate Director of Research and Development so that no valid complaints are received.

3. Record, transcribe, and type minutes of meetings as needed to be distributed to agency staff, and state and federal agencies, committee members, providers, beneficiaries, and the general public so that no valid complaints are received.

4. Opens, dates, sorts, distributes incoming mail in the Office of the Director and Associate Director of Research and Development so that no valid complaints are received. Also, arranges correspondence in order of importance for Director and Associate Director's attention in signature, action or information folders so that no valid complaints are received.

5. Establishes and maintains files of correspondence and reports pertaining to any activities performed by or through the Research and Education Division so that no valid complaints are received.

6. Maintains staff time and attendance report records for personnel under direct supervision of the Director so that no valid complaints are received.

7. Completes travel request forms and expense reports for the Research and Education Division so that no valid complaints are received.

8. Operates office machines (such as photocopies, telephone, typewriter, fax, e-mail) in order to provide information, materials, and services required by the Director and Associate Director of the Research and Development so that no valid complaints are received.

9. Make decisions placing priorities on matters needing the Director's attention and resolving scheduling conflicts so that no valid complaints are received.

10. Establishes, with direction from the Director priorities for completion of division projects so that no valid complaints are received.

Attachment 1 to Interim Appraisal

**Describe area(s) of the employee's performance that need improvement as observed during the first nine months of the appraisal period.**

The time required to complete typing assignments is excessive. In addition, errors occur on typed correspondence very frequently, even on form letters. When assignments are returned to Elaine to correct her typing errors, they often are given back to the originator with some errors still not corrected or containing new errors.

Instances of excessive time needed for simple copying were noted.

Elaine seems to have trouble managing her time, and prioritizing her work. Consequently, certain tasks are left undone, while there are frequent and protracted delays in the completion of assigned tasks. An excessive amount of time is spent on the telephone with non-business related calls. Absenteeism and lack of punctuality appear to be contributing to poor performance during the rating period.

5-13-04

Attachment 2 to Interim Appraisal

## Corrective Action Plan

Portions of the following corrective action plan may look familiar to you because it addresses problems that were identified nearly a year ago and that continue to be evident. This action plan will make clear to you the expectations for improving weak performance and give you practical steps toward meeting those expectations.

1. Working hours and use of leave, breaks, and lunch time:

    You are expected to arrive at work at your designated time. Your designated work hours are currently 7:30 a.m. to 4:30 p.m. If you find that you need to change these hours, please notify me and we will change them, if possible. More than two late arrivals will result in additional corrective actions.

    You are expected to take your morning and afternoon breaks, to last no longer than the allowed time established in the AIMS manual. Let me know when you are going on break and when you have returned. If I am away from my desk, leave me a message on my voice mail. More than two instances of not following this directive will result in additional corrective actions.

    You are expected to take your lunch break at your designated time, to last no longer than an hour. Your current assigned lunchtime is 11:30 to 12:30. If you need additional time, or need to change your time on any day, you are to let me know as soon as you find out. Should you need to take longer while you are out, you are to call and leave me a voice message, if I am not at my desk. You will be expected to turn in a leave request for your time as soon as you return to the office. Any unused time for the time you have to sign out for should be taken as soon as possible and should be approved by me ahead of time. More than two instances of not following this directive will result in additional corrective actions.

    You are expected to call me as soon as you know you will be out of the office on sick leave. As much as possible, annual leave should only be taken when a leave request has been approved in advance of the leave being taken.

2. Following instructions:

    There have been occasions when you did not follow the instructions given to you, resulting in tasks not being completed correctly or in a timely manner. In order to avoid that in the future, write down instructions as they are given to you and ask questions as appropriate. If you are not sure of what you are to do, you should repeat the instructions to the person and ask for clarification where needed. At any time that you do not understand what you are to do, you are to contact me, or the person that assigned the task to you, so that we can verify what needs to be done. If tasks and assignments are not completed according to instructions, this will be reflected on your annual evaluation and will result in additional corrective actions.

3. Performance and completion of assigned tasks; reviewing work before turning in to appropriate staff member:

    Upon completion of tasks assigned to you, including, but not limited to typing of administrative claims review letters and forms, you are expected to review your work to

p. 1

5-13-04

verify that the task has indeed been completed accurately before submitting to the appropriate staff member. You are expected to carefully proof and correct your own mistakes, so that the work is error free when turned in. Rarely should a staff member need to return work to you for correction. Rarely should deadlines be missed unless there are very unusual circumstances or unless priorities have changed and your supervisor is aware and approving of those changes. If you are ever unsure of the expectations surrounding an assignment or task, notify me so that we can get you the needed clarification. More than two instances of work being turned in with errors and/or not on time will result in additional corrective actions being taken, including a lowering of at least one rating on your annual evaluation.

4. Use of the telephone:
   Generally, the telephone on your desk should be used only to conduct business related to your state job. Personal phone calls should be kept to a minimum. I will be monitoring your telephone usage and occasionally asking about the nature of calls and the person or organization you are speaking with. Repeated instances of personal phone calls will result in additional corrective actions.

5. Use of a Project List:
   The following action should be taken to help you stay on track with your projects and to help you prioritize your work. Prepare a list of your projects and assignments with the dates they were assigned to you and the requested completion dates for each. This list should be updated at least weekly and sent to me as an e-mail attachment for my review by 4:00 p.m. each Friday (Thursday, if we have a Friday holiday.)
   In order to meet deadlines when dealing with multiple projects/assignments, you are expected to devote some time to each project daily. In this way, you will be making progress toward the completion of each assignment, so that projects do not go completely undone due to higher priorities.
   Each Friday, you are expected to send me an e-mail describing the assignments you worked on during the week and their status. (For example: I typed 56 Administrative Review letters and entered 250 survey records into the database. I have 11 letters on my desk still to be typed, and the box of surveys is only two-thirds full. I was given two drug PA internal criteria to type for Pam, and I completed one of these.) Failure to adhere to this portion of the corrective action plan will result in a lowering of your annual evaluation and additional corrective actions being taken.

In summary, you are expected to follow established agency and division rules and to perform your assigned duties in a satisfactory and timely manner. Should you be uncertain about what has been assigned or what you should do, it is your responsibility to let me know as soon as possible, so that we can determine a solution.

A copy of this will be placed in your personnel file. The performance of your duties will be monitored for the remaining three months of your annual appraisal period. If your performance has not improved significantly at the time of your annual evaluation, your overall rating will indicate that you only partially meet standards, at best.

Signatures on this attachment indicate that the above was discussed with the employee during this session. The employee will receive a copy of the signed attachment.

p. 2
5-13-04

_Elaine M. Coley_                    5-13-2004
Elaine Coley, Employee                     Date

_Mike Murphy_                        5-13-04
Mike Murphy, Rating Supervisor             Date

_Kathy Hall_                         5-13-2004
Kathy Hall, Reviewing Supervisor           Date

**From:**        LaKesha Chappell
**To:**          ALL MEDICAID AGENCY
**Date:**        2/10/2006 2:43:20 PM
**Subject:**     ASA II Vacancy

An Administrative Support Assistant II vacancy will exist in Program Support.  If you have permanent status as an ASA II and interested in interviewing for this position, please contact Mike Murphy at (334) 242-5791 by close of business on Wednesday, February 15, 2006, to schedule an interview.



# Alabama Medicaid Agency



Costella Jones             501 Dexter Avenue
ALL MEDICAID AGENCY P.O. Box 5624
10/6/2004 2:47 Montgomery, Alabama 36103-5624
Administrative Support Assistant II vacancy

e-mail: almedicaid@medicaid.state.al.us

BOB RILEY                                                          CAROL H. HERRMANN, MPH
Governor                1-800-362-1504      (334) 242-5000               Commissioner
          Telecommunication for the Deaf  1-800-253-0799

An Administrative Support Assistant II vacancy currently exist in the Beneficiary Support Division of the Customer Service Unit.  If you have permanent status as an Administrative Support Assistant and are interested in interviewing for this position, please contact Ms. Priscilla Miles at (334) 242-5019 by close of business on Friday, October 8, 2004, to schedule an interview.

Our Mission - to provide an efficient and effective system of financing health care for our beneficiaries.

# Certification Support Division
## Updated 11/2004



**Gretel Felton** — Director — MA III

**Vicki Wilson** — Associate Director — Central Certification Unit — MA II

**Tammy Dozier** — Secretary — ASA II

**Robert Lee** — Associate Director — Technical Support — MES Manager

**Audrey Middleton** — Associate Director — Policy/Program Implementation — MA II

**Algarie Greene** — Certification Worker — ASA II

**VACANT** — Certification Worker — ASA II

**Bertha Watkins** — Certification Worker — ASA II

**Gladys Osborne** — Certification Supervisor — MES Sr.

**Frazeline Anderson** — Certification Worker — MES

**Debbie Stinger** — Certification Worker — MES

**VACANT** — Administrative Clerical Support — Medicaid/ALL/Kids — ASA II

**Renee' Andrews** — Certification Worker — MES

**Anita Charles** — Policy/Research Specialist — Family Programs — MA I

**Shawna White** — Policy/Research Specialist — Elderly & Disabled Programs — MES Supervisor

**Ricky Hatcher** — Associate Director — Training — MA II

**Nell Larkin** — SSI Coordinator — MCRS II

**Nina Maxwell** — Hardware/Software — Technical Support — MES Sr.

**Aretha Woodson** — Hardware/Software — Technical Support — MES Sr.

**Yanske Hampton** — DHR Coordinator — MCRS II

**Marcia Teel** — Training/Special Projects Coordinator — MA I

**Oneida Raben** — Training Specialist — MES Supervisor

**Doretta Brackett** — Printing and Mail Coordinator — ASA I

# Alabama Medicaid Agency

**501 Dexter Avenue**
**P.O. Box 5624**
**Montgomery, Alabama  36103-5624**
www.medicaid.state.al.us
e-mail:  almedicaid@medicaid.state.al.us
Telecommunication for the Deaf:  1-800-253-0799
1-800-362-1504      (334) 293-5500

BOB RILEY
Governor



CAROL A. HERRMANN, MPH
Commissioner

August 24, 2004

Ms. Elaine M. Coley
6321 Sandy Ridge Curve
Montgomery, AL  36117

Re:  Grievance

Dear Ms. Coley:

After receipt of the Employee Grievance Form and other documents which you filed, I requested Lee Maddox, Deputy Commissioner of Administrative Services, and Bill Butler, General Counsel, to investigate your complaints and recommend appropriate action.  Based on their reports, it is my determination that the evidence presented does not warrant the convening of a grievance panel or other action by the Medicaid Agency.  The investigative report containing the basis for my decision is enclosed for your review.

If you believe you have been treated unfairly or abusively, an appeal may be available under the Merit System to the State Personnel Board.  If you believe you have been unlawfully subjected to discriminatory treatment, an appeal may be available to the Equal Employment Opportunity Commission or the Department of Health and Human Services Office of Civil Rights.  The state also provides a voluntary Workplace Mediation Program which can be utilized for disputes if all involved parties agree to participate.  The Agency's Human Resources Office will furnish you with the addresses for these offices and programs if desired.

Ms. Coley, I regret that your employment situation reached the point where you felt it necessary to file a formal grievance.  This Agency's goal is to resolve any employee conflicts or problems at the earliest possible stage.  We do not condone any unfair or discriminatory treatment, nor do we permit any reprisal against an employee for exercising his or her right to file a grievance.  At this point, I hope that you will be willing and able to put past matters behind you and focus on your future involvement with this Agency.  In this time of budget shortfalls, we

*Our Mission - to provide an efficient and effective system of financing health care for our beneficiaries.*

Ms. Elaine M. Coley
August 24, 2004
Page 2


need all of our employees pulling together and putting forth maximum effort to fulfill our mission to the citizens of Alabama.

Sincerely,

Carol A. Herrmann
Commissioner

CAH/bb
Enclosure
cc:     Lee Maddox
        Henry Davis
        Bill Butler
        Mike Murphy

# ALABAMA MEDICAID AGENCY

## MEMORANDUM

DATE:         August 20, 2004

TO:           Carol Herrmann
              Commissioner

THROUGH:      Lee Maddox
              Deputy Commissioner
              Administrative Services

              Henry Davis
              Human Resources Director

FROM:         Bill Butler
              General Counsel

SUBJECT:      Grievance filed by Elaine Coley

Ms. Coley filed an Employee Grievance Form on July 20, 2004. As to the nature of the grievance she checked Race, Color and Sex, and under "None of the Above" she complained of an assault by a co-worker, Robin Rawls and the lack of resolution to her complaint of 3/16/04. In the text of the form, she also complained of a failure to remove a Corrective Action Plan and "other derogatory statements and remarks" from her file, and she alleged this information was furnished to the Alabama Department of Transportation and used to deny her a promotion to ASA III with that agency. Ms. Coley filed an additional memorandum on July 22, 2004, providing additional information on her Grievance, and also complaining of her meeting with Lee Maddox and his refusal to discuss issues regarding one of Ms. Coley's previous supervisors, Mary Finch, as part of her Grievance.

The investigative file, including the information from Ms. Coley and a July 28, 2004 report from Mr. Maddox, is enclosed. Since Ms. Coley's latest memorandum raised complaints with Mr. Maddox's handling of the investigation, you asked me also to be involved in the process.

The Grievance Procedures in AIM 404 provide in part: "If the grievance is not resolved at the above level, it will be the responsibility of the Human Resources Officer or designee to present a report to the Commissioner on the grievance and the recommended action to resolve grievances. The Commissioner will review the facts to determine if the grievance can be resolved based on the recommended action or whether a Grievance Hearing Panel is warranted and will be commissioned or whether to advise the employee to seek redress with an outside state or federal agency. These procedures do not apply to actions legally taken pursuant to the State Merit System Law."

Based on Mr. Maddox's and my investigation, it is our recommendation that the documented facts do not show an actionable grievance nor do they justify the convening of a

Grievance Hearing Panel. We recommend that, in accordance with AIM 404, Ms. Coley be notified that she may file a written complaint with the Equal Employment Opportunity Commission, the Office of Civil Rights of the Department of Health and Human Services or the State Personnel Department. Mediation on some issues may be available under the state's Workplace Mediation Program if all involved parties agree to the process. A summary of the reasons for these recommendations follows:

1. The Assault Charge

Ms. Coley has provided memoranda of August 27, 2003 and March 16, 2004 in which she states Ms. Rawls assaulted her by grabbing her arm on August 27, 2003, and by blocking the door by which she was trying to leave on March 15, 2004. While these memoranda appear to have been date-stamped by the Human Resources Division, documentation of meetings or other action taken cannot be located. Henry Davis stated that he recalls meeting with Ms. Coley, Ms. Rawls, and Nikki Scott shortly after the first incident. His recollection is that the matters involving the disagreement were discussed, and that Ms. Rawls stated that she did put her hand on Ms. Coley's arm in an accidental or incidental way, but that she did not intend any assault or malice. Mr. Davis indicated to the parties that "we are all professionals and have a job to do at the agency." He encouraged the parties to "start anew", and he considered the matter closed. Mr. Davis does not remember being involved in any meetings or discussions regarding the March 15, 2004 incident, and does not recall seeing Ms. Coley's March 16, 2004 memorandum until it was made part of the current grievance.

Ms. Rawls has provided written statements denying ever assaulting Ms. Coley. Her description of the August 27 incident is that she and Ms. Coley accidentally contacted each other when Ms. Coley was walking out of her office during their confrontation over Ms. Coley's leave and Ms. Rawls was reaching for the door. She states that she and Ms. Coley met with Henry Davis and Nikki Scott twice, on August 27 and September 4, to try to resolve issues regarding the August 27 incident as well as other issues related to Ms. Coley's job responsibilities and duties. Regarding the March 15 incident, Ms. Rawls stated that Ms. Coley "exploded in anger and started screaming loudly" at her, and that she felt physically threatened by Ms. Coley's behavior. Tina Edwards and Pam Owen provided written statements that they observed or heard the incident. They did not see any assault by Ms. Rawls or any other physical conflict, and they confirmed that Ms. Coley was angry and shouting at Ms. Rawls.

Mr. Maddox states that in his July 22 meeting with Ms. Coley, he requested the names of any witnesses to these incidents, and that Ms. Coley replied that she would not provide the names of any witnesses at this time.

Based on all of the available information, there is no evidence to support Ms. Coley's charge of assault, and we do not believe a Grievance Hearing is warranted. In fact, it appears from the evidence that positive discipline steps could have been initiated against Ms. Coley based on her actions and conduct toward Ms. Rawls, who was acting in a supervisory position.

2. The Corrective Action Plan

Ms. Coley complains that the Corrective Action Plan and an attachment placed in her personnel file in June and July 2003 by her then rating supervisor, Linda Lackey, and her reviewing

2

supervisor, Mary Finch, should be removed. Ms. Coley's July 2003 appraisal was at the "Meets Standards" level. Two Responsibilities were rated as "Partially Meets Standards" and the remaining seven were "Meets Standards." The materials placed in her file were a proper effort by her supervisors to document problem areas and to assist Ms. Coley in improving her performance. In her Grievance, Ms. Coley states that Henry Davis told her supervisor, Robin Rawls, to get rid of the corrective action plan. Mr. Davis has no such recollection. He only remembers counseling Ms. Coley and Ms. Rawls as described above.

There would be no reason for a Human Resources Director to instruct a new supervisor to remove a corrective action plan developed by a previous supervisor. In fact, Ms. Rawls would have no authority, even if directed to do so, to remove a document from an employee's personnel file. In this case, the material in question was properly developed and discussed with Ms. Coley by her supervisors. An employee cannot prohibit this type of material from being placed in his or her file. The employee does have the opportunity to place a rebuttal in the file, but Ms. Coley did not do so for the 2003 appraisal.

Ms. Coley also complains that Mr. Maddox would not discuss issues regarding the Corrective Action Plan or Ms. Finch in his investigation of her grievance. He was correct in attempting to limit his review to the assault issue. A complaint related to an annual appraisal is not a grievable issue under AIM 404. The procedures specifically state that they do not apply to annual employee evaluations where the overall rating is "Meets Standards" or above. Thus, there was no reason for Mr. Maddox to include this second issue in his investigation, and no Grievance Hearing should be available.

3. Providing Personnel File Material to Department of Transportation (DOT)

Ms. Coley alleges that the Medicaid Agency provided the Corrective Action Plan and other materials to DOT, and that doing so prevented her promotion to an ASA III position with that department. There is no evidence that Medicaid furnished any information to DOT.    Mr. Davis states that he has checked with his staff, and he does not know of any material or information regarding Ms. Coley furnished to DOT. He states that the agency does not furnish personnel records to other agencies. The proper protocol, followed by Medicaid and other state agencies, is to obtain personnel information directly from the State Personnel Department (SPD). Mr. Davis researched Ms. Coley's file at SPD and noted the documents in question were in that file, as they should be. There is no evidence that Medicaid furnished the documents in question to DOT. Even if it did, the documents are a legitimate part of Ms. Coley's personnel file, and there are no circumstances present to merit a Grievance Hearing.

If you agree with the recommendations, the next step will be to inform Ms. Coley in writing of your decision. Please let me know how you wish to proceed.

bb/
Enclosures

3

# ALABAMA MEDICAID AGENCY
## July 28, 2004

*TO: Mr. Butler*
*RYT*
*[signature] 8/2/04*

## MEMORANDUM FOR THE RECORD

**FROM:**   Lee T. Maddox
Deputy Commissioner
Administrative Services

**RE:**   Grievance Filed by Elaine Coley

On July 22, 2004, I met with Ms. Coley regarding a grievance filed by her which alleged that it was based on race, color, and sex in which she alleged that Ms. Robin Rawls assaulted her. She claims that her complaint and request for removal of the corrective action plan that had been placed in her file with her evaluation of July 2003 had gone unresolved.

In an effort to discuss her assault complaint, Ms. Coley was asked to provide a witness or witnesses who saw the assault. In the meeting, Ms. Coley stated that she would not provide the names that would validate her assault at this time. Ms. Coley was advised that in order to determine the validity of the grievance that we must talk with the involved parties and any witness to substantiate the charge. The only grievance issue allowed under our procedures is the assault charge by Ms. Robin Rawls. The request to remove documents attached to Ms. Coley's annual raise evaluation for 2003 dated July 25, 2003, is not a grievance issue in accordance with Agency policy because her rating was "meets standards."

The documents that were attached to her rating dated, July 25, 2003, and June 30, 2003, are merely information outlining what is expected of her job performance by the supervisor and an explanation of how the rating was arrived. Because Ms. Coley received a "1" on two of her task responsibilities (Numbers 2 and 10), and a checked rating for non-compliance on work habits; the supervisor had a responsibility to point out to the employee exactly what was needed in order to improve the rating from a "partially meets standards" to a "meets standards" level. Therefore, Ms. Lackey, rating supervisor, and Ms. Mary Finch, reviewing supervisor, were performing their duty and responsibility in accordance with Agency policy in what is expected of employees in a leadership position. A review of the information attached to her evaluation cites specific tasks and actions that Ms. Coley needed to correct in her job duties and responsibilities. Although Ms. Coley refused to sign the corrective action plan regarding her job duties, this information that was attached to her rating is a bona fide must and is appropriate for placement in her personnel file. According to her personnel file, there is not a rebuttal from Ms. Coley addressing those ratings and the corrective action plan that was submitted in July 2003. In this issue, Ms. Coley had a right to submit a rebuttal to her

rating and request that this rebuttal be placed in her Agency personnel file and State personnel file.

A research of Ms. Coley's personnel file at State Personnel by Mr. Henry Davis did not reveal any other information regarding a rebuttal by Ms. Coley to her rating except the information (dated June 30, 2003) that was attached to Form 13, Employee Performance Appraisal for 2003 (dated July 25, 2003). The only information that is in her Agency personnel file is a memorandum dated January 12, 2000, from Ms. Bonita Crosskno, office manager of the Alabama Department of Transportation, to Ms. Elaine Mays (Coley) for insubordination; with copies to Mr. Larry Locket, personnel file, and the file citing State Personnel Board Rules Section 670-X-19.01, General Work Rules, (2) (b) for reasons for the memorandum regarding insubordination.

With regards to this Agency or an employee of this Agency providing information to another department concerning Ms. Coley's performance, this charge is unfounded. I did not obtain any information that validates Ms. Coley's charge as reason for her not being selected from the ASA III Certification of Eligibles. Please note that although Ms. Coley states that she is number one on the register, there are four other people ranked number one on the ASA III register. Therefore, if the Department of Transportation used Ms. Coley's 2003 annual rating and attached documentation outlining tasks that needed to be improved, this act is between State Personnel and the Department of Transportation since Ms. Coley's overall rating in 2003 was "meets standards."

Ms. Coley charges that derogatory information in her file was given to the Department of Transportation causing her to not receive a promotion. This information is untrue according to my investigation. Based on the memorandum dated January 12, 2000, by Ms. Bonita Crosskno for insubordination, this is far more damaging than the corrective action plan that was provided to Ms. Coley and attached to her Form 13, dated July 25, 2003, that is in her State Personnel file. Ms. Coley did not substantiate by submitting any documentation from the Department of Transportation where they verified that an employee of this Agency provided any information to them. Therefore, if the Department of Transportation acquired material and tests illegally, as she stated, to deny her promotion to an ASA III, Transportation did so without Medicaid supplying them with this information.

In my discussion on July 22, 2004, with Ms. Coley regarding her grievance; Ms. Coley wanted to discuss Mary Finch's involvement with this process. I told Ms. Coley that I would not talk about Ms. Finch because I was investigating an assault regarding Ms. Robin Rawls. Ms. Coley wanted to tie Ms. Finch into this process. In Ms. Coley's grievance, Ms. Finch is not listed as a party to the assault. Therefore, the only grievance offense was the assault charge and Ms. Finch is not to be included in the discussion of information trying to verify the alleged assault. Therefore, Ms. Coley was advised that if she wanted to talk about Ms. Finch in this process, we would not talk about Ms. Finch. The meeting was concluded and she could leave my office because Ms. Finch would not be discussed. Ms. Coley stated that in order to resolve the issue, we had to talk about Ms.

Finch.  Again, Ms. Finch was not a party to the alleged assault of Ms. Coley by Ms. Rawls.

On July 26, 2004, I discussed the grievance with Ms. Robin Rawls.  Ms. Rawls categorically denied the alleged assault charge that Ms. Coley filed against her.  She stated that she had submitted documentation to her supervisor and that two people who witnessed the incident had also provided documentation.  Ms Rawls agreed to provide me with this information.  Ms. Rawls stated that there was a verbal exchange between her and Ms. Coley but she never touched Ms. Coley.  Ms. Rawls stated that on a different date, she and Ms. Coley accidentally bumped into each other when discussing Ms. Coley's leave.

On July 27, 2004 I discussed the grievance with Ms. Tina Edwards.  Ms. Edwards stated that she remembered when the incident happened.  She sent documentation to Mike Murphy and would provide me with this information.  Ms. Edwards said Ms. Rawls was standing in front of the door when telling Ms. Coley not to leave.  Ms. Coley walked to the other door and left.  Ms. Rawls was walking behind Ms. Coley in the hall.  Ms. Edwards said she told Ms. Rawls told to just let her go.  Ms. Edwards demonstrated what she remembered seeing that day.  She never saw Ms. Rawls touch Ms. Coley.  She further stated she never saw Ms. Rawls blocking the door to prevent Ms. Coley from leaving.  Ms. Edwards said there was no physical contact between the two parties.

On July 27, 2004, I received a copy of a "Memorandum and Request for Hearing Before a Grievance Committee" sent to Commissioner Herrmann from Elaine Coley regarding replica of a meeting pertaining to a grievance.  In this complaint, Ms. Coley now accuses me of being unprofessional in investigating her grievance.  Below is a direct quote from Ms. Coley's memorandum.

> "Reference to my third complaint, I was called to a meeting on July 22, 2004, which lasted approximately fifteen to seventeen minutes. Present at the meeting was Lee Maddox, and his secretary Ms. Patricia Jones and myself. Mr. Maddox took at least fourteen minutes reading my file. Then, I was told by him (Mr. Maddox) that there was no complaint in my file pertaining to Robin Rawls wherein she assaulted me. I replied, I did file a copy of the complaint and made reference to the corrective action plan with Linda Lackey and Mary Finch.

> Mr. Maddox got extremely upset, threw up his hands, and in a demeaning manner, told me quote 'If you think you going to come in here and talk about Mary Finch, you might as well get up and leave my office right now. You might as well just leave . . . now.' end quote  I replied its impossible to have this meeting without dealing with the corrective plan and Mary Finch. Ms. Finch was the supervisor who instituted the corrective action plan. He again repeated quote 'If you are going to talk about Mary Finch, you may as well just leave my office.' end quote I responded quote 'ok.' end quote  I left his office.

Within an hour after leaving the meeting with Mr. Maddox, his secretary, Patricia Jones, walked a memorandum to my office from Mr. Maddox (listed here as attachment three) confirming that we did meet on that day, further stating that he requested information from me to substantiate my allegation of assault by my coworker Robin Rawls, requesting dates and times, witnesses to such assault, that the information was necessary for the report in order to conduct an investigation on behalf of the commissioner, Ms. Carol Herrmann. Second paragraph stated, that neither Human Resources Division or State Personnel had copy of my rebuttal to my evaluation in 2003 or the alleged complaint I filed with the agency.

It is of interest to note, Mr. Maddox contend there is no copy of this complaint / allegation in my file, upon leaving his office, I went to personnel and was told by Nikki Scott (EEOC Officer in personnel) that she had a copy of the complaint on Robin Rawls assaulting me and told Mr. Maddox he could have a copy, it is a fact we had meetings on the issue of the assault- **although left unresolved.**Present at that meeting was **Robin Rawls, Mr. Henry Davis, Nikki Scott and myself.** We also went over the matter of the corrective action plan which was placed in my file, again **remaining unresolved, because they were never removed from my file and said documents were used against me to deny me a promotion (at Alabama Department of Transportation), here listed as aforestated** (at **attachment one**, dated August 27, 2003, March 16, 2004, **attachment two.** **This agency is / was in possession of these documents. This agency is aware the assault happened and needs to resolve it, _making sure the issues_ _complained of will cause me no further harm._**"

Ms. Coley's assessment of the meeting of July 22 is totally inaccurate and without substance. One of the reasons that I had a witness in the meeting with me is because I have dealt with Ms. Coley previously as an employee under my area and regarding other situations when she discussed her supervisors. I have found Ms. Coley to be very belligerent and argumentative and a person who cannot take and comprehend corrective criticism without wanting to argue a point. Ms. Coley's desire was to get into a verbal exchange while discussing Ms. Finch as part of this grievance; because, as I stated before, the only grievance offense is the assault charge. Therefore my focus was to address the assault allegation that she had stated was filed.

When I asked Ms. Nikki Scott about any information she had regarding Ms. Coley, she did not provide me with any information. I had acquired Ms. Coley's Agency personnel file and asked Mr. Davis to check her file at State Personnel to see what other information was in that file. Mr. Davis presented me with information which was discussed in the meeting and also discussed her file. I did not find any document in our files regarding an assault charge that had been previously submitted to Human Resources.

On Monday, July 26, Mr. Davis presented me with two documents. One dated August 27, 2003, and the other dated March 16, 2004, in which Ms. Coley submitted stating that the assault allegedly took place. Therefore, during our meeting, I did not have this information nor do I know when Human Resources was provided with this information.

Mr. Davis stated that Ms. Coley wanted to add information after the fact to her file in which I am wondering at what point did Ms. Coley provide this information to Human Resources.

Also, Ms. Coley's statement in the document submitted on July 22, 2004, regarding wanting to transfer to Dr. McIntyre's area in which she stated Dr. McIntyre agreed to this so she could provide assistance in the PA Unit. Ms. Coley failed to state that I told her that Dr. McIntyre did not have an authorized position where she could transfer into. I stated to Ms. Coley that these transfers were due to reorganization and unless a slot was approved beyond what was already in existence before the reorganization, I could not arbitrarily transfer her to another area. Also, I could not find a place to put her unless the supervisor agreed to accept her or unless it was a part of the reorganization. At that time, I further told Ms. Coley I felt that Mr. Murphy and Ms. Hall would provide her a fair opportunity to perform her duties and responsibilities and that she was going to a new area and I don't feel like what had been submitted regarding her work performance would be an issue if she performed her duties and responsibilities. Mr. Murphy and Ms. Hall never stated that they did not want Ms. Coley. Mr. Murphy had concerns about the negative job history, but felt that he would give her a fair chance under his area.

In my summation, I felt that Ms. Coley was provided a fair opportunity and I was guaranteeing her an impartial meeting without bias to discuss the legitimacy of her alleged assault against Ms. Rawls. Her statement that I handled the investigation unprofessionally, with bias, and that I insulted her is a total lie and unfounded. I refuse to get into an argument and discuss Ms. Finch with Ms. Coley when Ms. Finch had nothing to do with the assault charge against Ms. Rawls. The assault charge was the issue being investigated and not the attachment of the corrective action plan that was submitted as part of her 2003 evaluation because this was appropriate and in keeping with State Personnel Board Rules regarding notifying employees of what they need to do in order to improve any "partially meets standards" rating factor and this is not a grievance issue.

I still have not received documentation from Tina Edwards, Robin Rawls, or Elaine Coley as requested.

Signed: _____   Date: 7/29/04
Lee T. Maddox
Deputy Commissioner
Administrative Services


Signed: _____   Date: 7·29·04
Patricia Jones, ASA III
Witness in the Investigation

## ALABAMA MEDICAID AGENCY
### July 22, 2004

**M E M O R A N D U M**

**TO:**   Ms. Elaine Coley
Administrative Support Assistant II

**FROM:**   Lee T. Maddox
Deputy Commissioner
Administrative Services

**RE:**   Grievance

This memo will confirm that in our meeting of today (July 22, 2004, at around 3:30 p.m.), I requested pertinent information from you to substantiate your allegation of assault by a co-worker, Ms. Robin Rawls. I requested dates and times, as well as any witnesses to these assaults. In this grievance investigation, facts and information that can be substantiated will be accurately included in this report of findings. It is of paramount importance that I have all information in my efforts to conduct an investigation on behalf of Commissioner Carol Herrmann.

I made you aware that neither our Human Resources Division nor State Personnel has a copy of your rebuttal of your 2003 evaluation or a copy of your alleged assault complaint that you said had been filed with the Agency.

This is to further state that this request was witnessed by Ms. Patricia Jones.

LTM:pj   *Elaine M. Coley   7/22/04.*

**ALABAMA MEDICAID AGENCY**
**July 27, 2004**


# M E M O R A N D U M

**TO:**  The File

**FROM:** Lee T. Maddox
    Deputy Commissioner
    Administrative Services

**RE:**  Grievance Filed by Elaine Coley

  This will confirm that a discussion was held today, July 27, with Ms. Tina Edwards regarding the above-mentioned matter. Ms. Edwards stated she remembered when the incident happened, but not the exact date. She sent written documentation to Mike Murphy and will provide a copy of this information to me.

  Ms. Edwards stated she was coming out of the bathroom on the third floor near the Bainbridge Street exit preparing to go home. She said this was late in the afternoon perhaps on a Friday and most people had already gone for the day. Ms. Coley was at her desk getting ready to go – stating something like "I'm tired, I'm going home." Ms. Edwards recalls Ms. Coley as being very upset and talking in a loud tone. According to Ms. Edwards, Ms. Rawls stated to Ms. Coley that she (Ms. Coley) was not leaving until this matter was discussed with someone in an effort to resolve it. Ms. Edwards said Ms. Rawls was standing in front of the door when telling Ms. Coley she was not leaving. Ms. Coley walked around to the other door and walked out. Ms. Rawls was walking behind Ms. Coley telling her not to leave. Ms. Edwards said she told Ms. Rawls just to let her (Ms. Coley) go.

  Ms. Edwards demonstrated what she remembered seeing that day. She said she never saw Ms. Rawls touch Ms. Coley. She further stated that she never saw Ms. Rawls blocking the door to prevent Ms. Coley from leaving. There was no physical contact between the two parties. Ms. Edwards will forward the documentation she sent to Mike Murphy regarding this incident.

LTM:pj

**ALABAMA MEDICAID AGENCY**
July 26, 2004

## M E M O R A N D U M

**TO:**      The File

**FROM:**   Lee T. Maddox
            Deputy Commissioner
            Administrative Services

**RE:**      Grievance Filed by Elaine Coley

This memo will confirm that a discussion was held today, July 26, 2004, with Ms. Rawls regarding the above-mentioned matter.

After listening to the allegations against her, Ms. Rawls stated that she categorically denies the charges. She said she has written documentation that she sent to her supervisor, Mike Murphy, and to the Human Resources Division. She also stated that two people witnessed this incident. According to Ms. Rawls, these witnesses also prepared written documentation. Ms. Rawls agreed to provide me with this information.

Ms. Rawls said there was verbal exchange between her and Ms. Coley, but that she never touched her. She said on a different day, she and Ms. Coley accidentally bumped into each other when they were discussing Ms. Coley's leave.

Ms. Rawls said she only supervised Ms. Coley for about eight weeks and there were always something going on.

LTM:pj

Form 13
Revised (1/1/1999)

# EMPLOYEE PERFORMANCE APPRAISAL
## STATE OF ALABAMA
### Personnel Department

Number of Steps  *FROZEN*

Employee Name: ELAINE M. COLEY          Social Security Number: 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

Agency: ALABAMA MEDICAID AGENCY          Division: OFFICE OF POLICY ADVISOR

Classification: ADMINISTRATIVE SUPPORT ASSISTANT II   Class Code: 10197

Period Covered From: 08/01/2002 To: 08/01/2003   Annual Raise Effective: OCTOBER 2003

---

**APPRAISAL SIGNATURES:** Signatures are to be provided after the form has been completed.

| Rating Supervisor | Employee | Reviewing Supervisor |
|---|---|---|
| SSN 254 . 15 . 3491 | | SSN 424 . 17 . 8840 |
| *Linda Lackey* | *Elaine M. Coley* | *Mary Hayes Nich* |
| Signature | Signature | Signature |
| 7-25-03 | 7/25/03 | 7/25/03 |
| Date | Date | Date |
| Initial if comments are attached | Initial if comments are attached | Initial if comments are attached |

---

**PERFORMANCE APPRAISAL SCORE:** Locate the Responsibility Score on the back of this form and write it in the appropriate space. Locate the Disciplinary Score, also on the back of this form, and write it in the appropriate space. The Disciplinary Score is subtracted from the Responsibility Score to derive the Performance Appraisal Score.

| 17.70 | − | 0 | = | 17.70 |
|---|---|---|---|---|
| Responsibility Score | | Disciplinary Score | | Performance Appraisal Score |

This employee's work:

| ☐ | ☐ | ☒ XX | ☐ | ☐ |
|---|---|---|---|---|
| Does Not Meet Standards (6.6 or below) | Partially Meets Standards (6.7 – 16.6) | Meets Standards (16.7 – 26.6) | Exceeds Standards (26.7 – 36.6) | Consistently Exceeds Standards (36.7 - 40) |

---

**WORK HABITS :** Check the appropriate box for each work habit area. If "Noncompliance" is to be marked, a step of the discipline system (warning, reprimand, suspension) must have been taken with the employee during the appraisal period. See the Disciplinary Actions area on the back of this form for disciplinary documentation.

|  | Compliance | Noncompliance |
|---|---|---|
| Attendance | ☒ | ☐ |
| Punctuality | ☒ | ☐ |
| Cooperation with Coworkers | ☒ | ☐ |
| Compliance with Rules | ☐ | ☒ |

**RESPONSIBILITIES:** List an abbreviated version of the employee's responsibilities below as documented on and discussed during the Preappraisal. Record the appropriate rating in the box for each responsibility. Rating(s) of appropriate responsibilities should reflect any disciplinary action(s) that has been taken during this appraisal period.

| 0 | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Does Not Meet Standards | Partially Meets Standards | Meets Standards | Exceeds Standards | Consistently Exceeds Standards |

*Responsibility*

*Rating*

1. Serve as secretary and administrative support to the Policy Advisor.....

2. Types and proofreads documents and correspondence drafted within the office..... | 2

3. Take, transcribe, and type minutes of meetings as needed to be distributed..... | 1

4. Opens, dates, sorts, distributes incoming mail in the Office of Policy Advisor.... | 2

5. Establishes and maintains files of correspondence and reports pertaining..... | 2

6. Maintains staff time and attendance report for personnel under..... | 2

7. Completes travel request forms and expends reports for the Office of Policy Advisor | 2

8. Operates office machines (such as photocopies, telephone, typewriter, fax..... | 2

9. Make decisions placing priorities on matters needing the Director's..... | 2

10. Establishes with direction from the Director priorities for completion for.... | n/a

1

**RESPONSIBILITY SCORE:**

$$\frac{16}{\text{Total of Responsibilities/Results Ratings}} \div \frac{9}{\text{Number of Responsibilities}} = \frac{1.77}{\text{Average Responsibility Rating}} \times 10 = \frac{17.70}{\text{Responsibility Score}}$$

**DISCIPLINARY ACTIONS:** Any disciplinary action taken with the employee during this appraisal period is to be listed below. For each area, list the specific disciplinary step taken, the date of action, and the reason or unwanted behavior it involved. Copies of disciplinary documentation are to be maintained in the agency's personnel files. Remember, appropriate responsibilities and work habit(s) should reflect the fact that performance required disciplinary action.

Warning of performance of job duties conducted June 30, 2003. A plan of corrective

action was included with the memorandum.

**DISCIPLINARY SCORE:** This section should include the use of the discipline steps of reprimand and suspension only. The Disciplinary Score does not include warnings (oral). Warnings are documented only in the Work Habits and Disciplinary Actions areas. Identify the most severe step of the discipline system that has been utilized with the employee during this appraisal period. If the most severe step was one or more reprimands, the Disciplinary Score will be 7. If the most severe step was one or more suspensions, the Disciplinary Score will be 17. Otherwise, the Disciplinary Score will be zero.

DISCIPLINARY SCORE: _____0_____

ATTACHMENT TO EVALUATION
ELAINE M COLEY
SS#: 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
JULY, 2003

Ms. Elaine M. Coley transferred as an Administrative Support Assistant II to the Office of Policy Advisor from the Elderly/Disabled Certification Division – Montgomery District Office effective February 22, 2003. Due to the fact that Ms. Coley has only been performing duties and responsibilities in the Office of Policy Advisor for a period of five months, input from her former supervisor, Mr. Charles M. Shelnutt, has been utilized in the completion of the 2003 evaluation.

Because Ms. Coley completed her probationary period in the Elderly/Disabled Certification Division on September 22, 2002, her 2003 evaluation period covers ten months, not twelve.

While Ms. Coley has received a rating that places her in the "Meets Standards" category on this evaluation due to the combination of ratings from both positions, this does not accurately reflect the level of performance of her current responsibilities and results. Ms. Coley has been counseled on a continuous basis regarding her work performance. On June 30, 2003, a Corrective Action Plan was developed and implemented along with a warning. Ms. Coley refused to sign the Corrective Action Plan and stated that she would be submitting a rebuttal. To this date, no rebuttal has been received.

With reference to Responsibility # 2, "Types and proofreads documents and correspondence", Ms. Coley makes an inordinate number of typing errors that are not corrected prior to presentation of documents for signature. It should be noted that Responsibilities #3 and #7, "Take, transcribe, and type minutes" and "Completes travel request forms and expends reports", have only been performed once each during the evaluation period. These tasks were performed in a manner that contained errors and resulted in complaints being received. However, in order to incorporate the rating received from the former supervisor and arrive at an overall score that reflects both evaluations completed, Ms. Coley has been rated at "Meets Standards" on these two items.

Since the presentation of the Corrective Action Plan and warning on June 30, 2003, some improvement in Ms. Coley's work performance has been noted. However, by demeanor and raised voice, she has demonstrated an inappropriate attitude toward her current supervisor. Ms. Coley has been counseled regarding appropriate office behavior and improvement in this area must occur.

June 30, 2003

*6/30/2003 Conducted following*
*Elaine wanted to study on*
*7/1/2003 After review of*
*these issues, Elaine*
*refused to sign this*
*document stating she*
*would submit a rebuttal.*
*MLF*

Memorandum to Personnel File

To:            Elaine Coley
               Office of Policy Advisor

Through:       Mary Hayes Finch
               Policy Advisor

From:          Linda Lackey
               Office of Policy Advisory

Subject:       Performance of Job Duties

This memorandum serves as a warning regarding the performance of your job duties since your transfer to the Office of Policy Advisor. After numerous counseling with you, we are again reviewing the following with you. I have included a plan of action after each item to assist you in taking corrective action.

- <u>Working hours and use of leave, breaks, lunch, and bank time:</u> You are expected to arrive at work at your designated time. Your designated work hours are currently 7:30 a.m. to 4:30 p.m.. If you find that you need to change these hours, please notify me and we will change them. You are expected to take your morning and afternoon breaks, to last no longer than the allowed time established in the AIMS manual. You are expected to take your lunch break at your designated time, to last no longer than an hour. Your current assigned lunchtime is 11:30 to 12:30. If you need additional time, or need to change your time on any day, you are to let me know as soon as you find out. Should you need to take longer while you are out, you are to call and leave me a voice message if I am not at my desk. You will be expected to turn in a leave slip for your time as soon as you return to the office. Any unused time for the time you have to sign out for should be taken as soon as possible and should be approved by me ahead of time. As stated to you on June 20th, we are not allowed additional time to go to any banking institution. If you need to take additional time to go to the bank, you are to notify me ahead of time and sign out for leave if needed.

- <u>Visitors, time away from desk:</u> You have been counseled on several occasions regarding the number of visitors you receive and the length of time they have stayed. You are expected to minimize the number of visitors you receive, as well as the length of time they stay, specifically when there are projects and work to be done.

- Listening to and following instructions:  There have been a number of occasions when you did not listen to and/or follow instructions given to you, resulting in tasks not being completed correctly or in a timely manner. Example:  minutes for Dr. McIntyre's meeting, legislative packets for Mary, database project for Dr. Searcy, legislative database.  A plan of action to help you with this is to write down instructions as they are given to you and to ask questions.  If you are not sure of what you are to do, you should repeat the instructions to the person and ask questions.  At any time during your performance of a task that you do not understand what you are to do, you are to contact me, or the person that assigned the task to you, so that we can verify what needs to be done.

- Signature folder, checking mail, routing of mail:  You are expected to check the assigned boxes twice a day at a minimum.  The assigned boxes are the boxes in Mrs. Finch's office on the 4th floor, the mailbox in the outer office of Mrs. Rawls' office suite, and the mailbox located in Dr. McIntyre's office suite. When you have items for Mrs. Finch's signature folder, you are to place them in the folder and take the folder to her office on the fourth floor.  You should check this folder when you check her box.  Mail that is for Mrs. Finch should be taken to her office as soon as you receive it.  Mail retrieved from her out-box should be routed the same day, and no later than the next morning. These procedures will ensure that there is no delay in the routing of mail and signed items.

- Performance and completion of assigned tasks, reviewing work before turning in to appropriate staff member:  Example:  Copies for Louise Jones' ITB, Legislative Packets for Mary Finch, Legislative database.  Upon completion of tasks assigned to you, you should review your work to verify that the task has been completed accurately before submitting it to the appropriate staff member.  If there are any questions, you are to contact me so that we can get clarification on the task.

- Use of email system:  As instructed on several occasions, you are to use the email system to forward messages to appropriate staff. You are to check your emails on a regular basis throughout the day.  This is a major form of communication for the agency, and some tasks will be assigned to you by email.

- Efficiency with computer/programs:  This is a major area of concern due to the problems you have had completing tasks that involve the computer.  I am asking that you let me know what we can do to help you in this area.  The duties assigned to you in this position require that you be efficient in the use of the computer and the programs we have.

▪ <u>Use of Project List:</u>  In an effort to help you stay on track with your projects and to help you prioritize your work, I implemented the use of the Project List for you.  The projects assigned to you are indicated on this list, as well as the assigned date and the due date for completion.  You should use this list as a guideline in completing your tasks in a timely manner.  One concern that I have regarding this list is that I have had to ask you several times each time I have asked you to update it.  Therefore, I am instructing that the list be updated and submitted to me no later than close of business each Friday.

In summary, you are expected to follow established agency and division rules and to perform your assigned duties in a satisfactory and timely manner.  Should you be uncertain about what has been assigned or what you should do, you should let me know as soon as possible so that we can determine a solution.  I am also asking that you let me know how we can correct these problems and help you in the performance of your job duties.

A copy of this letter will be placed in your personnel file.  The performance of your duties will be monitored and if your performance is not improved and corrected, the next step will be a written reprimand, resulting in an automatic deduction of 7 points on your next evaluation.  A follow-up session will be held by September 30, 2003 to review your progress on the above issues.

Signatures on this memorandum indicate that the above was discussed with the employee during this session.  Employee will receive a copy of the signed memorandum when all signatures are completed on the memorandum.

_Refused to Sign_       7/1/2003 mlf
Elaine Coley              Date

_Linda Lackey_       7/1/2003
Linda Lackey, Rating Supervisor     Date

_Mary Hayes Finch_       7/1/2003
Mary Hayes Finch, Reviewing Supervisor    Date

/lwl
cc:     Elaine Coley
        Human Resources



# ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard, Montgomery, Alabama 36130-3050

Don Siegelman
Governor

G. M. Roberts
Transportation Director

January 12, 2000

MEMORANDUM

TO:       Mrs. Elaine Mays
          ASA I

FROM:     Bonita Crosskno          *Bonita Crosskno*
          Office Manager

RE:       Insubordination


On this date first thing this morning, you informed me that you had an appointment at the Central Office on official business. You signed out at 10:30 and returned at 11:50. This is not the first time that you have gone to the Central Office on official business and I have never questioned you. After lunch, I asked you strictly for verification purposes where you went. You asked me more than once why I wanted to know and that you didn't have to tell me anything. I told you that it was strictly for verification and that I was not asking for details as to why you went, only who and where. You informed me again that you didn't have to tell me anything about where you went and, that according to the Consent Decree, you only had to say you had official business. I informed you that I could not force you to tell me but that, as your supervisor, I certainly have the right to verify your location. You then told me that you went to Maintenance and when I asked with whom you talked, you again stated that I did not need to know. You finally said you spoke with Ed Powell; as there is no Ed Powell in Maintenance, you advised that it might be Ed Phillips.

Unfortunately, this is not the first time that your work demeanor has been less than cooperative toward my inquiries. You appear to have difficulty with rules and regulations and have been counseled orally and in writing concerning this behavior.

Consider this memo an official written reprimand under State Personnel Board Rules Section 670-X-19.01, <u>General Work Rules,</u> (2) (b). Please be advised that any further instances of this nature will result in an official recommendation for suspension.


BC
Cc:  Mr. Larry Lockett
     Personnel File
     File

Page: 1 Document Name: untitled

```
SCREEN F          SIMULATED CERTIFICATION REQUEST
FOLLOWING APPLICANT(S) ELIGIBLE FOR REQUEST
CLASS: 10198 ADMIN SUPPORT ASST III     OPTION: 500 GENERAL
   DEPT: MSA        COUNTY CODE: 51 MONTGOMERY       REG TYPE: 2 CONT. PROM
TYPE OF EMPLOYMENT: 1 PERMANENT      METHOD OF CERTIFICATION: 1 REGULAR
NUMBER OF VACANCIES: 1 COUNTY RESID REQ: N COUNTY EMPLOY REQ: N
SHIFT WORK: 1 OVERNIGHT TRAVEL REQ: N SC CODE: XXX
DISTRICT RES REQ: 000 DISTRICT EMPLOY REQ: 000 DISTRICT AVAILABILITY: 000
    SSAN          NAME                  SEX  FINAL GRADE  STATUS  RANK
419088036    BAUER CARLA E               2     BAND01      01     001
417822430    COLEY ELAINE M              2     BAND01      01     001
424112533    EDWARDS TRENA D BLAIR       2     BAND01      01     001
423066608    RODGERS KRIS J              2     BAND01      01     001
416067262    SMITH KIMBERLY P            2     BAND01      01     001
420151691    BLACK KELLEY L              2     BAND01      01     001
424968343    FOLMAR KAY L                2     BAND02      01     006
419065037    CARGILL DANNA S             2     BAND02      01     006
420048273    MCKEITHEN DAPHNE            2     BAND03      01     008
422583774    OWENS MARGARET D            2     BAND03      01     008
418785185    POST JULIE A                2     BAND03      01     008
419646394    WRIGHT MARGARET M           2     BAND03      01     008
```

# MEMORANDUM
## Alabama Medicaid Agency
### August 2, 2004

TO:        Lee Maddox
                Deputy Commissioner

FROM:     Robin Rawls
                Associate Director, Research and Development

RE:         Response to Employee Grievance / Incident on March 15, 2004

As a follow-up to our meeting on July 26, you asked that I provide a statement of the verbal incident of March 15, 2004. In our meeting you indicated that Elaine Coley informed you that I had assaulted her. I deny in the strongest terms possible that I have ever assaulted Elaine Coley on March 15, 2004, or any other date. As a result of the anger and aggression displayed by Ms. Coley, I felt I was the one in danger of physical attack.

Since that experience, I have avoided being alone in the office with her or having a conversation with her. This is very frustrating as her position was funded through a grant to my office. Her position as division secretary allows other associate directors, in addition to me, to instruct her in her work assignments. Because of this incident, however, I now coordinate any assignment I give her through Mike Murphy, my supervisor. I have taken this step in order to shield myself from any further outbursts.

Attached you will find copies of statements relating the incident of March 15, 2004, to Mike Murphy. In addition to my statement, Tina Edwards and Pamela L. Owen have provided their statements of actions seen and statements heard.



From:        "Robin Rawls" <rdrawls@mindspring.com>
To:          <mmurphy@medicaid.state.al.us>
Date:        3/16/2004 4:32:12 AM
Subject:     Elaine Coley

Mike,

I am helping Mary Hasselwander with a photo shoot at the St. John Head Start
Center this morning starting at 7 a.m. (I expect that my involvement should
take an hour or so). This is one of our final projects to "wrap up" the
Smile Alabama grant, but I must admit that I am grateful this morning to
have a reason to be somewhere else because I am absolutely terrified at the
thought of coming to work this morning due to an altercation with Elaine
Coley that took place Monday (March 15)around 4:30-4:40 p.m.

This is the sequence of events as I recall them:

Monday (yesterday) had been a relatively quiet day, work-wise and in terms
of my interaction with her, so this particular explosion of anger and
aggression took me by surprise although Elaine has demonstrated a quick
anger towards me on several occasions before when questioned about
work-related issues. There is documented history with at least one other
previous supervisor (Linda Lackey)regarding Elaine's temper and her
outbursts of anger.

Elaine had been absent from her desk from about 3:45. She had not told
anyone where she was, so I don't know where she was. The phone had not been
forwarded and had rung several times. Georgette came down looking for Elaine
to see if she had any more sets of the county data maps as Dr. Searcy needed
some and she had not received a response to her phone calls. I dug around in
the boxes and found some black and white copies. As Georgette was leaving,
Elaine came back in and I left her with Georgette.

While Elaine was out, I had put four small boxes in front of Elaine's desk
and labeled them to be sent to Jean Stone's (Outreach & Education) storeroom
on 1st floor. (We are trying to empty boxes from the move and get our work
area cleaned up in between our other work assignments.)

Around 4:30 or a few minutes before, I was standing in the hallway when
Elaine kicked/scooted one of the four boxes away from the pile and started
fussing about me putting them there. I tried to explain that tomorrow
(Tuesday) I needed her to arrange to have them taken downstairs and that I
had put them there so they would all be together.

At that point she exploded in anger and started screaming loudly at me about
how she wasn't going to have me telling her what to do and how I was
harrassing her. I was standing in front of her desk and told her that I was
not going to allow her to speak to me in that manner. She came closer to me
and continued to repeat about how I wasn't going to tell her what to do. I
thought she was going to hit me at one point and called out to Pam Owen to
call you. When you weren't there, I asked her to call Henry Davis although
Henry had left for the day at that point.

I asked her to stop because I wanted to ask her to walk upstairs to
Personnel right then. She refused, walking toward the other door as I was
between her and the door. By this time, Tina Edwards was walking by and I

opened the door because I thought I was going to have to back out. At that point, Tina told me to just let her go because she (Elaine) was so out of control and she was afraid that I was going to get hurt.

I went upstairs, hoping to find Kathy Hall, but she had left for the day as well. I went across the hall to Dr. Mac's office and told her what had happened, just so someone at a higher level than myself knew what had happened.

I came back downstairs to my office and gathered my things to leave. At that point, I was so afraid that Elaine might be waiting in the parking garage, that Pam walked with me and waited until I got into my car and left. (Elaine frequently "hangs around" with others in the building after leaving her work station).

This unprovoked verbal (and almost physical) attack constitutes not only a gross act of insubordination, but has created a hostile and frightening workplace for me and my staff. In my 12+ years at Medicaid (and in other workplaces as well) I have had to deal with difficult personalities and people. However, I have never felt the fear for my personal safety that I felt yesterday.

I can be reached on my cell phone at 303-6526 if you need to talk with me before I get to the office.

From:        Tina Edwards
To:          Mike Murphy
Date:        3/24/2004 9:30:12 AM
Subject:     Elaine Coley

These are the events as I remember them.

On Monday March 15th, I was working late. I was coming out of the bathroom around 4:30 when I heard someone yelling and speaking loudly down the hall. I could hear the anger in the person's voice and it unnerved me. About that time, Robin opened the door to the suite in the corner of the hall. She said she needed me to "come in here". I stopped in the hallway and hesitated because I was scared that I might be walking into a hostile situation.

I did walk down the hall and into the suite. At that point, Elaine Coley was talked very loudly and telling Robin that she was "tired of all this" and something about Robin was not going to keep bothering her. Elaine was very angry. Her tone was loud, facial expressions showed her anger, and she was slamming drawers and getting her things to go.

Robin was standing in front of the door which was closest to Elaine's desk. She told Elaine she was not leaving and that Elaine was not going to talk to her that way.

Elaine came around the desk and started to walk my way. She said "excuse me Tina" and started to walk towards the other door to leave. Robin told her she was not leaving and started following Elaine out the other door. I then came out the main door and told Robin to let Elaine go. I told Robin that she was going to get hurt or hit.

In working the Emergency Room for 12 years I have seen enough to know that Elaine would have hit Robin has she not left. I am both shocked and ashamed that this type of behavior was exhibited by a Medicaid employee. This needs to be addressed swiftly and harshly.  Medicaid employees need to be protected in their work place and should not be exposed to harmful situations or employees. Should you need additional information, please feel free to call me.

Tina Edwards
Associate Director Dental Program
Alabama Medicaid Agency
501 Dexter Ave
Post Office Box 5624
Montgomery, AL 36103-5624
Phone: 334-242-5472
Fax: 334-353-5027

CC:        Robin Rawls

Events of Monday March 15, 2004

At approximately 4:30 pm (give or take a few minutes) I was in my office when I heard a very loud, angry voice coming from Elaine Coley's work area. I was aware that Robin Rawls, my supervisor, was in the office and had been working on unpacking and clearing boxes from the move. I also had the impression that she was requesting that Elaine assist with some of the boxes remaining in the hallway and her area.

I heard Elaine yelling at Robin "I am tired of you harassing me Robin. Just leave me alone" and other phrases like those. Her voice was so loud it could easily be heard throughout our unit, if not in the hallway or adjoining offices. I could hear Robin trying to calm her, asking her to calm down, in a normal tone of voice. I was afraid to go into the area, thinking my presence might incite more violent behavior. She continued to shout at Robin and was very angry. Everything happened so quickly I hardly had time to react before it was over.

Tina Edwards was in the hallway at that point and Robin, not realizing anyone else was in our office suite, asked her to come into the office to be a witness to what was happening. (Tina related to me later that she told Robin "She's going to hit you, Robin"). Elaine's behavior and language, according to Tina, were both very threatening. At that point I looked into the hallway and Robin asked that I call Mike Murphy or Henry Davis, both of whom had left for the day.

Also at this point Elaine got her purse and left the office to go home. Robin left to go report to someone, and was able to report the incident to Dr. Mary McIntyre. I stayed until Robin was ready to go home, as she was clearly afraid of Elaine, walked with her to the parking deck, and watched until she left, as Elaine has been known to stay in or around the building after she has left for the day. When I arrived at level 4 of the deck where I park I saw her vehicle was gone.

Pamela L. Owen

MEMORANDUM

AND

REQUEST FOR HEARING BEFORE
A GRIEVANCE COMMITTEE



TO:     *Ms. Carol Herrmann
       Medicaid Agency Commissioner

TO:     Lee Maddox
       Deputy Commissioner, Adm. Services

FROM:   Elaine Coley

DATE:   July 22, 2004

RE:  Replica of meeting pertaining to grievance
          on July 22, 2004

**First** complaint filed on this issue is dated August 27, 2003, (attachment one (1) enclosed) the issue was not resolved because it was never properly handled in accordance to this agency procedures on complaints / grievances. **Second** complaint on the issue is dated March 16, 2004, (attachment two (2) enclosed) which was not handled by this agency procedures on complaints / grievances, therefore remaining unresolved. **Third** complaint is dated **July 7, 2004, stating issues unresolved in the first and second complaint, were given to Alabama department of transportation, and used to deny me promotion to ASA III at the Alabama Department of Transportation on May 13, 2004 by passing me over on a certificate of eligibles using unresolved issues.**

Reference to my third complaint, I was called to a meeting on July 22, 2004, which lasted approximately fifteen to seventeen minutes. Present at the meeting was **Lee Maddox, and his secretary Ms. Patricia Jones and myself.** Mr. Maddox took at least fourteen minutes reading my file. Then, I was told by him (Mr. Maddox) that there was no complaint in my file pertaining to Robin Rawls wherein she assaulted me. I replied, I did file a copy of the complaint and made reference to the corrective action plan with Linda Lackey and Mary Finch.

*Mr. Maddox got extremely upset, threw up his hands, and in a demeaning manner, told me quote " If you think you going to come in here and talk about Mary Finch, you might as well get up and leave my office right now. You might as well just leave . . . now."end quote  I replied its impossible to have this meeting without dealing with the corrective plan and  Mary Finch.   Ms. Finch was the supervisor who instituted the corrective action plan.He again repeated quote "If you are going to talk about Mary Finch, you may as well just leave my office." end quote  I responded quote "ok." end quote  I left his office.

Within an hour after leaving the meeting with Mr. Maddox, his secretary, Patricia Jones, walked a memorandum to my office from Mr. Maddox (**listed here as attachment three**) confirming that we did meet on that day, further stating that he requested information from me to substantiate my allegation of assault by my coworker Robin Rawls, requesting dates and times, witnesses to such assault, that the information was necessary for the report in order to conduct an investigation on behalf of the commissioner, Ms. Carol Herrmann. Second paragraph stated, that neither Human Resources Division or State Personnel had copy of my rebuttal to my evaulation in 2003 or the alleged complaint I filed with the agency.

It is of interest to note, Mr. Maddox contend there is no copy of this complaint / allegation in my file, upon leaving his office, I went to personnel and was told by Nikki Scott (EEOC Officer in personnel) that she had a copy of the complaint on Robin Rawls assaulting me and told Mr. Maddox he could have a copy, it is a fact we had meetings on the issue of the assault- **although left unresolved.** Present at that meeting was **Robin Rawls, Mr. Henry Davis, Nikki Scott and myself.** We also went over the matter of the corrective action plan which was placed in my file, again **remaining unresolved, because they were never removed from my file and said documents were used against me to deny me a promotion (at Alabama Department of Transportation),** here listed as aforestated **attachment one,** dated August 27, 2003, March 16, 2004, **attachment two:** **This agency is / was in possession of these documents.** **This agency is aware the assault happened and needs to resolve it, <u>making sure the issues complained of will cause me no further harm.</u>**

In June 2004, I went to Mr. Maddox to seek a resolution to the uresolved assault complaint. Mr. Maddox asked me what did I want him to do about it, I told him my immediate resolution is to be moved from the area wherein the assault took place because I was being harrassed and retailated against. Mr. Maddox response was that he did not have any place to put me and asked me had I considered getting on the transfer list.

Before being moved to the program support division, Mr. Maddox called me in a meeting in personnel with Mr. Henry Davis and myself, and told me Mr. Murphy and Ms. Kathy Hall had expressed concerns to him after viewing my personnel file and the corrective action plan placed in my file. Their concerns were they were getting an employee with negative job history due to the corrective action plan in my file. I replied quote "it looks as if Mr. Murphy and Ms. Kathy Hall do not want me to work for them, please send me some place else." end quote Mr. Maddox said he had no other place to put me to work.

Shortly before my conversation with Mr. Maddox, due to the fact that I was assisting the PA unit with their work, my computer had been set up to work in PA unit, I asked one of the supervisors from the PA unit, if they could use me as an employee in that unit. Their response was yes, they really needed more help because they lost two or three employees at the time, and there was a lot of work to be done. Dr. Mary McIntyre, who is director of the PA unit, filled out the

paperwork to transfer me to her unit, and submitted it to personnel, I have experience working with that unit before. I made inquiries to personnel pertaining to the approval of me to work in the PA unit and was told Mr. Maddox got the paperwork and there was no further action or approval taken for me to work in that unit.

I would like to make reference to Alabama Medicaid Agency grievance procedures and request an impartial hearing be reconvened according to the rules and regulations stated in this agency's grievance procedures listed in employees personnel handbook, guaranteeing an impartial hearing. Mr. Maddox handled this issue unprofessionally, biased, and unnecessarily insulted me. I believe it was impossible to resolve the situation without stating all the facts, which include Ms. Mary Finch.  Anyone reading my complaint would have seen she was very involved in the issue complained of.

Elaine Coley

August 27th, 2003

This morning when I arrived to work I went in to ask Robin Rawls what she planned for me to do today, as she had been temporarily assigned to be my temporary supervisor. She ask me about my time slip I had turned in to her and said that I had not given her one for a specific day I told her that I had some hang time that I had used for the time in question. I was then told that I needed to turn in a leave slip for the time.

I then turned to walk away Mrs. Rawls jumped from her chair ran to the door and put her arm out across in front of the door grabbing the door knob saying to me that she was not finish talking to me My reply was okay what else is it you need to say? It was then stated to me that she needed a time slip for the time, my reply was I'll give you a time slip but you and I both know you are taking time from me for nothing. I then attempted to walk on out of the door to go to my office she then grabbed me by my arm and repeated the statement that she was not finish talking to me. I snatched my arm away from her and walked on out into the hall way were she followed me and jumped in front of me standing at the entrance of my office door saying Elaine we need to talk—you come in this office right now, I told her I was not going to talk to her alone, I then went in the opposite direction.

I then went to Personnel explained the situation to Mr. Henry Davis and ask for a meeting.

A meeting was immediately held with Robin Rawls my self Henry Davis and Nikki Scott. In the meeting it was express to Mrs. Rawls than she should never touch or assault another employee along with other rules and regulation pertaining to matter of this nature. We also went over the matter of the Corrective Action Plan that had been placed in file as an attachment to my evaluation by Mary Finch/Linda Lackey. Mrs. Rawls was told by Mr. Davis to come up with a work schedule or a project list when she mentioned the Corrective Action Plan.

Sincerely,

Elaine M. Coley

ATTAchmeNt 1

03/16/2004

Tuesday morning at 9:30 am (3/16/04) a meeting was held with Mike Murphy, Robin Rawls and I concerning an altercation that happened yesterday 03/15/2004, approximately 4:45 pm. The incident took place in my office space when I ask Robin Rawls about some boxes that were located in the front of my desk She told me (in an ugly tone) that the boxes were to go to Jean Stone's storage area. I told her okay and it was past my time to go home. I then asked why the boxes couldn't stay where they were until someone came to pick them up. She stated that she didn't want them to stay where they were and that they were going to stay right there and for me not to move them I then told her fine, she then went into her office In the meantime I was gathering my things to leave for the day; she then came back to the boxes and told me (very rudely) not to move the boxes because they were going to Jean Stone's storage area, I told her again fine, that I was going home because it was past time for me to go. I also asked her what was wrong with her and why she was talking to me that way. She then said to me that I would not speak to her in that tone of voice and that we were going to talk to Henry Davis and Mike Murphy. I told that I was going home and that I was sick of her harassing me everyday, she then jumped in front of me to block my way. I asked her to move, her reply was "no Elaine you're going to stay right here and talk". So I asked her again to move out of my way I finally made my way around her after she went into the hall to get Tina Edwards. She then returned again to stop me from leaving. By this time Tina Edwards was telling her that some things she should just let go and that she should just let this go. But she never paid any attention to Tina because by this time I was headed to the side door (#3086). When I got to the side door she had run around from the other door (3084) and was there with both her arms stretched out trying to block me again.

During the meeting I was lied on and made to look like the villain. Robin Rawls completely lied and turned the situation around. I was told that there were two statements given in reference to the incident. I was not shown the one statement that had been given to Mike Murphy. He informed me that he had yet to receive another one as there were two. I saw during the meeting that Robin was going to continue to fabricate and be unfair about the situation as she has been in the past when it comes to dealing with me. I then expressed to Mike Murphy that I was very uncomfortable working around her, because I now see that she is a treacherous liar, underhanded, conniving person to say the least Mike Murphy also expressed to me during the meeting he could see why (by looking at the two of us) how Robin could possibly be afraid of me.

This is not the first time Robin Rawls and I have had these kinds of dealings She previously on another occasion grabbed me by my arm in an effort to stop me from departing she and I had to talk to Personnel Officials about that incident.

Therefore in an effort to resolve this situation I am requesting to be transferred immediately to another area in the agency.

Sincerely,

*Elaine M. Coley*          *Attachment II*

# ALABAMA MEDICAID AGENCY
## July 22, 2004

## MEMORANDUM

**TO:**   Ms. Elaine Coley
Administrative Support Assistant II

**FROM:**   Lee T. Maddox
Deputy Commissioner
Administrative Services

**RE:**   Grievance

This memo will confirm that in our meeting of today (July 22, 2004, at around 3:30 p.m.), I requested pertinent information from you to substantiate your allegation of assault by a co-worker, Ms. Robin Rawls. I requested dates and times, as well as any witnesses to these assaults. In this grievance investigation, facts and information that can be substantiated will be accurately included in this report of findings. It is of paramount importance that I have all information in my efforts to conduct an investigation on behalf of Commissioner Carol Herrmann.

I made you aware that neither our Human Resources Division nor State Personnel has a copy of your rebuttal of your 2003 evaluation or a copy of your alleged assault complaint that you said had been filed with the Agency.

This is to further state that this request was witnessed by Ms. Patricia Jones.

LTM:pj

## STATE OF ALABAMA MEDICAID AGENCY

### EMPLOYEE GRIEVANCE FORM
#### (Confidential Information)

GRIEVANT'S NAME  Mrs. Elaine Coley_____    HOME PHONE:_____
HOME ADDRESS: 6321 Sandy Ridge Curve____    WORK PHONE: 334-353-4099
____Montgomery, Alabama_____    ZIP CODE: 36117_____
DIVISION: Program Support    CLASSIFICATION: ASA II_____
PROGRAM:_____    IMMEDIATE SUPERVISOR: Mr. Michael Murphy_

CHECK NATURE OF GRIEVANCE:
_X__    RACE - If checked, state your race: Negro_____
_X__    COLOR - If checked, state your color: _Black female_____
_____    RELIGION - If checked, state your religion:_____
_X__    SEX - If checked, state your sex:_____
_____    AGE - If checked, state your age:_____ DATE OF BIRTH:_____
_____    CREED - If checked, state your creed:_____
_____    POLITICAL AFFILIATION -    If checked, state your political affiliation:

_____    NATIONAL ORIGIN - If checked, state your national origin:_____
_____    DISABILITY - If checked, state condition:_____

_____    NONE OF THE ABOVE: State the nature of your grievance:
____I was assaulted by my coworker, Robbins Rawls and made a complaint to this____
____agency. To date, that complaint has not been resolved. I seek resolution of it. See____
____attachment (three pages)_____
Give most recent date your complaint took place: 3-16-04_____

State specific details: How you were treated differently from other employees / applicants because of the reason(s) indicated above.  If your complaint involves more than one basis for your dissatisfication, list and number each such allegation separately and furnish specific/factual information in support of each (Attach additional sheets if necessary.)

In September 2003, Medicaid Personnel Director, Mr. Henry Davis, told my supervisor,_____
Robbins Rawls to get rid of the corrective action plan placed in my files and come up_____
with a work duty list to no avail.  The corrective action plan and other deragotory statements and
remarks in my file was given to Alabama Department of Transportation and used to deny me a
promotion to ASA III in that agency.  To date, there is no record of a formal request to this
agency for my personnel records.

What specific corrective action you recommend to be taken on your complaint.
(State corrective action for each separate allegation.)

Removal of all corrective action plans and remarks in my file.  Letter of reprimand to Robbins
Rawls for assaulting me with written notification sent to me.  Letter detailing the agency
procedures for other agency obtaining my personnel file.  See attachment (three pages)

*Elaine M. Coley*
SIGNATURE OF GRIEVANT:

ATTACHMENT TO COMPLAINT

<u>MEMORANDUM & REQUEST</u>

DATE :    July 7, 2004

TO :    Medicaid Agency Commissioner
        Ms. Carol Herrmann, MPH

FROM :    Elaine Coley *EmC*

SUBJECT : File Complaint / Request for Removal
          of deragotory Statments / remarks from my
          personnel files.


On March 16, 2004, I gave this department a detailed account of a meeting held with Mr.
Mike Murphy, wherein Ms.Robin Rawls assaulted me by grabbing my arm to stop me
from leaving the office, another occassion, Ms. Rawls jumped in front of me,
stretching her hands out, blocking me from the door, to prevent me from leaving the
office after the end of a work day, because she wanted me to stay and speak with Mr.
Mike Murphy and Mr. Henry Davis. Although I gave a written account of the assault,
Mrs. Rawls was never reprimanded. To the best of my knowledge, there was no
deragotory remarks or reprimands placed in Ms. Rawls personnel files, revelant to
her assaulting me.

Reference to unfounded deragotory remarks / statements placed in my file in the
form of a <u>so called corrective action plan</u>, Mr. Henry Davis, Medicaid Personnel
Director, in a meeting held on September 2003, told Robin Rawls to get rid of the
corrective action plan place in my personnel file, and come up with a work duty or
task list for me, <u>the director's instruction was not obeyed</u>. The corrective action
plan still remains in my file and was given to the Alabama Department of
Transportation and used as deragotory information in denying me a promotion to
ASA III.

I contend if I was not a black female, I would not have been treated in this
discriminatory manner. The corrective action plan would have been removed from
my file.  Mike Murphy expressed bias, when he told me regarding  the incident, he
could see why looking at both myself and ( my white co-worker ) Robin why  Robin
could possibly be afraid of me.  Again, Ms. Rawls, assaulted me, and Mr. Mike
Murphy had the knowledge, authority, and power to reprimand Ms. Rawls,
preventing any possible further confrontation / assault with Ms. Rawls. This
department should take a stand against the type of behavor Ms. Rawls inflicted on
me.   I contend if I was not a black female, I would not have been treated in this
manner.

The policy advisor office, located in room 7058, was a newly created office for Mrs. Mary Finch, a law student, to gain further supervisory experience, enabling her to be promoted to Liason for State Medicaid Agency. Mrs. Finch works with the legislature. I became Ms. Finch's secretary on February 23, 2003 to August 2003, Ms. Finch was my supervisor. After Ms. Finch passed the State bar exam and became a lawyer, the office was then dissolved. The office was temporarily placed under Research and Development, my duties did not change, Robin Rawls became my temporary supervisor until November 2003 when Georgette Harvest became my supervisor, the office was again changed to Research and Education.

Linda Lackey did an evaluation of my work, covering periods of time she was not my supervisor. I was evaluated on duties I did not perform and was not trained to performed by this department. Although my evaluation stated I met **satsifactory standards**, unfounded statements / remarks were placed in my personnel file, and given to another State Agency, and used against me at the Department of Transportation.

Although my evaluation placed me in a meet standards category, I was given a memorandum, June 30, 2003 which was maliciously placed in my personnel file. I was asked by my supervisor, Linda Lackey / Mary Finch, to look at the document and sign it without fully reading the report after my work day ended. I refused to sign it, because the portion of the document I did read was false. I did not have numerous counseling with Mrs. Lackey or others, pertaining to my employment duties. The memorandum fictiously stated that I have been counseled on several occasions regarding the number of visitors coming to see me. The memorandum further states :

> quote" Responsibilities #3 and #7, Take transcribe, and type minutes" and "Completes travel request forms and expends reports", have only been performed once each during the evaluation period." end quote

There were no mention of any complaint to me about those tasks until the date the memorandum was given to me. Therefore, that paragraph of the complaint is also false. The second paragraph of the memorandum seems to be instructional. I cannot understand why such a memorandum should be placed in my file and then transported without a formal request or my authorization to the Department of Transportation, which was used to evaluate my employment performance at Medicaid and deny me a position with Aldot as ASA III. I contend this was malicious on the part of this agency and request these untruthful accusations be stricken from my file.

Attachment to an interim appraisal covering period from 11/1/03 - 8/1/04 were informative instruction telling me what I am expected to do on the job, and should not have been sent to the Highway Department to be used in a deragotary manner to deny me a promotion. Paragraph two of said document is also false, stating that there have been occasions where I did not follow instructions given to me. No statement or details informing me when I did not follow instructions was listed.

In Paragraph five, of the aforestated interim nine (9) months mid-appraisal, it is stated "a

copy of this will be placed in your personnel file." Again, such documents should not have been placed in my personnel files and used in a manner by this department to intimidate, harrass, and deny me a promotion- At the Alabama Department of Transportation, my personnel files from this department was given to Aldot without a formal request from that department or my consent.

To date, I have viewed my personnel file held with this department, and found there was no request from Aldot to this (Medicaid) agency for my files. Therefore, my files should not have left this department and end up in the files of Alabama Department of Transportation, which Materials and Tests, Jeffery Brown obtained illegally and used to deny me a position as ASA III to that department.

I request that the aforestated inflammatory remarks, statements, and documents be removed from my personnel file, further requesting, no documents from my personnel file should be given to any division of state government without proper formal request / notification, and approval from me. It is my contention that these documents were placed in my file to harrass, intimidate, and deny me advancement in my career, and I contend, if I was not a black female, I would not have been subjected to such treatment.

I contend, all statements / remarks at issue in my personnel file remains allegations only, there was no official fact finding that any of these allegations were found to be truthful. I request removal of the aforestated unfounded allegations from my files, and a written notification to me to this effect.

C : Henry Davis, Director of Personnel

*Elaine M. Coley*