**EXHIBIT D**

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **ELAINE M. COLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CASE NO: 2:06cv378-WKW** |
| | ) | |
| | ) | |
| **ALABAMA MEDICAID AGENCY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

STATE OF ALABAMA            )

COUNTY OF *Montgomery*    )

Before me, the undersigned authority, a Notary Public in and for said County and State, personally appeared William Butler, who, after being duly sworn, deposes and says as follows:

1.      My name is William Butler.  I am over the age of nineteen (19) years.  I am competent to make this Affidavit.  The statements contained in this Affidavit are based upon my personal knowledge.

2.      I am currently employed by Alabama Medicaid Agency ("Medicaid") as General Counsel. I have been employed by Medicaid for approximately twenty four (24) years and have held responsibilities throughout that period for Medicaid employee personnel issues.

3.      Elaine Coley filed a grievance on or about July 20, 2004 with Lee Maddox, Deputy Commissioner of Administrative Service alleging, among other things, that Medicaid

employee Robin Rawls had assaulted her. Attached hereto at Attachment 1 is a true and correct copy of the Grievance Ms. Coley filed on or about July 20, 2004.

4.      Mr. Maddox investigated Ms. Coley's Grievance. On July 22, 2004, Mr. Maddox interviewed Ms. Coley in response to the Grievance. The same day he met with Ms. Coley, he sent her a Memorandum and indicated that "it is of paramount importance" that he have all information in his efforts to conduct an investigation on behalf of Commissioner Carol Herrmann. Attached hereto at Attachment 2 is a true and correct copy of his July 22, 2004 Memorandum to Elaine Coley. The Memorandum was prepared in the regular course of business.

5.      As part of his investigation, Mr. Maddox interviewed Robin Rawls on July 26, 2004. Attached hereto at Attachment 3 is a true and correct copy of his July 26, 2004 Memorandum to the File re Grievance Filed by Coley. The Memorandum was prepared in the regular course of business.

6.      As part of his investigation, Mr. Maddox interviewed Tina Edwards on July 27, 2004. Attached hereto at Attachment 4 is a true and correct copy of his July 27, 2004 Memorandum to File re Grievance Filed by Coley. The Memorandum was prepared in the regular course of business.

7.      On July 28, 2004, Lee Maddox prepared a Memorandum for the Record outlining his investigation of Ms. Coley's Grievance. Attached hereto at Attachment 5 is a true and correct copy of his "Memorandum for the Record." The Memorandum was prepared in the regular course of business.

8.      On or about August 2, 2004, Lee Maddox received a Memorandum from Ms. Rawls as a follow up to their meeting on July 26, 2004. Attached hereto at Attachment 6 is a true and correct copy of the August 2, 2004 Memorandum Lee Maddox received from Ms. Rawls.

9.      Because Ms. Coley accused Lee Maddox of being unprofessional in the way he handled the investigation of the Grievance, I reviewed and completed the investigation related to Ms. Coley's Grievance.

10.     As a result of Ms. Coley's claim, I reviewed the investigation of the Grievance pursuant to my duties as General Counsel. Attached hereto at Attachment 7 is a true and correct copy of the Memorandum I prepared on August 20, 2004.  The Memorandum was prepared in the regular course of business and accurately reflects my review of the investigation and my conclusions.

11.     On August 24, 2004 Commissioner Carol Herrmann wrote to Ms. Coley to advise that the investigation of her Grievance did not warrant the convening of a grievance panel or other action by Medicaid. Attached hereto at  Attachment 8 is the  August 24, 2004 Letter from Commissioner Herrmann to Ms. Coley that I was provided at the conclusion of the investigation of Ms. Coley's Grievance.

12.     I hereby affirm that the information contained in this Affidavit is true and correct to the best of my knowledge and belief.

William Butler

3

I, _Carole Crews_, a Notary Public in and for said County and State, hereby certify that William Butler, whose name is signed to the foregoing Affidavit and who is known to me, swore to and subscribed before me this day, that being advised of the contents thereof, voluntarily executed the same on the day of its date.

Given under my hand and seal this the _21st_ day of _March_, 2007.

_____
Notary Public
(Seal)

My Commission expires: _7/25/07_

4

# ATTACHMENT 1

# STATE OF ALABAMA MEDICAID AGENCY

## EMPLOYEE GRIEVANCE FORM
### (Confidential Information)

GRIEVANT'S NAME  Mrs. Elaine Coley             HOME PHONE:_____
HOME ADDRESS: 6321 Sandy Ridge Curve          WORK PHONE: 334-353-4099
     Montgomery, Alabama                       ZIP CODE: 36117
DIVISION: Program Support    CLASSIFICATION: ASA II_____
PROGRAM:  _____    IMMEDIATE SUPERVISOR: Mr. Michael Murphy

CHECK NATURE OF GRIEVANCE:
 X     RACE - If checked, state your race: Negro
 X     COLOR - If checked, state your color: Black female
_____  RELIGION - If checked, state your religion: _____
 X     SEX - If checked, state your sex: _____
_____  AGE - If checked, state your age: _____ DATE OF BIRTH: _____
_____  CREED - If checked, state your creed: _____
_____  POLITICAL AFFILIATION -   If checked,  state  your  political  affiliation:
_____
_____  NATIONAL ORIGIN - If checked, state your national origin: _____
_____  DISABILITY - If checked, state condition: _____
_____
_____  NONE OF THE ABOVE: State the nature of your grievance:
       I was assaulted by my coworker, Robbins Rawls and made a complaint to this
       agency. To date, that complaint has not been resolved. I seek resolution of it. See
       attachment (three pages)
Give most recent date your complaint took place: 3-16-04

State specific details: How you were treated differently from other employees / applicants becaus
of the reason(s) indicated above. If your complaint involves more than one basis for your
dissatisification, list and number each such allegation separately and furnish specific/factual
information in support of each (Attach additional sheets if necessary.)

In September 2003, Medicaid Personnel Director, Mr. Henry Davis, told my supervisor,
Robbins Rawls to get rid of the corrective action plan placed in my files and come up
with a work duty list to no avail. The corrective action plan and other derogatory statements and
remarks in my file was given to Alabama Department of Transportation and used to deny me a
promotion to ASA III in that agency. To date, there is no record of a formal request to this
agency for my personnel records.

What specific corrective action you recommend to be taken on your complaint.
(State corrective action for each separate allegation.)

Removal of all corrective action plans and remarks in my file. Letter of reprimand to Robbins
Rawls for assaulting me with written notification sent to me. Letter detailing the agency
procedures for other agency obtaining my personnel file. See attachment (three pages)

SIGNATURE OF GRIEVANT:

## ATTACHMENT TO COMPLAINT

MEMORANDUM & REQUEST

DATE :        July 7, 2004

TO :          Medicaid Agency Commissioner
              Ms. Carol Herrmann, MPH

FROM :        Elaine Coley *EmC*

SUBJECT : File Complaint / Request for Removal
          of deragotory Statments / remarks from my
          personnel files.

On March 16, 2004, I gave this department a detailed account of a meeting held with Mr.
Mike Murphy, wherein Ms. Robin Rawls assaulted me by grabbing my arm to stop me
from leaving the office, another occassion, Ms. Rawls jumped in front of me,
stretching her hands out, blocking me from the door, to prevent me from leaving the
office after the end of a work day, because she wanted me to stay and speak with Mr.
Mike Murphy and Mr. Henry Davis. Although I gave a written account of the assault,
Mrs. Rawls was never reprimanded. To the best of my knowledge, there was no
deragotory remarks or reprimands placed in Ms. Rawls personnel files, revelant to
her assaulting me.

Reference to unfounded deragotory remarks / statements placed in my file in the
form of a so called corrective action plan, Mr. Henry Davis, Medicaid Personnel
Director, in a meeting held on September 2003, told Robin Rawls to get rid of the
corrective action plan place in my personnel file, and come up with a work duty or
task list for me, the director's instruction was not obeyed.  The corrective action
plan still remains in my file and was given to the Alabama Department of
Transportation and used as deragotory information in denying me a promotion to
ASA III.

I contend if I was not a black female, I would not have been treated in this
discriminatory manner. The corrective action plan would have been removed from
my file.   Mike Murphy expressed bias, when he told me regarding the incident, he
could see why looking at both myself and ( my white co-worker ) Robin why  Robin
could possibly be afraid of me. Again, Ms. Rawls, assaulted me, and Mr. Mike
Murphy had the knowledge, authority, and power to reprimand Ms. Rawls,
preventing any possible further confrontation / assault with Ms. Rawls. This
department should take a stand against the type of behavor Ms. Rawls inflicted on
me.   I contend if I was not a black female, I would not have been treated in this
manner.

The policy advisor office, located in room 7058, was a newly created office for Mrs. Mary Finch, a law student, to gain further supervisory experience, enabling her to be promoted to Liason for State Medicaid Agency. Mrs. Finch works with the legislature. I became Ms. Finch's secretary on February 23, 2003 to August 2003, Ms. Finch was my supervisor. After Ms. Finch passed the State bar exam and became a lawyer, the office was then dissolved. The office was temporarily placed under Research and Development, my duties did not change, Robin Rawls became my temporary supervisor until November 2003 when Georgette Harvest became my supervisor, the office was again changed to Research and Education.

Linda Lackey did an evaluation of my work, covering periods of time she was not my supervisor. I was evaluated on duties I did not perform and was not trained to performed by this department. Although my evaluation stated I met satsifactory standards, unfounded statements / remarks were placed in my personnel file, and given to another State Agency, and used against me at the Department of Transportation.

Although my evaluation placed me in a meet standards category, I was given a memorandum, June 30, 2003 which was maliciously placed in my personnel file. I was asked by my supervisor, Linda Lackey / Mary Finch, to look at the document and sign it without fully reading the report after my work day ended. I refused to sign it, because the portion of the document I did read was false. I did not have numerous counseling with Mrs. Lackey or others, pertaining to my employment duties. The memorandum fictiously stated that I have been counseled on several occasions regarding the number of visitors coming to see me. The memorandum further states :

> quote" Responsibilities #3 and #7, Take transcribe, and type minutes" and "Completes travel request forms and expends reports", have only been performed once each during the evaluation period." end quote

There were no mention of any complaint to me about those tasks until the date the memorandum was given to me. Therefore, that paragraph of the complaint is also false. The second paragraph of the memorandum seems to be instructional. I cannot understand why such a memorandum should be placed in my file and then transported without a formal request or my authorization to the Department of Transportation, which was used to evaluate my employment performance at Medicaid and deny me a position with Aldot as ASA III. I contend this was malicious on the part of this agency and request these untruthful accusations be stricken from my file.

Attachment to an interim appraisal covering period from 11/1/03 - 8/1/04 were informative instruction telling me what I am expected to do on the job, and should not have been sent to the Highway Department to be used in a deragatory manner to deny me a promotion. Paragraph two of said document is also false, stating that there have been occasions where I did not follow instructions given to me. No statement or details informing me when I did not follow instructions was listed.

In Paragraph five, of the aforestated interim nine (9) months mid-appraisal, it is stated "a

copy of this will be placed in your personnel file." Again, such documents should not have been placed in my personnel files and used in a manner by this department to intimidate, harrass, and deny me a promotion- At the Alabama Department of Transportation, my personnel files from this department was given to Aldot without a formal request from that department or my consent.

To date, I have viewed my personnel file held with this department, and found there was no request from Aldot to this (Medicaid) agency for my files. Therefore, my files should not have left this department and end up in the files of Alabama Department of Transportation, which Materials and Tests, Jeffery Brown obtained illegally and used to deny me a position as ASA III to that department.

I request that the aforestated inflammatory remarks, statements, and documents be removed from my personnel file, further requesting, no documents from my personnel file should be given to any division of state government without proper formal request / notification, and approval from me. It is my contention that these documents were placed in my file to harrass, intimidate, and deny me advancement in my career, and I contend, if I was not a black female, I would not have been subjected to such treatment.

I contend, all statements / remarks at issue in my personnel file remains allegations only, there was no official fact finding that any of these allegations were found to be truthful. I request removal of the aforestated unfounded allegations from my files, and a written notification to me to this effect.

C : Henry Davis, Director of Personnel

*Elaine M. Coley*

# ATTACHMENT 2

# ALABAMA MEDICAID AGENCY
## July 22, 2004

## M E M O R A N D U M

**TO:**     Ms. Elaine Coley
           Administrative Support Assistant II

**FROM:**   Lee T. Maddox
           Deputy Commissioner
           Administrative Services

**RE:**     Grievance

     This memo will confirm that in our meeting of today (July 22, 2004, at around 3:30 p.m.), I requested pertinent information from you to substantiate your allegation of assault by a co-worker, Ms. Robin Rawls. I requested dates and times, as well as any witnesses to these assaults. In this grievance investigation, facts and information that can be substantiated will be accurately included in this report of findings. It is of paramount importance that I have all information in my efforts to conduct an investigation on behalf of Commissioner Carol Herrmann.

     I made you aware that neither our Human Resources Division nor State Personnel has a copy of your rebuttal of your 2003 evaluation or a copy of your alleged assault complaint that you said had been filed with the Agency.

     This is to further state that this request was witnessed by Ms. Patricia Jones.

LTM:pj

**ATTACHMENT 3**

**ALABAMA MEDICAID AGENCY**
July 26, 2004


<u>**M E M O R A N D U M**</u>

TO:        The File

FROM:   Lee T. Maddox
           Deputy Commissioner
           Administrative Services

RE:        Grievance Filed by Elaine Coley

This memo will confirm that a discussion was held today, July 26, 2004, with Ms. Rawls regarding the above-mentioned matter.

After listening to the allegations against her, Ms. Rawls stated that she categorically denies the charges. She said she has written documentation that she sent to her supervisor, Mike Murphy, and to the Human Resources Division. She also stated that two people witnessed this incident. According to Ms. Rawls, these witnesses also prepared written documentation. Ms. Rawls agreed to provide me with this information.

Ms. Rawls said there was verbal exchange between her and Ms. Coley, but that she never touched her. She said on a different day, she and Ms. Coley accidentally bumped into each other when they were discussing Ms. Coley's leave.

Ms. Rawls said she only supervised Ms. Coley for about eight weeks and there were always something going on.

LTM:pj

**ATTACHMENT 4**

**ALABAMA MEDICAID AGENCY**
July 27, 2004


<u>M E M O R A N D U M</u>

TO:       The File

FROM:     Lee T. Maddox
          Deputy Commissioner
          Administrative Services

RE:       Grievance Filed by Elaine Coley

      This will confirm that a discussion was held today, July 27, with Ms. Tina Edwards regarding the above-mentioned matter. Ms. Edwards stated she remembered when the incident happened, but not the exact date. She sent written documentation to Mike Murphy and will provide a copy of this information to me.

      Ms. Edwards stated she was coming out of the bathroom on the third floor near the Bainbridge Street exit preparing to go home. She said this was late in the afternoon perhaps on a Friday and most people had already gone for the day. Ms. Coley was at her desk getting ready to go – stating something like "I'm tired, I'm going home." Ms. Edwards recalls Ms. Coley as being very upset and talking in a loud tone. According to Ms. Edwards, Ms. Rawls stated to Ms. Coley that she (Ms. Coley) was not leaving until this matter was discussed with someone in an effort to resolve it. Ms. Edwards said Ms. Rawls was standing in front of the door when telling Ms. Coley she was not leaving. Ms. Coley walked around to the other door and walked out. Ms. Rawls was walking behind Ms. Coley telling her not to leave. Ms. Edwards said she told Ms. Rawls just to let her (Ms. Coley) go.

      Ms. Edwards demonstrated what she remembered seeing that day. She said she never saw Ms. Rawls touch Ms. Coley. She further stated that she never saw Ms. Rawls blocking the door to prevent Ms. Coley from leaving. There was no physical contact between the two parties. Ms. Edwards will forward the documentation she sent to Mike Murphy regarding this incident.

LTM:pj

# ATTACHMENT 5

**ALABAMA MEDICAID AGENCY**
July 28, 2004

*TO: Mr. Butler*
*FYI*
*/Am*
*8/2/04*

**MEMORANDUM FOR THE RECORD**

**FROM:**    Lee T. Maddox
             Deputy Commissioner
             Administrative Services

**RE:**      Grievance Filed by Elaine Coley

On July 22, 2004, I met with Ms. Coley regarding a grievance filed by her which alleged that it was based on race, color, and sex in which she alleged that Ms. Robin Rawls assaulted her. She claims that her complaint and request for removal of the corrective action plan that had been placed in her file with her evaluation of July 2003 had gone unresolved.

In an effort to discuss her assault complaint, Ms. Coley was asked to provide a witness or witnesses who saw the assault. In the meeting, Ms. Coley stated that she would not provide the names that would validate her assault at this time. Ms. Coley was advised that in order to determine the validity of the grievance that we must talk with the involved parties and any witness to substantiate the charge. The only grievance issue allowed under our procedures is the assault charge by Ms. Robin Rawls. The request to remove documents attached to Ms. Coley's annual raise evaluation for 2003 dated July 25, 2003, is not a grievance issue in accordance with Agency policy because her rating was "meets standards."

The documents that were attached to her rating dated, July 25, 2003, and June 30, 2003, are merely information outlining what is expected of her job performance by the supervisor and an explanation of how the rating was arrived. Because Ms. Coley received a "1" on two of her task responsibilities (Numbers 2 and 10), and a checked rating for non-compliance on work habits; the supervisor had a responsibility to point out to the employee exactly what was needed in order to improve the rating from a "partially meets standards" to a "meets standards" level. Therefore, Ms. Lackey, rating supervisor, and Ms. Mary Finch, reviewing supervisor, were performing their duty and responsibility in accordance with Agency policy in what is expected of employees in a leadership position. A review of the information attached to her evaluation cites specific tasks and actions that Ms. Coley needed to correct in her job duties and responsibilities. Although Ms. Coley refused to sign the corrective action plan regarding her job duties, this information that was attached to her rating is a bona fide must and is appropriate for placement in her personnel file. According to her personnel file, there is not a rebuttal from Ms. Coley addressing those ratings and the corrective action plan that was submitted in July 2003. In this issue, Ms. Coley had a right to submit a rebuttal to her

rating and request that this rebuttal be placed in her Agency personnel file and State personnel file.

A research of Ms. Coley's personnel file at State Personnel by Mr. Henry Davis did not reveal any other information regarding a rebuttal by Ms. Coley to her rating except the information (dated June 30, 2003) that was attached to Form 13, Employee Performance Appraisal for 2003 (dated July 25, 2003). The only information that is in her Agency personnel file is a memorandum dated January 12, 2000, from Ms. Bonita Crosskno, office manager of the Alabama Department of Transportation, to Ms. Elaine Mays (Coley) for insubordination; with copies to Mr. Larry Locket, personnel file; and the file citing State Personnel Board Rules Section 670-X-19.01, General Work Rules, (2) (b) for reasons for the memorandum regarding insubordination.

With regards to this Agency or an employee of this Agency providing information to another department concerning Ms. Coley's performance, this charge is unfounded. I did not obtain any information that validates Ms. Coley's charge as reason for her not being selected from the ASA III Certification of Eligibles. Please note that although Ms. Coley states that she is number one on the register, there are four other people ranked number one on the ASA III register. Therefore, if the Department of Transportation used Ms. Coley's 2003 annual rating and attached documentation outlining tasks that needed to be improved, this act is between State Personnel and the Department of Transportation since Ms. Coley's overall rating in 2003 was "meets standards."

Ms. Coley charges that derogatory information in her file was given to the Department of Transportation causing her to not receive a promotion. This information is untrue according to my investigation. Based on the memorandum dated January 12, 2000, by Ms. Bonita Crosskno for insubordination, this is far more damaging than the corrective action plan that was provided to Ms. Coley and attached to her Form 13, dated July 25, 2003, that is in her State Personnel file. Ms. Coley did not substantiate by submitting any documentation from the Department of Transportation where they verified that an employee of this Agency provided any information to them. Therefore, if the Department of Transportation acquired material and tests illegally, as she stated, to deny her promotion to an ASA III, Transportation did so without Medicaid supplying them with this information.

In my discussion on July 22, 2004, with Ms. Coley regarding her grievance; Ms. Coley wanted to discuss Mary Finch's involvement with this process. I told Ms. Coley that I would not talk about Ms. Finch because I was investigating an assault regarding Ms. Robin Rawls. Ms. Coley wanted to tie Ms. Finch into this process. In Ms. Coley's grievance, Ms. Finch is not listed as a party to the assault. Therefore, the only grievance offense was the assault charge and Ms. Finch is not to be included in the discussion of information trying to verify the alleged assault. Therefore, Ms. Coley was advised that if she wanted to talk about Ms. Finch in this process, we would not talk about Ms. Finch. The meeting was concluded and she could leave my office because Ms. Finch would not be discussed. Ms. Coley stated that in order to resolve the issue, we had to talk about Ms.

Finch. Again, Ms. Finch was not a party to the alleged assault of Ms. Coley by Ms. Rawls.

On July 26, 2004, I discussed the grievance with Ms. Robin Rawls. Ms. Rawls categorically denied the alleged assault charge that Ms. Coley filed against her. She stated that she had submitted documentation to her supervisor and that two people who witnessed the incident had also provided documentation. Ms Rawls agreed to provide me with this information. Ms. Rawls stated that there was a verbal exchange between her and Ms. Coley but she never touched Ms. Coley. Ms. Rawls stated that on a different date, she and Ms. Coley accidentally bumped into each other when discussing Ms. Coley's leave.

On July 27, 2004 I discussed the grievance with Ms. Tina Edwards. Ms. Edwards stated that she remembered when the incident happened. She sent documentation to Mike Murphy and would provide me with this information. Ms. Edwards said Ms. Rawls was standing in front of the door when telling Ms. Coley not to leave. Ms. Coley walked to the other door and left. Ms. Rawls was walking behind Ms. Coley in the hall. Ms. Edwards said she told Ms. Rawls told to just let her go. Ms. Edwards demonstrated what she remembered seeing that day. She never saw Ms. Rawls touch Ms. Coley. She further stated she never saw Ms. Rawls blocking the door to prevent Ms. Coley from leaving. Ms. Edwards said there was no physical contact between the two parties.

On July 27, 2004, I received a copy of a "Memorandum and Request for Hearing Before a Grievance Committee" sent to Commissioner Herrmann from Elaine Coley regarding replica of a meeting pertaining to a grievance. In this complaint, Ms. Coley now accuses me of being unprofessional in investigating her grievance. Below is a direct quote from Ms. Coley's memorandum.

> "Reference to my third complaint, I was called to a meeting on July 22, 2004, which lasted approximately fifteen to seventeen minutes. Present at the meeting was Lee Maddox, and his secretary Ms. Patricia Jones and myself. Mr. Maddox took at least fourteen minutes reading my file. Then, I was told by him (Mr. Maddox) that there was no complaint in my file pertaining to Robin Rawls wherein she assaulted me. I replied, I did file a copy of the complaint and made reference to the corrective action plan with Linda Lackey and Mary Finch.

> Mr. Maddox got extremely upset, threw up his hands, and in a demeaning manner, told me quote 'If you think you going to come in here and talk about Mary Finch, you might as well get up and leave my office right now. You might as well just leave . . . now.' end quote I replied its impossible to have this meeting without dealing with the corrective plan and Mary Finch. Ms. Finch was the supervisor who instituted the corrective action plan. He again repeated quote 'If you are going to talk about Mary Finch, you may as well just leave my office.' end quote I responded quote 'ok.' end quote I left his office.

Within an hour after leaving the meeting with Mr. Maddox, his secretary, Patricia Jones, walked a memorandum to my office from Mr. Maddox (listed here as attachment three) confirming that we did meet on that day, further stating that he requested information from me to substantiate my allegation of assault by my coworker Robin Rawls, requesting dates and times, witnesses to such assault, that the information was necessary for the report in order to conduct an investigation on behalf of the commissioner, Ms. Carol Herrmann. Second paragraph stated, that neither Human Resources Division or State Personnel had copy of my rebuttal to my evaluation in 2003 or the alleged complaint I filed with the agency.

It is of interest to note, Mr. Maddox contend there is no copy of this complaint / allegation in my file, upon leaving his office, I went to personnel and was told by Nikki Scott (EEOC Officer in personnel) that she had a copy of the complaint on Robin Rawls assaulting me and told Mr. Maddox he could have a copy, it is a fact we had meetings on the issue of the assault- although left unresolved. Present at that meeting was **Robin Rawls, Mr. Henry Davis, Nikki Scott and myself.  We also went over the matter of the corrective action plan which was placed in my file, again remaining unresolved, because they were never removed from my file and said documents were used against me to deny me a promotion (at Alabama Department of Transportation), here listed as aforestated attachment one,** dated August 27, 2003, March 16, 2004, **attachment two. This agency is / was in possession of these documents.  This agency is aware the assault happened and needs to resolve it, <u>making sure the issues complained of will cause me no further harm</u>.**"

Ms. Coley's assessment of the meeting of July 22 is totally inaccurate and without substance.  One of the reasons that I had a witness in the meeting with me is because I have dealt with Ms. Coley previously as an employee under my area and regarding other situations when she discussed her supervisors.  I have found Ms. Coley to be very belligerent and argumentative and a person who cannot take and comprehend corrective criticism without wanting to argue a point.  Ms. Coley's desire was to get into a verbal exchange while discussing Ms. Finch as part of this grievance; because, as I stated before, the only grievance offense is the assault charge.  Therefore my focus was to address the assault allegation that she had stated was filed.

When I asked Ms. Nikki Scott about any information she had regarding Ms. Coley, she did not provide me with any information.  I had acquired Ms. Coley's Agency personnel file and asked Mr. Davis to check her file at State Personnel to see what other information was in that file.  Mr. Davis presented me with information which was discussed in the meeting and also discussed her file.  I did not find any document in our files regarding an assault charge that had been previously submitted to Human Resources.

On Monday, July 26, Mr. Davis presented me with two documents.  One dated August 27, 2003, and the other dated March 16, 2004, in which Ms. Coley submitted stating that the assault allegedly took place.  Therefore, during our meeting, I did not have this information nor do I know when Human Resources was provided with this information.

Mr. Davis stated that Ms. Coley wanted to add information after the fact to her file in which I am wondering at what point did Ms. Coley provide this information to Human Resources.

Also, Ms. Coley's statement in the document submitted on July 22, 2004, regarding wanting to transfer to Dr. McIntyre's area in which she stated Dr. McIntyre agreed to this so she could provide assistance in the PA Unit. Ms. Coley failed to state that I told her that Dr. McIntyre did not have an authorized position where she could transfer into. I stated to Ms. Coley that these transfers were due to reorganization and unless a slot was approved beyond what was already in existence before the reorganization, I could not arbitrarily transfer her to another area. Also, I could not find a place to put her unless the supervisor agreed to accept her or unless it was a part of the reorganization. At that time, I further told Ms. Coley I felt that Mr. Murphy and Ms. Hall would provide her a fair opportunity to perform her duties and responsibilities and that she was going to a new area and I don't feel like what had been submitted regarding her work performance would be an issue if she performed her duties and responsibilities. Mr. Murphy and Ms. Hall never stated that they did not want Ms. Coley. Mr. Murphy had concerns about the negative job history, but felt that he would give her a fair chance under his area.

In my summation, I felt that Ms. Coley was provided a fair opportunity and I was guaranteeing her an impartial meeting without bias to discuss the legitimacy of her alleged assault against Ms. Rawls. Her statement that I handled the investigation unprofessionally, with bias, and that I insulted her is a total lie and unfounded. I refuse to get into an argument and discuss Ms. Finch with Ms. Coley when Ms. Finch had nothing to do with the assault charge against Ms. Rawls. The assault charge was the issue being investigated and not the attachment of the corrective action plan that was submitted as part of her 2003 evaluation because this was appropriate and in keeping with State Personnel Board Rules regarding notifying employees of what they need to do in order to improve any "partially meets standards" rating factor and this is not a grievance issue.

I still have not received documentation from Tina Edwards, Robin Rawls, or Elaine Coley as requested.

Signed: _____     Date: _7/29/04_
        Lee T. Maddox
        Deputy Commissioner
        Administrative Services


Signed: _____     Date: _7.29.04_
        Patricia Jones, ASA III
        Witness in the Investigation

**ATTACHMENT 6**

# MEMORANDUM
## Alabama Medicaid Agency
### August 2, 2004

TO:        Lee Maddox
                Deputy Commissioner

FROM:     Robin Rawls
                Associate Director, Research and Development

RE:         Response to Employee Grievance / Incident on March 15, 2004

As a follow-up to our meeting on July 26, you asked that I provide a statement of the verbal incident of March 15, 2004. In our meeting you indicated that Elaine Coley informed you that I had assaulted her. I deny in the strongest terms possible that I have ever assaulted Elaine Coley on March 15, 2004, or any other date. As a result of the anger and aggression displayed by Ms. Coley, I felt I was the one in danger of physical attack.

Since that experience, I have avoided being alone in the office with her or having a conversation with her. This is very frustrating as her position was funded through a grant to my office. Her position as division secretary allows other associate directors, in addition to me, to instruct her in her work assignments. Because of this incident, however, I now coordinate any assignment I give her through Mike Murphy, my supervisor. I have taken this step in order to shield myself from any further outbursts.

Attached you will find copies of statements relating the incident of March 15, 2004, to Mike Murphy. In addition to my statement, Tina Edwards and Pamela L. Owen have provided their statements of actions seen and statements heard.



From:        "Robin Rawls" <rdrawls@mindspring.com>
To:          <mmurphy@medicaid.state.al.us>
Date:        3/16/2004 4:32:12 AM
Subject:     Elaine Coley

Mike,

I am helping Mary Hasselwander with a photo shoot at the St. John Head Start Center this morning starting at 7 a.m. (I expect that my involvement should take an hour or so). This is one of our final projects to "wrap up" the Smile Alabama grant, but I must admit that I am grateful this morning to have a reason to be somewhere else because I am absolutely terrified at the thought of coming to work this morning due to an altercation with Elaine Coley that took place Monday (March 15)around 4:30-4:40 p.m.

This is the sequence of events as I recall them:

Monday (yesterday) had been a relatively quiet day, work-wise and in terms of my interaction with her, so this particular explosion of anger and aggression took me by surprise although Elaine has demonstrated a quick anger towards me on several occasions before when questioned about work-related issues. There is documented history with at least one other previous supervisor (Linda Lackey)regarding Elaine's temper and her outbursts of anger.

Elaine had been absent from her desk from about 3:45. She had not told anyone where she was, so I don't know where she was. The phone had not been forwarded and had rung several times. Georgette came down looking for Elaine to see if she had any more sets of the county data maps as Dr. Searcy needed some and she had not received a response to her phone calls. I dug around in the boxes and found some black and white copies. As Georgette was leaving, Elaine came back in and I left her with Georgette.

While Elaine was out, I had put four small boxes in front of Elaine's desk and labeled them to be sent to Jean Stone's (Outreach & Education) storeroom on 1st floor. (We are trying to empty boxes from the move and get our work area cleaned up in between our other work assignments.)

Around 4:30 or a few minutes before, I was standing in the hallway when Elaine kicked/scooted one of the four boxes away from the pile and started fussing about me putting them there. I tried to explain that tomorrow (Tuesday) I needed her to arrange to have them taken downstairs and that I had put them there so they would all be together.

At that point she exploded in anger and started screaming loudly at me about how she wasn't going to have me telling her what to do and how I was harrassing her. I was standing in front of her desk and told her that I was not going to allow her to speak to me in that manner. She came closer to me and continued to repeat about how I wasn't going to tell her what to do. I thought she was going to hit me at one point and called out to Pam Owen to call you. When you weren't there, I asked her to call Henry Davis although Henry had left for the day at that point.

I asked her to stop because I wanted to ask her to walk upstairs to Personnel right then. She refused, walking toward the other door as I was between her and the door. By this time, Tina Edwards was walking by and I

opened the door because I thought I was going to have to back out. At that point, Tina told me to just let her go because she (Elaine) was so out of control and she was afraid that I was going to get hurt.

I went upstairs, hoping to find Kathy Hall, but she had left for the day as well. I went across the hall to Dr. Mac's office and told her what had happened, just so someone at a higher level than myself knew what had happened.

I came back downstairs to my office and gathered my things to leave. At that point, I was so afraid that Elaine might be waiting in the parking garage, that Pam walked with me and waited until I got into my car and left. (Elaine frequently "hangs around" with others in the building after leaving her work station).

This unprovoked verbal (and almost physical) attack constitutes not only a gross act of insubordination, but has created a hostile and frightening workplace for me and my staff. In my 12+ years at Medicaid (and in other workplaces as well) I have had to deal with difficult personalities and people. However, I have never felt the fear for my personal safety that I felt yesterday.

I can be reached on my cell phone at 303-6526 if you need to talk with me before I get to the office.

From:        Tina Edwards
To:          Mike Murphy
Date:        3/24/2004 9:30:12 AM
Subject:     Elaine Coley

These are the events as I remember them.

On Monday March 15th, I was working late. I was coming out of the bathroom around 4:30 when I heard someone yelling and speaking loudly down the hall. I could hear the anger in the person's voice and it unnerved me. About that time, Robin opened the door to the suite in the corner of the hall. She said she needed me to "come in here". I stopped in the hallway and hesitated because I was scared that I might be walking into a hostile situation.

I did walk down the hall and into the suite. At that point, Elaine Coley was talked very loudly and telling Robin that she was "tired of all this" and something about Robin was not going to keep bothering her. Elaine was very angry. Her tone was loud, facial expressions showed her anger, and she was slamming drawers and getting her things to go.

Robin was standing in front of the door which was closest to Elaine's desk. She told Elaine she was not leaving and that Elaine was not going to talk to her that way.

Elaine came around the desk and started to walk my way. She said "excuse me Tina" and started to walk towards the other door to leave. Robin told her she was not leaving and started following Elaine out the other door. I then came out the main door and told Robin to let Elaine go. I told Robin that she was going to get hurt or hit.

In working the Emergency Room for 12 years I have seen enough to know that Elaine would have hit Robin has she not left. I am both shocked and ashamed that this type of behavior was exhibited by a Medicaid employee. This needs to be addressed swiftly and harshly. Medicaid employees need to be protected in their work place and should not be exposed to harmful situations or employees. Should you need additional information, please feel free to call me.

Tina Edwards
Associate Director Dental Program
Alabama Medicaid Agency
501 Dexter Ave
Post Office Box 5624
Montgomery, AL 36103-5624
Phone: 334-242-5472
Fax: 334-353-5027

CC:          Robin Rawls

Events of Monday March 15, 2004

At approximately 4:30 pm (give or take a few minutes) I was in my office when I heard a very loud, angry voice coming from Elaine Coley's work area. I was aware that Robin Rawls, my supervisor, was in the office and had been working on unpacking and clearing boxes from the move. I also had the impression that she was requesting that Elaine assist with some of the boxes remaining in the hallway and her area.

I heard Elaine yelling at Robin "I am tired of you harassing me Robin. Just leave me alone" and other phrases like those. Her voice was so loud it could easily be heard throughout our unit, if not in the hallway or adjoining offices. I could hear Robin trying to calm her, asking her to calm down, in a normal tone of voice. I was afraid to go into the area, thinking my presence might incite more violent behavior. She continued to shout at Robin and was very angry. Everything happened so quickly I hardly had time to react before it was over.

Tina Edwards was in the hallway at that point and Robin, not realizing anyone else was in our office suite, asked her to come into the office to be a witness to what was happening. (Tina related to me later that she told Robin "She's going to hit you, Robin"). Elaine's behavior and language, according to Tina, were both very threatening. At that point I looked into the hallway and Robin asked that I call Mike Murphy or Henry Davis, both of whom had left for the day.

Also at this point Elaine got her purse and left the office to go home. Robin left to go report to someone, and was able to report the incident to Dr. Mary McIntyre. I stayed until Robin was ready to go home, as she was clearly afraid of Elaine, walked with her to the parking deck, and watched until she left, as Elaine has been known to stay in or around the building after she has left for the day. When I arrived at level 4 of the deck where I park I saw her vehicle was gone.

---

Pamela L. Owen

**ATTACHMENT 7**

# ALABAMA MEDICAID AGENCY

MEMORANDUM

DATE:        August 20, 2004

TO:          Carol Herrmann
             Commissioner

THROUGH:     Lee Maddox
             Deputy Commissioner
             Administrative Services

             Henry Davis
             Human Resources Director

FROM:        Bill Butler
             General Counsel

SUBJECT:     Grievance filed by Elaine Coley

  Ms. Coley filed an Employee Grievance Form on July 20, 2004. As to the nature of the grievance she checked Race, Color and Sex, and under "None of the Above" she complained of an assault by a co-worker, Robin Rawls and the lack of resolution to her complaint of 3/16/04. In the text of the form, she also complained of a failure to remove a Corrective Action Plan and "other derogatory statements and remarks" from her file, and she alleged this information was furnished to the Alabama Department of Transportation and used to deny her a promotion to ASA III with that agency. Ms. Coley filed an additional memorandum on July 22, 2004, providing additional information on her Grievance, and also complaining of her meeting with Lee Maddox and his refusal to discuss issues regarding one of Ms. Coley's previous supervisors, Mary Finch, as part of her Grievance.

  The investigative file, including the information from Ms. Coley and a July 28, 2004 report from Mr. Maddox, is enclosed. Since Ms. Coley's latest memorandum raised complaints with Mr. Maddox's handling of the investigation, you asked me also to be involved in the process.

  The Grievance Procedures in AIM 404 provide in part: "If the grievance is not resolved at the above level, it will be the responsibility of the Human Resources Officer or designee to present a report to the Commissioner on the grievance and the recommended action to resolve grievances. The Commissioner will review the facts to determine if the grievance can be resolved based on the recommended action or whether a Grievance Hearing Panel is warranted and will be commissioned or whether to advise the employee to seek redress with an outside state or federal agency. These procedures do not apply to actions legally taken pursuant to the State Merit System Law."

  Based on Mr. Maddox's and my investigation, it is our recommendation that the documented facts do not show an actionable grievance nor do they justify the convening of a

Grievance Hearing Panel. We recommend that, in accordance with AIM 404, Ms. Coley be notified that she may file a written complaint with the Equal Employment Opportunity Commission, the Office of Civil Rights of the Department of Health and Human Services or the State Personnel Department. Mediation on some issues may be available under the state's Workplace Mediation Program if all involved parties agree to the process. A summary of the reasons for these recommendations follows:

1. The Assault Charge

Ms. Coley has provided memoranda of August 27, 2003 and March 16, 2004 in which she states Ms. Rawls assaulted her by grabbing her arm on August 27, 2003, and by blocking the door by which she was trying to leave on March 15, 2004. While these memoranda appear to have been date-stamped by the Human Resources Division, documentation of meetings or other action taken cannot be located. Henry Davis stated that he recalls meeting with Ms. Coley, Ms. Rawls, and Nikki Scott shortly after the first incident. His recollection is that the matters involving the disagreement were discussed, and that Ms. Rawls stated that she did put her hand on Ms. Coley's arm in an accidental or incidental way, but that she did not intend any assault or malice. Mr. Davis indicated to the parties that "we are all professionals and have a job to do at the agency." He encouraged the parties to "start anew", and he considered the matter closed. Mr. Davis does not remember being involved in any meetings or discussions regarding the March 15, 2004 incident, and does not recall seeing Ms. Coley's March 16, 2004 memorandum until it was made part of the current grievance.

Ms. Rawls has provided written statements denying ever assaulting Ms. Coley. Her description of the August 27 incident is that she and Ms. Coley accidentally contacted each other when Ms. Coley was walking out of her office during their confrontation over Ms. Coley's leave and Ms. Rawls was reaching for the door. She states that she and Ms. Coley met with Henry Davis and Nikki Scott twice, on August 27 and September 4, to try to resolve issues regarding the August 27 incident as well as other issues related to Ms. Coley's job responsibilities and duties. Regarding the March 15 incident, Ms. Rawls stated that Ms. Coley "exploded in anger and started screaming loudly" at her, and that she felt physically threatened by Ms. Coley's behavior. Tina Edwards and Pam Owen provided written statements that they observed or heard the incident. They did not see any assault by Ms. Rawls or any other physical conflict, and they confirmed that Ms. Coley was angry and shouting at Ms. Rawls.

Mr. Maddox states that in his July 22 meeting with Ms. Coley, he requested the names of any witnesses to these incidents, and that Ms. Coley replied that she would not provide the names of any witnesses at this time.

Based on all of the available information, there is no evidence to support Ms. Coley's charge of assault, and we do not believe a Grievance Hearing is warranted. In fact, it appears from the evidence that positive discipline steps could have been initiated against Ms. Coley based on her actions and conduct toward Ms. Rawls, who was acting in a supervisory position.

2. The Corrective Action Plan

Ms. Coley complains that the Corrective Action Plan and an attachment placed in her personnel file in June and July 2003 by her then rating supervisor, Linda Lackey, and her reviewing

2

supervisor, Mary Finch, should be removed. Ms. Coley's July 2003 appraisal was at the "Meets Standards" level. Two Responsibilities were rated as "Partially Meets Standards" and the remaining seven were "Meets Standards." The materials placed in her file were a proper effort by her supervisors to document problem areas and to assist Ms. Coley in improving her performance. In her Grievance, Ms. Coley states that Henry Davis told her supervisor, Robin Rawls, to get rid of the corrective action plan. Mr. Davis has no such recollection. He only remembers counseling Ms. Coley and Ms. Rawls as described above.

There would be no reason for a Human Resources Director to instruct a new supervisor to remove a corrective action plan developed by a previous supervisor. In fact, Ms. Rawls would have no authority, even if directed to do so, to remove a document from an employee's personnel file. In this case, the material in question was properly developed and discussed with Ms. Coley by her supervisors. An employee cannot prohibit this type of material from being placed in his or her file. The employee does have the opportunity to place a rebuttal in the file, but Ms. Coley did not do so for the 2003 appraisal.

Ms. Coley also complains that Mr. Maddox would not discuss issues regarding the Corrective Action Plan or Ms. Finch in his investigation of her grievance. He was correct in attempting to limit his review to the assault issue. A complaint related to an annual appraisal is not a grievable issue under AIM 404. The procedures specifically state that they do not apply to annual employee evaluations where the overall rating is "Meets Standards" or above. Thus, there was no reason for Mr. Maddox to include this second issue in his investigation, and no Grievance Hearing should be available.

3. Providing Personnel File Material to Department of Transportation (DOT)

Ms. Coley alleges that the Medicaid Agency provided the Corrective Action Plan and other materials to DOT, and that doing so prevented her promotion to an ASA III position with that department. There is no evidence that Medicaid furnished any information to DOT.     Mr. Davis states that he has checked with his staff, and he does not know of any material or information regarding Ms. Coley furnished to DOT. He states that the agency does not furnish personnel records to other agencies. The proper protocol, followed by Medicaid and other state agencies, is to obtain personnel information directly from the State Personnel Department (SPD). Mr. Davis researched Ms. Coley's file at SPD and noted the documents in question were in that file, as they should be. There is no evidence that Medicaid furnished the documents in question to DOT. Even if it did, the documents are a legitimate part of Ms. Coley's personnel file, and there are no circumstances present to merit a Grievance Hearing.

If you agree with the recommendations, the next step will be to inform Ms. Coley in writing of your decision. Please let me know how you wish to proceed.

bb/
Enclosures

**ATTACHMENT 8**



BOB RILEY
Governor

# Alabama Medicaid Agency

**501 Dexter Avenue**
**P.O. Box 5624**
**Montgomery, Alabama 36103-5624**
www.medicaid.state.al.us
e-mail: almedicaid@medicaid.state.al.us
Telecommunication for the Deaf: 1-800-253-0799
1-800-362-1504    (334) 293-5500



CAROL A. HERRMANN, MPH
Commissioner

August 24, 2004

Ms. Elaine M. Coley
6321 Sandy Ridge Curve
Montgomery, AL 36117

Re: Grievance

Dear Ms. Coley:

After receipt of the Employee Grievance Form and other documents which you filed, I requested Lee Maddox, Deputy Commissioner of Administrative Services, and Bill Butler, General Counsel, to investigate your complaints and recommend appropriate action. Based on their reports, it is my determination that the evidence presented does not warrant the convening of a grievance panel or other action by the Medicaid Agency. The investigative report containing the basis for my decision is enclosed for your review.

If you believe you have been treated unfairly or abusively, an appeal may be available under the Merit System to the State Personnel Board. If you believe you have been unlawfully subjected to discriminatory treatment, an appeal may be available to the Equal Employment Opportunity Commission or the Department of Health and Human Services Office of Civil Rights. The state also provides a voluntary Workplace Mediation Program which can be utilized for disputes if all involved parties agree to participate. The Agency's Human Resources Office will furnish you with the addresses for these offices and programs if desired.

Ms. Coley, I regret that your employment situation reached the point where you felt it necessary to file a formal grievance. This Agency's goal is to resolve any employee conflicts or problems at the earliest possible stage. We do not condone any unfair or discriminatory treatment, nor do we permit any reprisal against an employee for exercising his or her right to file a grievance. At this point, I hope that you will be willing and able to put past matters behind you and focus on your future involvement with this Agency. In this time of budget shortfalls, we

Ms. Elaine M. Coley
August 24, 2004
Page 2

need all of our employees pulling together and putting forth maximum effort to fulfill our
mission to the citizens of Alabama.

Sincerely,

Carol A. Herrmann
Commissioner

CAH/bb
Enclosure
cc:     Lee Maddox
        Henry Davis
        Bill Butler
        Mike Murphy