IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ELAINE M. COLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:06cv378-WKW |
| | ) | (WO) |
| ALABAMA MEDICAID AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

The plaintiff, Elaine M. Coley ("Coley"), a former employee of the defendant, Alabama Medicaid Agency ("Medicaid"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), alleging that she was discriminated against on the basis of her race (African-American) and subjected to retaliation for complaining about an assault and harassment in the workplace when the defendant placed negative information in her personnel file.  This court has jurisdiction of Coley's discrimination claims pursuant to the jurisdictional grant in 42 U.S.C. § 2000e-5.

Now pending before the court is the defendant's motion for summary judgment.  The court has carefully reviewed the motion for summary judgment, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials and concludes that the motion should be granted.

## II.  SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Jeffery v Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995); *Edwards v. Wallace Cmty Coll.,* 49 F.3d 1517, 1521 (11th Cir. 1995).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element of his claims, and on which he bears the burden of proof at trial.  *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law.  *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir. 1987).  It is substantive law that identifies those facts which are material on motions for summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986); *See also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir.

1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990). *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).

## III. FACTS

Coley is an experienced administrative support assistant. (Pl's Dep., pp. 50-55, 64-65; Def's Memorandum, p. 43.)[1] Coley began her career as an Administrative Support Assistant I with the Alabama Department of Corrections in 1998 and transferred to the Alabama Department of Transportation (DOT) in 1999. (Pl's Dep., p. 50, 52.) In January 2000, Coley received a written reprimand for insubordination from her DOT supervisor. (Attach. to Harvest's Affid.) In March 2000, Coley transferred from the DOC and began working as an Administrative Support Assistant I for the Alabama Medicaid Agency. (Doc. No. 33-3, Harvest's Affid., p. 2.) Two years later, Coley was promoted to the position of Administrative Support Assistant II in Medicaid's Elderly/Disabled Certification Division,

---

[1] The court notes that the paginated numbers on both the defendant's and plaintiff's submitted documents do not consistently correspond with the page numbers identified within this court's electronic filing system. Consequently, when appropriate, the court will reference the paginated numbers as specified in the parties' original pleadings, motions, and evidentiary materials.

where Charles Shellnut ("Shellnut") was her supervisor. (*Id*.) In February 2003, Coley requested and was granted a lateral transfer to Medicaid's Office of Policy Advisor. (*Id*., p. 3.) Both Mary Finch ("Finch") and Linda Lackey ("Lackey") supervised Coley during her brief tenure in the Policy Advisor's Office. (*Id*.) On or around June 30, 2003, Finch and Lackey provided Coley with a memorandum, which included a review of Coley's performance of job duties and a plan of corrective action. (Doc. No. 33-3, Attach. B to Harvest's Affid.) The memorandum also cautioned that, if Coley's work performance did not improve, "the next step will be a written reprimand, resulting in an automatic deduction of 7 points on your next evaluation." (*Id*.) Coley refused to sign the memorandum. (*Id*.) Medicaid officials subsequently placed the memorandum in Coley's personnel file. (*Id*.)

On July 25, 2003, Lackey, as rating supervisor, and Finch, as reviewing supervisor, conducted a performance appraisal. (Attach. to Harvest's Affid.) During the evaluation process, Coley informed Lackey that she was not following proper procedure. (Coley's Dep., p. 152.) Coley specifically advised that Lackey should have sought input from her former supervisor, Shelnutt, before making a final determination. (*Id*.) After their discussion, Lackey and Finch contacted Shelnutt, who gave additional information concerning Coley's work performance. (*Id*., at p. 154.) On the final evaluation form, Coley's supervisors noted that Coley was "in compliance" with respect to her attendance, punctuality, and cooperation with coworkers, but that she was not "in compliance with the rules." (Attach. to Harvest's Affid.) Coley received a performance appraisal score of 17.7, indicating that her work "meets standards." (*Id*.) In addition, she was granted approval for one step on the pay scale;

4

however, due to budget constraints, the raises for all state employees, including Coley, were frozen. (*Id.*; Pl's Dep., p. 156.) Coley's current supervisors also attached a memorandum to her evaluation, which stated that her "meets standards" rating "does not accurately reflect the level of performance of her current responsibilities and results," that she "has been counseled on a continuous basis regarding her work performance," and that her ability to "take, transcribe and type minutes" and "complete[] travel request forms and expend[] reports" was "performed in a manner that contained errors and resulted in complaints being received." (Attach. to Harvest's Affid.) The attachment also noted that Coley's work performance had improved since the June 30, 2007, corrective action plan, but that "by demeanor and raised voice, [Coley] . . . demonstrated an inappropriate attitude toward her current supervisor." (*Id.*) The attachment further warned that "Coley has been counseled regarding appropriate office behavior and improvement in this area must occur." (*Id.*) The July 2003 performance appraisal and attachment were placed in Coley's personnel file. (Harvest's Affid., p. 4.)

On August 23, 2003, due to reorganization within Medicaid, Coley was transferred to the Office of Research and Development. (Harvest's Affid., p. 3.) Robin Rawls ("Rawls") was Coley's interim supervisor. (*Id.*) On one occasion in August 2003, and on another occasion in March 2004, Coley and Rawls had a disagreement and Rawls "assaulted"[2] Coley. (Doc. No. 37, Attach. to Pl's Resp., Coley's Affid., p. 2.)

---

[2] Coley generally alleges in her sworn affidavit that she was assaulted by Rawls and refers to two attached documents. Coley asserts that, on one occasion Rawls "[ran] around from the other door . . . and was there with both her arms stretched out trying to block me," and on another occasion Rawls "grabbed [her] arm

5

In November 2003, Medicaid further reorganized its corporate structure. Once again, Coley was transferred to another department, specifically the "Office of Research and Development – Director's Office." (Harvest's Affid., p. 3.) Georgette Harvest became Coley's supervisor. (*Id*.) On November 13, 2003, Harvest conducted a "preappraisal," in which she and Coley discussed Coley's responsibilities and work habits, including attendance, punctuality, cooperation with coworkers, and compliance with rules. (Attach. to Harvest's Affid.)

During another reorganization of Medicaid's corporate structure on February 21, 2004, Coley was transferred to the Office of Program Support and Mike Murphy ("Murphy") became her supervisor. (Harvest's Affid., p. 3.) At some point, Coley complained to Murphy that Rawls had assaulted her on two occasions. (Coley's Affid., p. 2.) During a discussion with Coley and Rawls about the incidents, Murphy said that "he could see why [Rawls] would be afraid of [Coley] by looking at the two of [them]." (*Id*.) Murphy also used a "harsh tone" when speaking to Coley and a "pleasant tone" when speaking to Rawls. (*Id*.) On May 13, 2004, Murphy conducted an interim appraisal, in which he noted that various areas of Coley's work performance needed improvement. (Attach. to Harvest's Affid.) For example, Murphy indicated that the time used by Coley to complete typing assignments and simple copying projects was excessive, that she had difficulty managing her time and prioritizing tasks, that certain tasks were delayed or not completed, that she used the

in an effort to stop [her] from departing." (Attach. II to Coley's Affid.)

6

telephone for non-business related calls, and that her absenteeism and lack of punctuality contributed to her poor performance.  (*Id.*)  Murphy also provided a corrective action plan, in which he cautioned that "[m]ore than two instances of work being turned in with errors and/or not on time will result in additional corrective actions being taken, including a lowering of at least one rating on your annual evaluation."  (*Id.*)  Murphy also required as follows:

> Prepare a list of your projects and assignments with the dates they were assigned to you and the requested completion dates for each.  This list should be updated at least weekly and sent to me as an e-mail attachment for my review by 4:00 p.m. each Friday (Thursday, if we have a Friday holiday).
>
> In order to meet deadlines when dealing with multiple projects/assignments, you are expected to devote some time to each project daily.  In this way, you will be making progress toward the completion of each assignment, so that projects do not go completely undone due to higher priorities.
>
> Each Friday, you are expected to send me an e-mail describing the assignments you worked on during the week and their status. . . .  Failure to adhere to this portion of the corrective action plan will result in a lowering of your annual evaluation and additional corrective actions being taken.

(Attach. to Harvest's Affid.)  The pre-appraisal, nine-month interim appraisal, and corrective action plan were placed in Coley's personnel file.  (*Id.*; Harvest's Affid., p. 4.)

Around this time, Coley began seeking opportunities for advancement to the position of Administrative Support Assistant III and registered her name on the State Personnel List of Certified Candidates.  (Attach. to Harvest's Affid.)  On July 14, 2004, Medicaid considered Coley and several other candidates for the position of Administrative Support

Assistant III. (*Id*.; Harvest's Affid., p. 3.)  Medicaid, however, appointed another African-American woman to the position.[3] (*Id*.; Pl's Dep., p. 467.)

On July 20, 2004, Coley submitted an employee grievance form and an attached memorandum, in which she complained that she had previously given Medicaid "a detailed account of a meeting held with Mr. Mike Murphy" concerning two confrontations with Rawls.  (Attach. to Butler's Affid.)  Coley specifically complained that, although she submitted a written account of the assault, Rawls was not reprimanded.  (*Id.*)  In the memorandum, Coley further complained that the negative information in her supervisor's corrective action plans prevented her from receiving a promotion and a transfer to the DOT. She also argued that "Murphy expressed bias, when he told me regarding the incident, he could see why looking at both myself and (my white co-worker) Robin [Rawls] why Robin could possibly be afraid of me" and that "if [she] were not a black female, [she] would not have been treated in this manner."  (*Id*.)

Two days later, Murphy conducted an appraisal of Coley's work performance. Murphy noted that Coley was compliant with respect to attendance and punctuality, but that she was non-compliant with respect to cooperation with coworkers and compliance with rules. (Attach. to Harvest's Affid.) Murphy also provided specific scores for each of Coley's responsibilities, giving her a score of zero for typing and proofreading documents.  (*Id*.) Coley received a total score of 12.9, which fell within a "partially meets standards" rating.

---

[3] It is undisputed that, on the two occasions when Coley was not selected for an Administrative Support Assistant II or III position at Medicaid, an African-American woman was selected for each position. (Harvest's Affid., p. 4.)

(*Id.*)  This final appraisal was not included in Coley's personnel file at Medicaid or at the

Alabama Department of State Personnel.  (Harvest's Affid., p. 4-5.)

In December 2004, Coley submitted a complaint to the Equal Employment

Opportunity Commission (EEOC), asserting that she was discriminated against based on her

race.  (Attach. to Pl's Comp.)  On or around January 22, 2005, Coley resigned from Medicaid

and accepted a promotion to the position of Administrative Support Assistant III at the

Alabama Department of Industrial Relations.  (Harvest's Affid., p. 3.)  The EEOC dismissed

Coley's case on January 27, 2006.  (Attach. to Pl's Comp.) Coley filed this federal lawsuit

on April 26, 2006.  (Doc. No. 1, Pl's Comp.)

## V.  DISCUSSION

### A.  Racial Discrimination

Coley contends that she was prevented from receiving promotions at Medicaid and

other state agencies based on her race.  Specifically, she alleges that she was graded more

severely on performance review evaluations than white employees, thereby preventing her

from receiving promotions within Medicaid and other state agencies.  In addition, Coley

alleges that, although management denied her requests for transfers or promotions to other

departments, white employees were allowed to move or transfer to other areas within

Medicaid.  Coley also identifies several other incidents in which her supervisors treated her

differently from other employees.

Title VII prohibits discrimination on the basis of race, color, religion, sex, or national

origin in a variety of employment practices.[4]  *See Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995).  In an employment discrimination case, the plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against him. *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  This Circuit has consistently held that federal courts, in resolving Title VII claims, do not review the accuracy of an employer's decision to terminate a plaintiff's employment. *See*, *e.g.*, *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1321 n.16 (11th Cir. 1998) (citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("Title VII is not a shield against harsh treatment at the workplace.")).

To defeat the defendant's motion for summary judgment, Coley must first establish a prima facie case of discrimination by one of three generally accepted methods: (1) presenting direct evidence of discriminatory intent; (2) presenting evidence to satisfy the four-part circumstantial evidence test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) presenting statistical proof.  *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).  Because Coley has not presented any statistical evidence supporting her claim of intentional discrimination, the court proceeds to determine whether Coley has demonstrated direct evidence of discrimination.

Direct evidence of employment discrimination consists of statements by a person with

---

[4] Title 42 U.S.C.A. § 2000e-2(a)(1) provides: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."

control over the employment decision "sufficient to prove discrimination without inference or presumption." *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993) (citing *Carter v. City of Miami,* 870 F.2d 578, 581-82 (11th Cir. 1989). The Eleventh Circuit has severely limited the type of language constituting direct evidence of discrimination. *See, e.g., Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 962 (11th Cir. 1997); *Burrell v. Bd. of Trustees of Ga. Military Coll.*, 125 F.3d 1390, 1393-94 n.7 (11th Cir. 1997); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990). This Circuit holds that a plaintiff presents direct evidence of discrimination where "actions or statements of an employer reflect a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641-42 (11th Cir. 1998); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997).

Coley contends that her supervisor, Murphy, made a racial slur when he spoke to her in a harsh tone and said that "he could see why [Rawls] would be afraid of [Coley] by looking at the two of [them]." (Pl's Dep., p. 277; Attach. to Doc. No. 37, Pl's Affid., p. 1.) Coley argues that Murphy's statement was an "indication that [she] was black and [Rawls] is white." (Doc. No. 37, Coley's Resp., p. 6.) This statement is not direct evidence of racial discrimination. Furthermore, the evidence does not suggest that this statement was made in connection with Murphy's assessment of Coley's performance in the workplace. Consequently, the court finds that Coley has not produced direct evidence of racial discrimination.

11

Given that Coley has failed to show direct evidence of discrimination, this court will proceed to determine whether Coley has demonstrated a prima facie case of intentional discrimination. To the extent that Coley alleges that she was treated differently from other employees, the court construes this claim as a disparate treatment claim. To establish a prima facie case of disparate treatment under Title VII, Coley must show that (1) she belongs to a protected class; (2) she was qualified to do her job; (3) she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees outside her classification more favorably. *See Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997). The parties do not dispute that Coley is African-American. They do disagree, however, as to whether similarly situated persons outside of Coley's protected class received more favorable treatment and whether Coley was subjected to an adverse employment action.

The question of whether the plaintiff is similarly situated with non-minority employees is crucial. *See Marshall v. Western Grain Co., Inc.*, 838 F.2d 1165, 1168 (11th Cir. 1988) (citing *Kendall v. Block*, 821 F.2d 1142 (5th Cir. 1987)(holding that Caucasian employees with a different grade level were not similarly situated with the plaintiff)).[5] After careful review, the court concludes that Coley has failed to come forward with any evidence that she was similarly situated to others during her employment at Medicaid.

First, Coley alleges that the following white employees were graded less severely on

---

[5] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

their evaluations: Rawls, a supervisor; Pam Owens, a nurse; Jean Stone, a nurse; and Myron Uptain. (Pl's Dep., pp. 165-68.) Coley, however, admits that she and the aforementioned employees had different duties and that none were Administrative Support Assistants II. (*Id.*, p. 66.) Coley also concedes that, although she does not "think that they were graded in the same manner," she has no knowledge of the information in the other employees' performance appraisals. (*Id.*, p. 163.) It is well-settled law that employees with different jobs and responsibilities are not similarly situated. *See*, *e.g.*, *McDonnell v. Gonzales*, 151 Fed. Appx. 780, 782-83, 2005 WL 2293463, at **2 (11th Cir. 2005); *Randall v. Unitech Systems, Inc.*, 243 F.Supp.2d 822 (N.D. Ill. 2003); *Ponticelli v. Zurich American Ins. Group*, 16 F.Supp. 414 (S.D.N.Y. 1998). Moreover, Coley's mere belief that other employees may have been treated more favorably during their performance evaluations is insufficient to demonstrate a prima facie case of discrimination. See Rule 56(e), FED.R.CIV.P. (requiring that "[s]upporting and opposing affidavits shall be made on personal knowledge"); *See Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 851 (11th Cir. 2000) (holding that the personal knowledge requirement prevents statements in affidavits that are based, in part, "upon information and belief" -- instead of only knowledge -- from raising genuine issues of fact sufficient to defeat summary judgment); *Fowler v. Southern Bell Tel. and Tel. Co.*, 343 F.2d 150, 154 (5th Cir.1965) ("knowledge, information and belief" insufficient); *Robbins v.Gould*, 278 F.2d 116, 118 (5th Cir. 1960) ("knowledge and belief" insufficient). *See also Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949) ("Belief, no matter how sincere, is not equivalent to knowledge."); *see also Tavery v. United States*, 32 F.3d 1423, 1426 n. 4 (10th

Cir. 1994); *Hansen v. Prentice-Hall, Inc.*, 788 F.2d 892, 894 (2d Cir. 1986).  Thus, Coley's subjective belief that management graded other employees' evaluations less severely fails to substantiate her discrimination claim.

Next, Coley identifies several other occasions when she was treated differently from white employees.  With respect to these additional claims of disparate treatment, Coley alleges she is similarly situated to the following comparators: Rawls, Finch, Lackey, Kim Black ("Black"), Christa Sanders ("Sanders"), and Paige Clark ("Clark").

First, Coley contends that her supervisors indicated in their corrective action plans and/or evaluations that she was occasionally late to work or failed to return from her lunch hour in a timely manner, but that management allowed Rawls to leave in the afternoon to pick up her child from school and then return to work. (Pl's Dep., p. 233.)  Coley also alleges that Murphy required her to e-mail him when she left and returned from lunch, but there was no requirement that Rawls do so.  It is undisputed that Rawls was a supervisor and that she and Coley performed different tasks during Coley's employment with Medicaid.  Moreover, Coley's tardiness and Rawls' afternoon absences from work clearly arise from different conduct. This court therefore concludes that Rawls is not a proper comparator.

Coley also asserts that Lackey and Finch are proper comparators because they received promotions and "were afforded an opportunity to go on and further their careers." (Doc. No. 33-6.)  The evidentiary materials clearly indicate that Lackey and Finch were supervisors and that their job duties were substantially different from Coley's duties.  Thus, this court concludes that Coley has failed to demonstrate that she was similarly situated with

14

Lackey and Finch.

Additionally, Coley argues that, after she resigned from her position at Medicaid, her former position was upgraded to an administrative support assistant III and Black, an administrative support assistant III in the Commissioner's Office, was subsequently transferred to this position. First, it is undisputed that Coley was no longer working at Medicaid at the time this incident occurred. Moreover, Coley admits that Black was already an administrative support assistant III at the time of the transfer. (Pl's Dep., p. 433.) This court therefore concludes that Black and Coley were not similarly situated.

Next, Coley asserts that she was not provided counseling or other assistance when she experienced problems with her supervisor, but that Sanders, a nurse, was offered counseling when she experienced problems with another supervisor. There is no evidence indicating that both Sanders and Coley had the same problems with the same supervisors. Thus, Coley's allegation that Sanders received counseling for an unrelated incident fails to demonstrate that both she and Sanders were similarly situated.

Coley also alleges that Paige Clark's request for a transfer was granted, but that her requests for transfers were denied. Specifically, Coley alleges that, after Clark resigned on the basis that she did not want to remain in a certain department during a reorganization period, Clark was rehired by another department the following day. There is no evidence indicating that Clark's request for a transfer was granted or that Coley had threatened to resign in an effort to be rehired by another department during a reorganization period. More importantly, it is undisputed that Clark was a nurse and therefore performed different job

15

duties. (Pl's Dep., p. 286.) This court therefore concludes that Clark is not a proper comparator.

Finally, Coley alleges that her supervisor treated her differently from all the other employees at Medicaid. Specifically, Coley maintains that Lackey "never called anybody else in and accused them of not doing their work." (Pl's Dep., p. 142.) Clearly, Coley's allegation that her own supervisor advised her that she should improve her work performance and her bare conclusion that other employees were not similarly accused fails to demonstrate a prima facie case of racial discrimination.

> Title VII does not make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal . . . The law does not require, nor could it ever realistically require, employers to treat all of their employees all of the time in all matters with absolute, antiseptic, hindsight equality. What the law does require is that an employer not discriminate against an employee on the basis of the employee's protected class characteristics.

*E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1319 (10th Cir. 1992). After careful review, the court concludes that Coley has failed to demonstrate a prima facie case of discrimination under the disparate discipline theory because she has not demonstrated that she is similarly situated to any individuals outside her protected class who were treated more favorably than her.

This court likewise concludes that Coley has failed to demonstrate a prima facie case of racial discrimination because she has also failed to demonstrate that she was subjected to an adverse employment action. Coley argues that the placement of negative performance

evaluations and memoranda in her file amounted to an adverse employment action. Specifically, she alleges that she was prevented from receiving promotions and transfers to other state agencies as a result of the negative information in her personnel file. Title VII prohibits discrimination with respect to an employee's "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a). However, not all conduct by an employer which negatively affects an employee constitutes an adverse employment action. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). To prove the existence of an adverse employment action, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Id*. "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

This court cannot conclude that the corrective action plans or performance review evaluations included within Coley's personnel file constituted an adverse employment action. The parties do not dispute that, during Coley's employment with Medicaid, Coley did not receive any disciplinaries or lose any pay or benefits as a result of the June 2003 and May 2004 corrective action plans or July 2003 and May 2004 performance review evaluations. First, the June 2003 memorandum was not a formal reprimand or disciplinary, but rather was a "corrective action plan" expressing concern about Coley's performance. Indeed, shortly after this memorandum, Coley received a performance evaluation with an overall rating of "meets standards" and was recommended for a step increase in pay.

17

Although a memorandum attached to the performance review indicates areas of Coley's performance which needed improvement, the document also indicates that her performance had improved since implementation of the June 2003 corrective action plan and merely cautioned that improvement regarding "appropriate office behavior must occur." (Attach. to Harvest's Affid.)  Thus, it is clear that the June 30, 2003 corrective action plan and the July 2003 performance review and attached memorandum did not have a material impact on the terms and conditions of Coley's employment.

This court further concludes that the November 2003 pre-appraisal and May 2004 interim appraisal, attached memorandum, and corrective action plan are not actionable. Although the attached memoranda specified various areas of Coley's performance which needed improvement and cautioned that her failure to improve would result in an overall rating of "partially meets standards, at best," these documents do not include formal reprimands or a recommendation for a loss in pay or benefits.

Based on the foregoing, the court concludes that Coley's primary argument that the placement of these negative memoranda and performance evaluations jeopardized her chances of being transferred to a different position within Medicaid or another state agency fails to demonstrate that she suffered an adverse employment action.

> Employer criticism, like employer praise, is an ordinary and
> appropriate feature of the workplace.  Expanding the scope of
> Title VII to permit discrimination lawsuits predicated only on
> unwelcome day-to-day critiques and assertedly unjustified
> negative evaluations would threaten the flow of communication
> between employees and supervisors and limit an employer's to
> maintain and improve job performance.  Federal courts ought

not be put in the position of monitoring and second-guessing the feedback that an employer gives, and should be encouraged to give, an employee. Simply put, the loss of prestige or self-esteem felt by an employee who received what he believes to be unwarranted job criticism or performance review will rarely – without more – establish the adverse action necessary to pursue a claim under Title VII's anti-discrimination clause.

*Davis*, 245 F.3d at 1242.

Moreover, Coley fails to point to any admissible evidence indicating that she was denied promotions or transfers because of her supervisors' comments in the June 2003 and May 2004 corrective action plans or the July 2003 and May 2004 performance evaluations. During her deposition, Coley alleged that she "was passed over thirty-two times as a result of the attachment attached to [her] file in personnel." (Pl's Dep., p. 170.) . According to Coley, the Department of Transportation (DOT) sent her a letter indicating that she was "passed over" based on information concerning an incident which occurred during her prior employment with the DOT, as well as "information in her folder that Medicaid had put in there," including the performance appraisals and attachments. (Pl's Dep. 181, 193.) Coley specifically recalled that a DOT official told her that "he thought that [she] would not be able to perform the duties of the job . . . based on the information found in [her] personnel file." (Id., p. 182.) In addition, Coley alleged that several other state departments informed her that she was not hired based on "information in her personnel file" (Pl's Dep., pp. 179, 192, 194); Coley, however, admitted that these other departments "were not as specific as [the Department of] Transportation." (Pl's Dep., p. 194.) Coley has failed to present any admissible evidence indicating that any state agency refused to hire her based on negative

information in the June 2003 and May 2004 memoranda and July 2003 and May 2004 performance reviews in her personnel file. At best, Coley presents nothing more than unsubstantiated allegations and conclusory statements in opposition to the defendant's motion for summary judgment with respect to her differential treatment claim. "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). *See, e.g.*, *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value). *See also Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976) (conclusory statements, unsubstantiated by facts in the record, will normally be insufficient to defeat a motion for summary judgment).[6]

Given that Coley has failed to demonstrate that she was subjected to an adverse employment action or that Medicaid treated similarly situated employees outside her classification more favorably, this court concludes that Coley has failed to demonstrate a prima facie case of racial discrimination. Consequently, the defendant's motion for summary judgment with respect to Coley's racial discrimination claim should be granted.

### B. Retaliation

Coley asserts that the defendant retaliated against her for submitting grievances against Rawls. Specifically, she alleges that her supervisor, Murphy, retaliated against her

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

20

by preparing a negative corrective action plan and giving her a low score on her July 2004 performance evaluation.

To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *See Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1336 (11th Cir. 1999); *Wideman v. Wal-Mart Stores*, 141 F.3d 1435, 1454 (11th Cir. 1998). If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to produce legitimate reasons for the adverse employment action. *Brochu v. City of Riviera Beach*, 304 F.3d 114, 1155 (1th Cir. 2002) (citing *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 n. 6 (11th Cir. 2000)). "If the defendant does so, the plaintiff must show that the reasons the defendant gave were pretextual." *Brochu*, 304 F.3d at 1155.

The defendant concedes that Coley was engaged in a statutorily protected activity when she filed a grievance complaining about Rawls' behavior. This court, however, concludes that Coley has failed to show that she suffered an adverse employment action. As previously discussed, Coley has failed to demonstrate that Murphy's May 2004 corrective action plan was an adverse employment action. In addition, the July 2004 employee performance appraisal, in which Murphy determined that Coley's work "partially meets standards," was not an adverse employment action. The evidentiary materials indicate that, despite Coley's low score, she was approved to receive a raise. (Attach. to Harvest's Affid.) Moreover, Coley transferred to the Alabama Department of Industrial Relations and was

21

promoted to an Administrative Support Assistant III within six months after Murphy completed the appraisal. Thus, the undisputed evidence clearly demonstrates that Murphy's corrective action plan and employee performance appraisals were not adverse employment actions. Consequently, the defendant's motion for summary judgment with respect to this retaliation claim should be granted.

## VI. CONCLUSION

Accordingly, it is the RECOMMENDATION of the magistrate judge that the defendant's motion for summary judgment be GRANTED and that this case be DISMISSED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the on or before **September 24, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of*

22

*Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 11th day of September, 2007.


_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE